UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JM VIDAL, INC.,
a Washington corporation,

                     Plaintiff,

    v.

TEXDIS USA, INC., a Delaware
corporation, and DISTEX, INC., a Delaware
corporation

                     Defendants.

No.

COMPLAINT FOR (1) VIOLATION OF
WASHINGTON FRANCHISE
INVESTMENT PROTECTION ACT;
(2) VIOLATION OF NEW YORK
FRANCHISE SALES ACT; (3) BREACH
OF CONTRACT; (4) FRAUDULENT
MISREPRESENTATION; AND (5)
NEGLIGENT MISREPRESENTATION;

JURY DEMAND

Plaintiff JM VIDAL, INC., by and through undersigned counsel, hereby brings this

action against Defendants TEXDIS USA, INC. and DISTEX, INC., as follows:

## I.     SUMMARY OF ACTION

1.     This action comes as a result of a franchise relationship between the parties.

Plaintiff is engaged in the operation of an MNG franchise, a retail outlet offering clothing and

accessories.  Defendant TEXDIS USA, INC. is the franchisor of MNG franchise system and

Defendant DISTEX, INC. is an affiliate of the franchisor charged with the responsibility of

selling MNG clothing and apparel to the Plaintiff on a wholesale basis.  Through this action,

Plaintiff seeks an award of damages against the Defendants as a result of Defendants'

COMPLAINT FOR  VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 1

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

unlawful and predatory conduct.  In addition, Plaintiff seeks to rescind the franchise agreement between the parties on the grounds that Plaintiff was induced into signing the franchise agreement as a result of improper and unlawful representations made by Defendants.

## II.    JURISDICTION AND VENUE

2.      This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that the parties are citizens of different states, and the matter in controversy exceeds, exclusive of interest, costs and attorney's fees, the sum or value of Seventy-Five Thousand Dollars ($75,000.00).

3.      This Court possesses jurisdiction over the Defendants pursuant to RCW §4.28.185.  Also, this Court possesses jurisdiction over the Defendants pursuant to RCW §19.100.160 given that the Washington Franchise Investment Protection Act, which "represents a fundamental policy of the state of Washington," specifically provides that any person engaged directly or indirectly in the sale or offer to sell a franchise "shall be subject to the provisions of this chapter, shall be amenable to the jurisdiction of the courts of this state and shall be amenable to the service of process under RCW 4.28.180, 4.28.185 and 19.86.160." RCW §19.100.160 and §19.100.220.

4.      Venue is proper in this District pursuant to 28 U.S.C. ' 1391(a).

5.      All conditions precedent to the commencement of this action have occurred, or have been performed, excused, satisfied or waived.

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 2
K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

### III. PARTIES

6.     Plaintiff, JM VIDAL, INC. (hereinafter referred to as "JMV"), is a corporation organized under the laws of the State of Washington and maintaining its principal place of business in Seattle, Washington.  JMV is engaged in the operation of an MNG franchise, a retail outlet offering women's clothing and accessories.

7.     Defendant, TEXDIS USA, INC. ("Texdis"), is a corporation believed to be organized under the laws of the State of Delaware and maintaining its principal place of business in the State of New York.  Texdis is the franchisor of the MNG franchise system in the United States.

8.     Defendant, DISTEX, INC. ("Distex"), is a corporation believed to be organized under the laws of the State of Delaware and maintaining its principal place of business in the State of New York.  Defendant DISTEX, INC. is engaged in wholesaling MNG brand clothing and accessories to MNG franchisees, including the Plaintiff.

9.     Texdis and Distex shall also be collectively referred to as the "Defendants."

### IV. FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS

#### The MNG Franchise System

10.     Punto Fa. S.L. ("Punto Fa"), a company formed under the laws of Spain, originated the MNG franchise system in 1984 in Barcelona, Spain.  Punto Fa is the entity which operates and franchises Mango and MNG retail clothing stores throughout Europe.

11.     Texdis is a wholly-owned subsidiary of Mango MNG USA, Inc.  Mango MNG USA, Inc. is a wholly-owned subsidiary of Punto Fa.

12.     An MNG retail store sells MNG, Mango and/or MNG by Mango branded women's apparel and fashion accessories.

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 3

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

13.     Prior to March, 2005, neither Texdis, Mango MNG USA, Inc. nor Punto Fa had ever operated an MNG retail store in the United States or sold an MNG franchise store in the United States.

14.     As alleged more fully below, in March, 2005, when Texdis "officially" began selling MNG franchises in the United States, Texdis:

        a.     was entirely unprepared to do so;

        b.     engaged in said franchise sales in violation of U.S. laws;

        c.     was incapable of complying with the franchise agreements with its franchisees; and

        d.     entirely failed to render the support, service and assistance that a franchisor typically provides to its franchisees.

15.     In addition, Texdis entered the United States market knowing full well of the vast and substantial difficulties that it and its affiliates had previously experienced in franchising the MNG concept outside of Spain.  Most notably, the franchising of the MNG concept in England and Canada had been an unqualified failure.

### The FTC Franchise Rule

16.     The Federal Trade Commission has promulgated certain laws requiring the delivery to prospective franchisees of a prescribed disclosure document (the Uniform Franchise Offering Circular, or "UFOC") concerning, *inter alia*, the franchisor, its management, and the material terms and conditions of the franchise agreement prior to the execution of any agreement by a prospective franchisee (hereinafter referred to as "the FTC Rule").

17.     Under the FTC Rule, a UFOC is required to be given to prospective franchisees at the earlier of (a) the "first personal meeting," or (b) the "time for making disclosures."  The FTC Rule defines the first personal meeting as a face-to-face meeting

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 4

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

between a prospective franchisee and a franchisor or its representative held for the purpose of discussing the sale or possible sale of a franchise. The "time for making disclosures" is defined as ten (10) business days prior to the earlier of (a) the execution of a contract by the prospective franchisee or (b) the payment of consideration for the franchise by the prospective franchisee.

18.     The FTC Rule additionally requires: (a) that the franchisor have a reasonable basis for any oral, written, or visual earnings or profit representation ("earnings claim") it makes to a prospective franchisee; (b) that the franchisor provide to prospective franchisees an earnings claim document containing information substantiating any earnings claims it makes; and (c) that the franchisor, in immediate conjunction with any generally disseminated earnings claim, disclose additional information including the number and percentage of prior purchasers known by the franchisor to have achieved the same or better results.

19.     Severe penalties are imposed for violations of the FTC Rule.

20.     The FTC has determined that the FTC Rule will not preempt state or local laws and regulations that either are consistent with the FTC Rule or, if inconsistent, would provide protection to prospective franchisees equal to or greater than that imposed by the FTC Rule.

21.     Accordingly, franchise sales disclosure in states without franchise or business opportunity laws or regulations will be governed by the FTC Rule, while disclosure in those states with rules consistent with or more stringent than the FTC Rule will be governed by state laws and regulations.

**JMV Becomes Interested in the MNG Franchise System**

22.     In or about 2004, JMV's President, Jean Marie Vidal ("Vidal") became interested in acquiring an MNG franchise. To that end, Vidal communicated with Jose Gomez ("Gomez"), Texdis' Vice-President of International Expansion (USA and Canada), with respect to the operation of an MNG franchise in Washington.

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 5

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

23.    From the time that Vidal first spoke with Gomez through May 13, 2005, Texdis was not authorized to offer to sell or sell franchises by the State of Washington, Department of Financial Institutions, Securities Division, as is expressly required by the Washington Franchise Investment Protection Act.

24.    Nevertheless, Texdis unlawfully engaged in the solicitation of a franchise sale in the State of Washington by attempting to induce JMV into becoming an MNG franchisee.

25.    To that end, in November, 2004, Gomez traveled to Seattle to meet with Vidal for the express purpose of discussing the franchise sale, visiting a proposed site for JMV's franchised business and to conduct meetings with the landlord of the proposed site.

26.    This visit by Gomez constituted a "first personal meeting" under the FTC Rule. Yet, no UFOC was delivered to Vidal or JMV at this "first personal meeting" as was required by law.

27.    Thereafter, in December, 2004, Gomez directed JMV to engage in negotiations with the landlord for the purposes of securing the proposed site.

28.    In January, 2005, Gomez requested that he be sent the CAD plans for JMV's location as well as the financial information relating to the build-out of the site.

29.    Gomez was fully aware that Texdis was prohibited by law from offering to sell or selling a franchise prior to obtaining the requisite approval in the State of Washington. Indeed, he advised the landlord of the proposed site that Texdis "can not start any kind of formal negotiations with our potential licensees. **It would be illegal to do that.**" [emphasis supplied].

30.    Despite possessing knowledge that his actions on behalf of Texdis were unlawful, Gomez continued to discuss and negotiate the terms of the franchise relationship with JMV.

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

31.    On or about May 13, 2005, approximately six (6) months after the "first personal meeting" between Texdis and JMV, Texdis delivered a UFOC to JMV. A copy of the MNG UFOC delivered to JMV is attached hereto as Exhibit "A."

### The UFOC Contains Inaccurate and Misleading Information

32.    The UFOC provided by Texdis to JMV contained false and misleading information designed to induce JMV to enter into an MNG franchise agreement.

33.    For example, as required by the FTC Rule, Item 7 of the Texdis UFOC is required to disclose the anticipated total initial investment that a prospective franchisee can expect to expend. The Texdis UFOC stated that the anticipated total initial investment for an MNG franchise was from $1,009,200 to $1,124,000.

34.    The actual total initial investment that JMV was obligated to ultimately expend far exceeded the amount disclosed in the UFOC. Namely, JMV was obligated to expend approximately $1,900,000.00 in order to commence operation of the franchise. In addition, Texdis insisted that JMV construct a mezzanine at his location in order to have a stock room inside of the store, but which would come at an added cost of approximately $400,000.00. Also, Texdis required that JMV have in a place an irrevocable letter of credit in favor of Texdis available in the amount of $675,000.00 in order to secure payment for the MNG merchandise being shipped to JMV.

### Texdis Engages in Improper and Unlawful Sales Tactics

35.    As part of its predatory practice designed to induce JMV to enter into an MNG franchise agreement, Texdis made representations to JMV which are expressly prohibited by law.

36.    Namely, prior to JMV signing a franchise agreement, Texdis provided JMV with written information relating to the actual sales revenue data of the MNG stores around

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 7
K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

the world.  Importantly, the written information also contained projected sales revenue data over the next several years and reflected a substantial increase in the amount of sales on a yearly basis.  The written information, which is tantamount to an earnings claim, did not contain the information or disclosures required by the FTC Rule.

37.     In addition, prior to the signing to any franchise agreement, Texdis requested that JMV prepare a sales forecast which would reflect the anticipated sales and profit that JMV believed it may realize through the operation of an MNG business.  JMV prepared such a sales forecast and delivered it to Texdis.

38.     Texdis reviewed the sales forecast with JMV's principal.  Indeed, Texdis' representative, Gomez, advised JMV that the sales figures that were listed on the forecast were in line with the sales data possessed by Texdis for other existing MNG stores.

39.     Further, in or around April, 2005, Gomez represented to JMV's principal that he fully expected that JMV's store would generate at least $1000 per square foot in annual sales.  The size of the store that JMV was considering at the time was approximately 3,000 square feet.  As such, based upon Gomez's representation, JMV was led to believe that his MNG store would generate no less than $3,000,000 in annual sales.

40.     Gomez's statement was improper, false and misleading.

41.     Aside from being factually inaccurate, Gomez's statement was designed to mislead, deceive and induce JMV into entering into a franchise agreement based upon false information.

42.     Despite making such clear earnings claims to JMV and other, in its UFOC, Texdis represents that it does "not furnish or authorize salespersons to furnish any oral or written information concerning the actual or potential sales, costs, income or profits of an MNG store."

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 8

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

43.     This representation in Texdis' UFOC was clearly untrue and misleading given that Texdis repeatedly furnished JMV with information concerning that actual or potential sales, costs, income or profits of an MNG store for the express purpose of inducing JMV to sign a franchise agreement.

### JMV Becomes an MNG Franchisee

44.     On or about October 25, 2005, JMV entered into a Franchise Agreement with Texdis and Distex for the operation of an MNG franchise at the Bellevue Square Mall. A copy of the MNG Franchise Agreement is attached hereto as Exhibit "B."

45.     Since becoming an MNG franchisee, JMV has faced substantial difficulties in operating its business, which have been directly caused by Texdis and Distex's failure to comply with the terms of the Franchise Agreement.

46.     Primarily, Texdis has failed to properly and sufficiently advertise, promote and market the MNG franchise system and MNG products in the United States.

47.     Texdis was simply not prepared and/or capable of operating a franchise system in the United States. Moreover, since the signing of the Franchise Agreement, Texdis did not, and still does not, possess the infrastructure necessary to provide the services it agreed to provide to its franchisees, including JMV.

### Defendants' Predatory Scheme

48.     To exacerbate an already caustic situation, upon information and belief, Texdis has engaged in a pattern and scheme to defraud JMV and other MNG franchisees for its personal benefit and gain.

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 9

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

49.     Specifically, upon information and belief, Texdis and/or its affiliates have orchestrated a scheme wherein the MNG franchise system in the United States was structured in such a manner that franchisees, such as JMV, could not operate the franchises successfully absent an overwhelmingly substantial investment of capital by the franchisees.

50.     Upon information and belief, Texdis and its affiliates intentionally misrepresented the amount of capital investment needed to be made by franchisees, coupled with misrepresentations as to anticipated sales volume and profits, in order to induce these franchisees into signing franchise agreements and, most importantly, committing to the construction and development of MNG locations around the United States.

51.     Upon information and belief, Texdis and its affiliates engaged in a scheme or plan wherein franchisees would build-out MNG locations at substantial costs to the franchises.  Once the stores were not operating successfully, Texdis would either wait for the franchisee to close its doors, wherein Texdis would assume the leasehold rights for the location and operate the MNG store on its own, or would offer to purchase the location from the franchisee at a fraction of what the franchisee invested in the build-out and development of the location.

52.     In essence, upon information and belief, Texdis was setting up franchisees, including JMV, to fail in order for Texdis or an affiliate to opportunistically benefit from such failure and acquire a substantial asset (*i.e.*, a fully built-out MNG location) at a bargain price.

53.     Upon information and belief, this scheme came at the direction of Punto Fa, who also engaged in similar predatory practices in Germany, England and Canada.  In those countries, the MNG franchises were closed and/or re-sold to Punto Fa or one of its affiliates at discounted prices so that the MNG locations could be operated as corporate locations, rather than franchised locations.

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 10

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

54.    Moreover, with respect to JMV, Texdis was insistent that the landlord for JMV's location provide JMV with a ten (10) year lease despite the fact that the term of the Franchise Agreement being provided to JMV by Texdis was only five (5) years, plus the possibility of a one (1) year extension thereafter.

55.    Discussions between Texdis and JMV have occurred with respect to Texdis' potential acquisition of JMV's location.  The offer tendered by Texdis was grossly under value and served to enhance JMV's belief that Texdis participated in a course of conduct, the effect of which was to set JMV up to fail so that Texdis could acquire a fully built MNG location at a highly discounted price.

**V.    COUNT I – VIOLATION OF WASHINGTON FRANCHISE INVESTMENT PROTECTION ACT**

**(Against Texdis)**

56.    JMV incorporates each and every allegation in paragraphs 1 through 55 above as though fully set forth in this Count.

57.    This is a claim under the Washington Franchise Investment Protection Act, RCW §§19.100.010 *et. seq.* ("WFIPA").

58.    The provisions of WFIPA reflect a fundamental policy of the State of Washington to protect its citizens from oppressive practices historically associated with the sale of franchises.

59.    WFIPA provides that parties to a franchise agreement "shall deal with each other in good faith."  RCW §19.100.180(1).

60.    Texdis has violated the WFIPA by not dealing with JMV in good faith as evidenced by Texdis' failure to:

a.    operate a viable franchise system in the United States;

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 11

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

        b.      possess the infrastructure necessary to provide the services it agreed to provide to its franchisees, including JMV;

        c.      possess a system sufficient to administer the proper and orderly ordering and shipping of seasonal merchandise to JMV in a timely manner;

        d.      possess an advertising plan sufficient to generate sales and brand awareness of the MNG business and products in the United States; and

        e.      possess a marketing and promotional program sufficient to generate sales and brand awareness of the MNG business and products in the United States.

        61.     Texdis has also violated the WFIPA by:

        a.      selling a franchise to JMV without first delivering to JMV a UFOC in a manner and format consistent with the requirements of the FTC Rule and RCW §19.100.040;

        b.      in failing to make requisite disclosures to JMV regarding its earnings claims and in stating falsely in its UFOC that it does not make earnings claims, making an untrue statement of a material fact and/or willfully omitting to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made not misleading (RCW §19.100.170(2));

        c.      in failing to make requisite disclosures to JMV regarding its earnings claims and in stating falsely in its UFOC that it does not make earnings claims, employing a device, scheme or artifice to defraud (RCW §19.100.170(3));

        d.      in failing to make requisite disclosures to JMV regarding its earnings claims and in stating falsely in its UFOC that it does not make earnings claims, engaging in an act, practice, or course of business which operates or would operate as a fraud or deceit upon JMV (RCW §19.100.170(4)); and

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

e.    requiring JMV to assent to a release, assignment, novation, or waiver which would relieve Texdis and/or Distex from liability imposed by WFIPA (RCW §19.100.180(2)(g)).

62.    As a direct and proximate cause of Texdis' conduct in violation of the WFIPA, JMV has suffered damages.

63.    The WFIPA authorizes the Court to increase an award of damages to an amount not to exceed three times the actual damages sustained.

64.    WFIPA also authorizes the Court to award to the prevailing party the costs of the action, including reasonable attorney's fees.

65.    In addition, the WFIPA authorizes the rescission of the Franchise Agreement.

**WHEREFORE**, Plaintiff JM VIDAL, INC., respectfully requests that the Court enter an award in its favor and against Defendant TEXDIS USA, INC. for rescission and/or for an award of damages, treble damages, pre-judgment interest, costs, attorney's fees pursuant to RCW §19.100.190(3), and such other relief as the Court deems just and proper.

## VI.    COUNT II – VIOLATION OF NEW YORK FRANCHISE SALES ACT

### (Against Texdis)

66.    JMV incorporates each and every allegation in paragraphs 1 through 65 above as though fully set forth in this Count.

67.    This is a claim under the New York Franchise Sales Act, N.Y. Gen. Oblig. Law §§680 *et. seq.*

68.    Texdis has violated the New York Franchise Sales Act by:

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 13
K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

a.      offering to sell a franchise unless and until there shall have been registered with the department of law, prior to such offer or sale, a written statement to be known as an offering prospectus or UFOC concerning the contemplated offer or sale, in violation of N.Y. Gen. Oblig. Law §683(1);

b.      offering to sell a franchise without first providing JMV with the required UFOC at the time of the first personal meeting, in violation of N.Y. Gen. Oblig. Law §683(8);

c.      representing in its UFOC that it does "not furnish or authorize salespersons to furnish any oral or written information concerning the actual or potential sales, costs, income or profits of an MNG store," in violation of N.Y. Gen. Oblig. Law §687;

d.      furnishing oral and written information concerning the actual or potential sales, costs, income or profits of an MNG store, in violation of N.Y. Gen. Oblig. Law §687;

e.      by making improper and unlawful earnings claims, which constitutes employing a device, scheme or artifice to defraud, in violation of N.Y. Gen. Oblig. Law §687;

f.      by making improper and unlawful earnings claims, which constitutes an act, practice, or course of business which operates or would operate as a fraud or deceit upon JMV, in violation of N.Y. Gen. Oblig. Law §687;

g.      requiring JMV to assent to a release, assignment, novation, waiver or estoppel which would relieve any person from any duty or liability imposed by the New York Franchise Sales Act, in violation of N.Y. Gen. Oblig. Law §687;

69.      As a direct and proximate cause of Texdis' conduct in violation of the New York Franchise Sales Act, JMV has suffered damages.

70.      The New York Franchise Sales Act authorizes the Court to award to the prevailing party the costs of the action, including reasonable attorney's fees.

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 14

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

71.     In addition, the New York Franchise Sales Act authorizes the rescission of the Franchise Agreement.

**WHEREFORE**, Plaintiff JM VIDAL, INC., respectfully requests that the Court enter an award in its favor and against Defendant TEXDIS USA, INC. for rescission and/or for an award of damages, treble damages, pre-judgment interest, costs, attorney's fees pursuant to N.Y. Gen. Obl. Law §691(1), and such other relief as the Court deems just and proper.

## VII.    <u>COUNT III – BREACH OF CONTRACT</u>

### (Against Texdis)

72.     JMV incorporates each and every allegation in paragraphs 1 through 71 above as though fully set forth in this Count.

73.     On or about October 25, 2005, JMV entered into a Franchise Agreement with Texdis and Distex for the operation of an MNG franchise at the Bellevue Square Mall.

74.     The Franchise Agreement sets forth various obligations owed by Texdis to JMV.

75.     Texdis breached the Franchise Agreement by failing to, *inter alia*:

a.     match JMV's initial contribution to the Advertising Fund up to a maximum amount equal to JMV's required regular contribution and failing to conduct a grand opening advertising and promotional campaign for the Store. (Ex. B, &III.A.9);

b.     plan, manage and coordinate the National Advertising Fund and commit its resources for various national, regional and seasonal campaigns. (Ex. A, &III.B.4); and

c.     provide JMV with any updates, revisions and amendments to the Store Operations Manual. (Ex. A, &III.B.5).

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 15

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

76.    In addition, there are implied terms contained within the Franchise Agreement, including an implied covenant of good faith and fair dealing requiring each party to cooperate with the other so that each may obtain the full benefit of performance under the Franchise Agreement.

77.    Inherent within the Franchise Agreement was the implied covenant and/or implied obligation upon Texdis that:

    a.    it was prepared and capable of operating a franchise system in the United States;

    b.    it possessed the infrastructure necessary to provide the services it agreed to provide to its franchisees, including JMV;

    c.    it possessed a system sufficient to administer the proper and orderly ordering and shipping of seasonal merchandise to JMV in a timely manner;

    d.    it possessed an advertising plan sufficient to generate sales and brand awareness of the MNG business and products in the United States; and

    e.    it possessed a marketing and promotional program sufficient to generate sales and brand awareness of the MNG business and products in the United States.

78.    Texdis breached the implied obligations contained within the Franchise Agreement.

79.    As a direct and proximate result of Texdis' breaches of contract, JMV has been substantially damaged.

**WHEREFORE**, Plaintiff JM VIDAL, INC., respectfully requests that the Court enter an award in its favor and against Defendant TEXDIS USA, INC. and award damages, pre-judgment interest, costs, attorney's fees pursuant to RCW §4.84.330 and such other relief as the Court deems just and proper.

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 16

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## VIII.   COUNT IV – BREACH OF CONTRACT

### (Against Distex)

80.     JMV incorporates each and every allegation in paragraphs 1 through 79 above as though fully set forth in this Count.

81.     On or about October 25, 2005, JMV entered into a Franchise Agreement with Texdis and Distex for the operation of an MNG franchise at the Bellevue Square Mall.

82.     The Franchise Agreement sets forth various obligations owed by Distex to JMV.

83.     Distex breached the Franchise Agreement by failing to deliver merchandise to replenish JMV's store's inventory and add new merchandise to the product mix. (Ex. B, &III.B.1).

84.     In addition, there are implied terms contained within the Franchise Agreement, including an implied covenant of good faith and fair dealing requiring each party to cooperate with the other so that each may obtain the full benefit of performance under the Franchise Agreement.

85.     Inherent within the Franchise Agreement was the implied covenant and/or implied obligation upon Distex that:

a.     it possessed the infrastructure necessary to provide the services it agreed to provide to its franchisees, including JMV; and

b.     it possessed a system sufficient to administer the proper and orderly ordering and shipping of seasonal merchandise to JMV in a timely manner.

86.     Distex breached the implied obligations contained within the Franchise Agreement.

87.     As a direct and proximate result of Distex's breaches of contract, JMV has been substantially damaged.

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 17

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**WHEREFORE**, Plaintiff JM VIDAL, INC., respectfully requests that the Court enter an award in its favor and against Defendant DISTEX, INC. and award damages, pre-judgment interest, costs, attorney's fees pursuant to RCW §4.84.330 and such other relief as the Court deems just and proper.

### IX.    COUNT V – FRAUDULENT MISREPRESENTATION

### (Against Texdis)

88.    JMV incorporates each and every allegation in paragraphs 1 through 87 above as though fully set forth in this Count.

89.    In or around April, 2005, Jose Gomez, on behalf of Texdis, represented to JMV's principal that he fully expected that JMV's store would generate at least $1000 per square foot in annual sales.  The size of the store that JMV was considering at the time was approximately 3,000 square feet.  As such, based upon Gomez's representation, JMV was led to believe that his MNG store would generate no less than $3,000,000 in annual sales.

90.    Texdis was in a position to know the veracity of the information being supplied and, as a franchisor, was in a special position of superiority and/or privity with JMV which required Texdis to impart correct information to JMV.

91.    Texdis knew or should have known that these representations were false.

92.    Texdis intended that these statements would induce JMV to act.

93.    JMV did not know, have reason to know, nor could have discovered, through the exercise of reasonable diligence, the falsity of the foregoing misrepresentations.

94.    JMV reasonably and justifiably relied upon Texdis' misrepresentations.

95.    As a direct, proximate, and foreseeable result of Texdis' fraudulent misrepresentations and concealment, JMV has been damaged.

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 18

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**WHEREFORE**, Plaintiff JM VIDAL, INC., respectfully requests that the Court enter an award in its favor and against Defendant TEXDIS USA, INC. for rescission and/or for an award of damages, pre-judgment interest, costs, attorney's fees pursuant to RCW §4.84.330, and such other relief as the Court deems just and proper.

## X.     COUNT VI – NEGLIGENT MISREPRESENTATION

### (Against Texdis)

96.     JMV incorporates each and every allegation in paragraphs 1 through 95 above as though fully set forth in this Count.

97.     Texdis supplied information to JMV relating to the anticipated sales revenue that JMV could anticipate its store to generate for the guidance of JMV in its business transactions.

98.     Texdis was in a position to know the veracity of the information being supplied and, as a franchisor, was in a special position of superiority and/or privity with JMV which required Texdis to impart correct information to JMV.

99.     The information supplied by Texdis was false.

100.     Texdis knew or should have known that the information was supplied to guide JMV in its business transactions.

101.     Texdis was negligent in obtaining or communicating the false information.

102.     JMV reasonably and justifiably relied on the false information and was induced into signing the Franchise Agreement based upon such information.

103.     As a direct and proximate result of Texdis' negligent misrepresentation, JMV has been substantially damaged.

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 19

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**WHEREFORE**, Plaintiff JM VIDAL, INC., respectfully requests that the Court enter an award in its favor and against Defendant TEXDIS USA, INC. for rescission and/or for an award of damages, pre-judgment interest, costs, attorney's fees pursuant to RCW §4.84.330, and such other relief as the Court deems just and proper.

## XI.    DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 38(b) for the Western District of Washington , Plaintiff JM VIDAL, INC demands a trial by jury as to all issues so triable under the laws of the United States and the State of Washington.

## XII.    PRAYER FOR RELIEF

WHEREFORE, JM VIDAL, INC. respectfully requests that the Court enter judgment against Defendants TEXDIS USA, INC. and DISTEX, INC. as follows:

1.    That the Court enter an award in favor of JM VIDAL, INC. for rescission and/or for an award of damages;

2.    That the Court award JM VIDAL, INC. pre-judgment interest in an amount to be proven at trial;

3.    That the Court award JM VIDAL, INC. its reasonable costs, attorney's fees, and expenses related to this lawsuit; and

4.    That the Court grant JM VIDAL, INC. any and all other relief to which JM VIDAL, INC. is entitled and such other or additional relief as is just and proper.

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 20

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

## DEMAND FOR JURY TRIAL

2
    Plaintiff, JM Vidal Inc., hereby demands a trial by jury on all matters properly triable

3
by jury under the laws of the United States and the State of Washington.

4
    DATED this 27th day of March, 2008.

5

6
                                        s/Jesse O. Franklin IV___

7
                                        Jesse O. Franklin IV, WSBA # 13755
                                        Kevin A. Rosenfield, WSBA # 34972

8
                                        KIRKPATRICK & LOCKHART
                                        PRESTON GATES & ELLIS LLP

9
                                        925 Fourth Avenue Suite 2900
                                        Seattle WA 98104-1158

10
                                        Telephone:  (206) 623-7580
                                        Facsimile:  (206) 370-6063

11
                                        E-mail:  jesse.franklin@klgates.com;

12
                                        kevin.rosenfield@klgates.com

13

14
                                        s/Alejandro Brito____

15
                                        Robert Zarco
                                        Alejandro Brito

16
                                        ZARCO EINHORN SALKOWSKI & BRITO
                                        Bank of America Tower

17
                                        100 S.E. 2nd Street
                                        27th Floor

18
                                        Miami, Florida  33131-2193
                                        Telephone:  (305) 374-5418

19
                                        Facsimile:  (305) 374-5428
                                        E-mail:  ABrito@zarcolaw.com

20
                                        *Seeking Appearance Pro Hac Vice*

21
                                        Attorneys for Plaintiff
                                        JM VIDAL, INC.

22

23

24

25

COMPLAINT FOR VIOLATION OF WASHINGTON
FRANCHISE INVESTMENT PROTECTION ACT - 21

K:\2053339\00001\20695_KAR\20695P21G1

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

℀JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
JM VIDAL, INC.

## DEFENDANTS
TEXDIS USA, INC. and DISTEX, INC.

**(b)** County of Residence of First Listed Plaintiff    KING
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    New Castle (Delaware)
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Kirkpatrick & Lockhart Preston Gates Ellis LLP, 925 Fourth Ave.
Seattle , WA 98104

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                                         and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☒ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 196 Franchise | **PERSONAL INJURY** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | ☐ 362 Personal Injury - Med. Malpractice | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 365 Personal Injury - Product Liability | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | **PERSONAL PROPERTY** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 370 Other Fraud | | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending | | | |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 441 Voting | **PRISONER PETITIONS** | ☐ 462 Naturalization Application | | |
| ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | ☐ 463 Habeas Corpus - Alien Detainee | | |
| ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | ☐ 465 Other Immigration Actions | | |
| ☐ 444 Welfare | ☐ 530 General | | | |
| ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | |
| ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | | | |
| ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1332
Brief description of cause:
violation of franchise statues; breach of contract; misrepresentation

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):

JUDGE

DOCKET NUMBER

DATE
03/27/2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

Donna M
Jackson/WAWD/09/USCOU
RTS
Sent by: Lynn Kandziora

03/27/2008 12:56 PM

To "Schwarz, Kathy" <kathy.schwarz@klgates.com>
cc newcases.seattle@wawd.uscourts.gov, Donna M
Jackson/WAWD/09/USCOURTS@USCOURTS
bcc
Subject Re: JM VIDAL v. TEXDIS, et al.  - Complaint, Summons(2) and Civil Cover Sheet

Case Number 08-CV-485 to Judge Ricardo S. Martinez has been assigned. Summons and receipt has been issued to messenger.
"Schwarz, Kathy" <kathy.schwarz@klgates.com>



"Schwarz, Kathy"
<kathy.schwarz@klgates.co
m>

03/27/2008 10:29 AM

To <newcases.seattle@wawd.uscourts.gov>
cc
Subject JM VIDIS v. TEXDIS, et al.  - Complaint, Summons(2) and Civil Cover Sheet

Dear Clerk:

     Please find in PDF the following:  Civil Cover Sheet, Summons for TEXDIS, INC., Summons for DISTEX, INC., and Complaint with Exhibit A and Exhibit B.  A messenger will deliver the $350 filing fee in the hour or so along with a printout of this email for reference and and the two Summons for issuance.  Please call me at (206) 370-5858 if you have any questions.  Thank you.  Kathy for Kevin Rosenfield and Jesse O. Franklin IV.

**Civil Cover Sheet:**

<<20080327100553330cc.pdf>>
**Summons:  TEXDIS, USA, INC.**

<<20080327100542131texdis.pdf>>
**Summons:  DISTEX, INC.**
<<20080327100547479distex.pdf>>
**Complaint:**

<<20080327094829228.pdf>>
**Exhibit A**

<<20080326155515053EXA.pdf>>
**Exhibit B**

<<20080326155746836ExB.pdf>>
Thank you, Kathy

Kathy E. Schwarz
Legal Secretary
K&L Gates
Direct Dial: (206) 370-5858
Email: kathy.schwarz@klgates.com

This electronic message contains information from the law firm of Kirkpatrick & Lockhart Preston Gates
Ellis LLP. The contents may be privileged and confidential and are intended for the use of the intended
addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution,
or use of the contents of this message is prohibited. If you have received this e-mail in error, please



contact me at kathy.schwarz@klgates.com.   20080327100553330cc.pdf   20080327100542131textdis.pdf

               

20080327100547479distex.pdf   20080327094829228.pdf   20080326155515053EXA.pdf   20080326155746836ExB.pdf

# UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF WASHINGTON
OFFICE OF THE CLERK

BRUCE RIFKIN
CLERK

700 STEWART STREET
SEATTLE, WASHINGTON 98101

March 28, 2008

RE:    JM Vidal, Inc v. Texdis USA, Inc., et al
       C08-0485RSM

Dear Counsel:

On March 27, 2008,  the above case was filed in the Western District of Washington.  Pursuant to our local rule GR2(d), you are required to apply for pro hac vice status.  In addition, mandatory electronic filing has been in effect since June 2004.  I've included an Application For Leave to Appear Pro Hac Vice for your convenience.  You may also obtain a copy from our website: www.wawd.uscourts.gov.  Please note that local counsel on this case can file this application for you via e-filing or through the mail.  Also note, as of March 21, 2008,  the Pro Hac Vice fee increased from $75 to $150.00.

E-filing procedures are available on our website.  If you have any questions about the process, please call our ECF Help Desk at 1-866-323-9293.

Sincerely,


 s/ Donna Jackson
Donna Jackson
Deputy Clerk




cc: local counsel via ECF (J. Franklin and K. Rosenfield)

# United States District Court
## Western District of Washington

| | |
|---|---|
| JM VIDAL, INC. | Case Number _____ C 08-0485 _____ |
| **Plaintiff(s)** | |
| V. | APPLICATION FOR LEAVE TO APPEAR |
| TEXDIS USA, INC. et al. | PRO HAC VICE |
| **Defendant(s)** | |

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, _____ Roberto Zarco _____ hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the following party or parties:

JM VIDAL, INC.

The particular need for my appearance and participation is:

LEAD COUNSEL

I, _____ Roberto Zarco _____ understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are not disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date: _____ Apr 2, 2008 _____        Signature of Applicant: _Robert Zarco_

Pro Hac Vice Attorney
Applicant's Name:        Roberto Zarco

Law Firm Name:           ZARCO, EINHORN, SALKOWSKI & BRITO, P.A.

Street Address 1:        100 S.E. 2ND STREET, SUITE 2700

Address Line 2:

City:  MIAMI          State:  Florida          Zip:  33131

Phone Number w/ Area
Code  Example: 999-999-9999          305-374-5418

## STATEMENT OF LOCAL COUNSEL

I am authorized and will be prepared to handle this matter, including trial, in the event the

applicant  Roberto Zarco                            is unable to be present upon any date

assigned by the court.

Date:       Apr 2, 2008          Signature of Local Counsel:

Local Counsel's Name:    Jesse O. Franklin IV

Law Firm Name:           Kirkpatrick & Lockhart Preston Gates Ellis LLP

Street Address 1:        925 Fourth Avenue, Suite 2900

Address Line 2:

City:  Seattle          State:  Washington          Zip:  98104

Phone Number w/ Area
Code  Example: 999-999-9999          206-623-7580



# ATTORNEY REGISTRATION FORM
## for the
## ELECTRONIC CASE FILING SYSTEM

**Last Name:** Brito                    **First:** Alejandro                    **Middle:**

**Last Four Digits of Social Security Number:** _____    **Attorney Bar # and State:** 98442

**Firm Name:** ZARCO, EINHORN, SALKOWSKI & BRITO, P.A.

**Street Address 1:** 100 S.E. 2ND STREET, SUITE 2700

**Address Line 2:**

**City:** MIAMI                    **State:** Florida                    **Zip:** 33131

**Telephone Number** 305-374-5418

**E-mail** Abrito@zarcolaw.com                    **Secondary e-mail**

**Does your e-mail software support HTML messages?**        ☒ Yes        ☐ No

By submitting this registration form, the undersigned understands and agrees to the following:

1.  The CM/ECF system is to be used for filing and reviewing electronic documents, docket sheets, and notices.

2.  The password issued to you by the court, combined with your login, serves as your signature under Federal Rule of Civil Procedure 11. Therefore, you are responsible for protecting and securing this password against unauthorized use.

3.  If you have any reason to suspect that your password has been compromised in any way, you are responsible for immediately notifying the court. Members of the court's systems staff will assess the risk and advise you accordingly.

4.  By signing this Registration Form, you consent to receive notice electronically, and to waive your right to receive notice by personal service or first class mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(D), except with regard to service of a complaint and summons. This provision *does* include electronic notice of the entry of an order or judgment.

5.  You will continue to access court information via the Western District of Washington's internet site or through the Public Access to Court Electronic Records (PACER) system. You will continue to need a PACER login, in addition to the court-issued password. You can register for PACER at their web site: **http://pacer.psc.uscourts.gov.**

6.  By this registration, the undersigned agrees to abide by the rules and regulations in the most recent General Order, the Electronic Filing Procedures developed by the Clerk's Office, and any changes or additions that may be made to such administrative procedures in the future.

_____                    Apr 2, 2008
              **Signature**                                                    **Date**

Print these forms . Then scan them separately as two PDF files.

Electronically file the *Application for Leave to Appear Pro Hac Vice* with the *Attorney Registration Form* as an attachment.

Pay the $150 fee online with a credit card during the filing event.

| Print Form |

# United States District Court
# Western District of Washington

| JM VIDAL, INC. | Case Number | C 08-0485 |
|---|---|---|
| Plaintiff(s) | | |

V.

| TEXDIS USA, INC. et al. | APPLICATION FOR LEAVE TO APPEAR PRO HAC VICE |
|---|---|
| Defendant(s) | |

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, _____ Alejandro Brito _____ hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the following party or parties:

JM VIDAL, INC.

The particular need for my appearance and participation is:

LEAD COUNSEL

I, _____ Alejandro Brito _____ understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are not disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date:    Apr 2, 2008          Signature of Applicant: _____

| Pro Hac Vice Attorney Applicant's Name: | Alejandro Brito |
|---|---|

| Law Firm Name: | ZARCO, EINHORN, SALKOWSKI & BRITO, P.A. |
|---|---|

| Street Address 1: | 100 S.E. 2ND STREET, SUITE 2700 |
|---|---|

| Address Line 2: | |
|---|---|

| City: | MIAMI | State: | Florida | Zip: | 33131 |
|---|---|---|---|---|---|

| Phone Number w/ Area Code  Example: 999-999-9999 | 305-374-5418 |
|---|---|

## STATEMENT OF LOCAL COUNSEL

I am authorized and will be prepared to handle this matter, including trial, in the event the

applicant   Alejandro Brito                                    is unable to be present upon any date

assigned by the court.

Date:   Apr 2, 2008              Signature of Local Counsel:

| Local Counsel's Name: | Jesse O. Franklin IV |
|---|---|

| Law Firm Name: | Kirkpatrick & Lockhart Preston Gates Ellis LLP |
|---|---|

| Street Address 1: | 925 Fourth Avenue |
|---|---|

| Address Line 2: | Suite 2900 |
|---|---|

| City: | Seattle | State: | Washington | Zip: | 98104 |
|---|---|---|---|---|---|

| Phone Number w/ Area Code  Example: 999-999-9999 | 206-623-7580 |
|---|---|



# ATTORNEY REGISTRATION FORM
## for the
## ELECTRONIC CASE FILING SYSTEM

**Last Name:** Zarco     **First:** Roberto     **Middle:**

**Last Four Digits of Social Security Number:** _____     **Attorney Bar # and State:** 502138

**Firm Name:** ZARCO, EINHORN, SALKOWSKI & BRITO, P.A.

**Street Address 1:** 100 S.E. 2ND STREET, SUITE 2700

**Address Line 2:**

**City:** MIAMI     **State:** Florida     **Zip:** 33131

**Telephone Number** 305-374-5418

**E-mail** Rzarco@zarcolaw.com     **Secondary e-mail**

**Does your e-mail software support HTML messages?**     ☒ Yes     ☐ No

By submitting this registration form, the undersigned understands and agrees to the following:

1. The CM/ECF system is to be used for filing and reviewing electronic documents, docket sheets, and notices.

2. The password issued to you by the court, combined with your login, serves as your signature under Federal Rule of Civil Procedure 11. Therefore, you are responsible for protecting and securing this password against unauthorized use.

3. If you have any reason to suspect that your password has been compromised in any way, you are responsible for immediately notifying the court. Members of the court's systems staff will assess the risk and advise you accordingly.

4. By signing this Registration Form, you consent to receive notice electronically, and to waive your right to receive notice by personal service or first class mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(D), except with regard to service of a complaint and summons. This provision *does* include electronic notice of the entry of an order or judgment.

5. You will continue to access court information via the Western District of Washington's internet site or through the Public Acess to Court Electronic Records (PACER) system. You will continue to need a PACER login, in addition to the court-issued password. You can register for PACER at their web site:   http://pacer.psc.uscourts.gov.

6. By this registration, the undersigned agrees to abide by the rules and regulations in the most recent General Order, the Electronic Filing Procedures developed by the Clerk's Office, and any changes or additions that may be made to such administrative procedures in the future.

_____     Apr 2, 2008
**Signature**     **Date**

Print these forms . Then scan them  separately as two PDF files.

Electronically file the *Application for Leave to Appear Pro Hac Vice* with the *Attorney Registration Form* as an attachment.

Pay the  $150 fee online with a credit card during the filing event.

Print Form

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| JM VIDAL, INC., a Washington corporation, | ) | No. 2:08-cv-00485-RSM |
| Plaintiff, | ) | |
| v. | ) | NOTICE OF APPEARANCE |
| TEXDIS USA, INC., a Delaware corporation, and DISTEX, INC., a Delaware corporation, | ) | |
| Defendants. | ) | |

TO:         Plaintiff above-named;

AND TO:   Alejandro Brito
          Roberto Zarco
          ZARCO, EINHORN SALKOWSKI & BRITO PA

          Jesse Owen Franklin, IV
          Kevin A. Rosenfield
          KIRKPATRICK & LOCKHART PRESTON GATES ELLIS

          as attorneys of record for said plaintiff

          YOU AND EACH OF YOU will please take notice that the defendants, Texdis USA,

Inc. and Distex, Inc., hereby appear in the above-entitled action and request that all further

papers and pleadings, except original process, be served upon the undersigned attorneys at the

address below stated.

NOTICE OF APPEARANCE (2:08-cv-00485-RSM) — 1
DWT 2419563v1 0000099-010073

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   DATED this 16th day of April, 2008.

2                                           **Davis Wright Tremaine LLP**

3

4                                           By s/Jennifer Lenga Long
                                               Bradley L. Fisher, WSBA #19895
5                                              Jennifer Lenga Long, WSBA #32895
                                               Suite 2200
6                                              1201 Third Avenue
                                               Seattle, Washington  98101-3045
7                                              Telephone: (206) 622-3150
                                               Fax: (206) 757-7700
8                                              E-mail: jenniferlenga@dwt.com
                                               E-mail: bradfisher@dwt.com

9                                           **Seyfarth Shaw LLP**

10

11                                          By s/Louis Chronowski
                                               Louis Chronowski
12                                             Dana Marjorie Orr
                                               131 S. Dearborn Street, Suite 2400
13                                             Chicago, Illinois  60603
                                               Telephone: (312) 460-5891
14                                             Fax: (312) 460-7891
                                               E-mail: LChronowski@seyfarth.com
15                                             E-mail: Dorr@seyfarth.com

16                                          **Attorneys for Defendants Texdis USA,
                                            Inc. and Distex, Inc.**

17                                              *[Pending Pro Hac Vice Approval]*

18

19

20

21

22

23

24

25

26

27

NOTICE OF APPEARANCE (2:08-cv-00485-RSM) — 2
DWT 2419563v1 0000099-010073

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

### CERTIFICATE OF SERVICE

2

3
I hereby certify that on April 16, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

4

5
Jesse O. Franklin IV
Kevin A. Rosenfield

6
KIRKPATRICK & LOCKHART PRESTON GATES & ELLIS LLP
925 Fourth Avenue, Suite 2900

7
Seattle, Washington 98104-1158
Telephone: (206) 623-7580

8
Facsimile: (206) 370-6063
E-mail: jesse.franklin@klgates.com

9
E-mail: Kevin.rosenfield@klgates.com

10
Robert Zarco
Alejandro Brito

11
ZARCO EINHORN SALKOWSKI & BRITO
Bank of America Tower

12
100 SE 2nd Street, 27th Floor
Miami, Florida 33131-2193

13
Telephone: (305) 374-5418
Facsimile: (305) 374-5428

14
E-mail: Rzarco@zarcolaw.com

15
E-mail: ABrito@zarcolaw.com

16
and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participants:

17

18
None.

19
Dated this 16th day of April, 2008.

20

21
s/_____

22
Jennifer Lenga Long

23

24

25

26

27

NOTICE OF APPEARANCE (2:08-cv-00485-RSM) — 3
DWT 2419563v1 0000099-010073

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# United States District Court
# Western District of Washington

JM Vidal, Inc.

Plaintiff(s)

V.

TEXDIS USA, INC. and DISTEX, INC.

Defendant(s)

Case Number  2:08-cv-00485-RSM

APPLICATION FOR LEAVE TO APPEAR
PRO HAC VICE

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of Washington, _____Louis S. Chronowski, Jr._____ hereby applies for permission to appear and participate as counsel in the above entitled action on behalf of the following party or parties:

TEXDIS USA, INC. and DISTEX, INC.

The particular need for my appearance and participation is:

To fulfill client request.

I, _____Louis S. Chronowski, Jr._____ understand that I am charged with knowing and complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association; and there are not disciplinary proceedings against me.

.

I declare under penalty of perjury that the foregoing is true and correct.

Date:    April 15, 2008          Signature of Applicant:  s/ Louis S. Chronowski, Jr.

| Pro Hac Vice Attorney Applicant's Name: | Louis S. Chronowski, Jr. |
|---|---|

| Law Firm Name: | Seyfarth Shaw LLP |
|---|---|

| Street Address 1: | 131 South Dearborn Street, Suite 2400 |
|---|---|

| Address Line 2: | |
|---|---|

| City: | Chicago | State: | Illinois | Zip: | 60603 |
|---|---|---|---|---|---|

| Phone Number w/ Area Code  Example: 999-999-9999 | 312-460-5891 |
|---|---|

## STATEMENT OF LOCAL COUNSEL

I am authorized and will be prepared to handle this matter, including trial, in the event the applicant  Louis S. Chronowski, Jr.  is unable to be present upon any date assigned by the court.

Date:  Apr 15, 2008        Signature of Local Counsel:  s/ Jennifer Lenga Long

| Local Counsel's Name: | Jennifer Lenga Long |
|---|---|

| Law Firm Name: | Davis Wright Tremaine LLP |
|---|---|

| Street Address 1: | 1201 Third Avenue, Suite 2200 |
|---|---|

| Address Line 2: | Seattle, WA 98101 |
|---|---|

| City: | Seattle | State: | Washington | Zip: | 98101 |
|---|---|---|---|---|---|

| Phone Number w/ Area Code  Example: 999-999-9999 | (206) 757-8086 |
|---|---|



# ATTORNEY REGISTRATION FORM
## for the
## ELECTRONIC CASE FILING SYSTEM

**Last Name:** Chronowski, Jr.                **First:** Louis                **Middle:** S.

**Last Four Digits of Social Security Number:** 0422                **Attorney Bar # and State:** 6269538/IL

**Firm Name:** Seyfarth Shaw LLP

**Street Address 1:** 131 South Dearborn Street, Suite 2400

**Address Line 2:**

**City:** Chicago                **State:** Illinois                **Zip:** 60603

**Telephone Number** 312-460-5891

**E-mail** lchronowski@seyfarth.com                **Secondary e-mail**

**Does your e-mail software support HTML messages?**                ☒ Yes                ☐ No

By submitting this registration form, the undersigned understands and agrees to the following:

1. The CM/ECF system is to be used for filing and reviewing electronic documents, docket sheets, and notices.

2. The password issued to you by the court, combined with your login, serves as your signature under Federal Rule of Civil Procedure 11. Therefore, you are responsible for protecting and securing this password against unauthorized use.

3. If you have any reason to suspect that your password has been compromised in any way, you are responsible for immediately notifying the court. Members of the court's systems staff will assess the risk and advise you accordingly.

4. By signing this Registration Form, you consent to receive notice electronically, and to waive your right to receive notice by personal service or first class mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(D), except with regard to service of a complaint and summons. This provision *does* include electronic notice of the entry of an order or judgment.

5. You will continue to access court information via the Western District of Washington's internet site or through the Public Acess to Court Electronic Records (PACER) system.  You will continue to need a PACER login, in addition to the court-issued password.  You can register for PACER at their web site:    **http://pacer.psc.uscourts.gov**.

6. By this registration, the undersigned agrees to abide by the rules and regulations in the most recent General Order, the Electronic Filing Procedures developed by the Clerk's Office, and any changes or additions that may be made to such administrative procedures in the future.

s/  Louis S. Chronowski, Jr.                                                April 15, 2008

_____                        _____
**Signature**                                                **Date**

### Print these forms . Then scan them  separately as two PDF files.

**Electronically file the *Application for Leave to Appear Pro Hac Vice* with the *Attorney Registration Form* as an attachment.**

**Pay the  $150 fee online with a credit card during the filing event.**

[ Print Form ]

# United States District Court
# Western District of Washington

|  |
|---|
| JM Vidal, Inc. |

Plaintiff(s)

V.

|  |
|---|
| TEXDIS USA, INC. and DISTEX, INC. |

Defendant(s)

Case Number  **2:08-cv-00485-RSM**

APPLICATION FOR LEAVE TO APPEAR
PRO HAC VICE

Pursuant to Local General Rule 2(d) of the United States District Court for the Western District of

Washington, _____ Dana Marjorie Orr _____ hereby applies for permission to appear

and participate as counsel in the above entitled action on behalf of the following party or parties:

|  |
|---|
| TEXDIS USA, INC. and DISTEX, INC. |

The particular need for my appearance and participation is:

|  |
|---|
| To fulfill client request. |

I, _____ Dana Marjorie Orr _____ understand that I am charged with knowing and

complying with all applicable local rules;

I have not been disbarred or formally censured by a court of record or by a state bar association;
and there  are not disciplinary proceedings against me.

I declare under penalty of perjury that the foregoing is true and correct.

Date:     April 15, 2008          Signature of Applicant:  s/ Dana Marjorie Orr
_____                        _____

| Pro Hac Vice Attorney Applicant's Name: | Dana Marjorie Orr |
|---|---|
| Law Firm Name: | Seyfarth Shaw LLP |
| Street Address 1: | 131 South Dearborn Street, Suite 2400 |
| Address Line 2: | |

| City: | Chicago | State: | Illinois | Zip: | 60603 |
|---|---|---|---|---|---|

| Phone Number w/ Area Code Example: 999-999-9999 | 312-460-5316 |
|---|---|

## STATEMENT OF LOCAL COUNSEL

I am authorized and will be prepared to handle this matter, including trial, in the event the

applicant   Dana Marjorie Orr                          is unable to be present upon any date

assigned by the court.

Date:        Apr 15, 2008              Signature of Local Counsel:   s/ Jennifer Lenga Long

| Local Counsel's Name: | Jennifer Lenga Long |
|---|---|
| Law Firm Name: | Davis Wright Tremaine LLP |
| Street Address 1: | 1201 Third Avenue, Suite 2200 |
| Address Line 2: | Seattle, WA 98101 |

| City: | Seattle | State: | Washington | Zip: | 98101 |
|---|---|---|---|---|---|

| Phone Number w/ Area Code Example: 999-999-9999 | (206) 757-8086 |
|---|---|



# ATTORNEY REGISTRATION FORM
## for the
## ELECTRONIC CASE FILING SYSTEM

**Last Name:** Orr          **First:** Dana          **Middle:** Marjorie

**Last Four Digits of Social Security Number:** 1579     **Attorney Bar # and State:** 6285068/IL

**Firm Name:** Seyfarth Shaw LLP

**Street Address 1:** 131 South Dearborn Street, Suite 2400

**Address Line 2:**

**City:** Chicago          **State:** Illinois          **Zip:** 60603

**Telephone Number**          312-460-5316

**E-mail**          dorr@seyfarth.com          **Secondary e-mail**

**Does your e-mail software support HTML messages?**          ☒ **Yes**          ☐ **No**

By submitting this registration form, the undersigned understands and agrees to the following:

1. The CM/ECF system is to be used for filing and reviewing electronic documents, docket sheets, and notices.

2. The password issued to you by the court, combined with your login, serves as your signature under Federal Rule of Civil Procedure 11. Therefore, you are responsible for protecting and securing this password against unauthorized use.

3. If you have any reason to suspect that your password has been compromised in any way, you are responsible for immediately notifying the court. Members of the court's systems staff will assess the risk and advise you accordingly.

4. By signing this Registration Form, you consent to receive notice electronically, and to waive your right to receive notice by personal service or first class mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(D), except with regard to service of a complaint and summons. This provision *does* include electronic notice of the entry of an order or judgment.

5. You will continue to access court information via the Western District of Washington's internet site or through the Public Acess to Court Electronic Records (PACER) system. You will continue to need a PACER login, in addition to the court-issued password. You can register for PACER at their web site:   **http://pacer.psc.uscourts.gov**.

6. By this registration, the undersigned agrees to abide by the rules and regulations in the most recent General Order, the Electronic Filing Procedures developed by the Clerk's Office, and any changes or additions that may be made to such administrative procedures in the future.

s/ Dana Marjorie Orr                                        April 15, 2008

_____          _____
**Signature**                                              **Date**

**Print these forms . Then scan them separately as two PDF files.**

**Electronically file the *Application for Leave to Appear Pro Hac Vice* with the *Attorney Registration Form* as an attachment.**

**Pay the $150 fee online with a credit card during the filing event.**

Page 3 of 3

[ Print Form ]

1                                                    The Honorable Ricardo S. Martinez

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
8                               AT SEATTLE

9

10 JM VIDAL, INC.,
    a Washington corporation,                    No.  C08-0485 RSM

11                            Plaintiff,      STIPULATED MOTION AND
                                      [PROPOSED] ORDER EXTENDING
12       v.                                TIME FOR DEFENDANTS TO
                                      ANSWER COMPLAINT
13 TEXDIS USA, INC., a Delaware
    corporation, and DISTEX, INC., a        **Note for Consideration: April 17, 2008**
14     Delaware corporation,
                                        **<u>CLERK'S ACTION REQUIRED</u>**
15                           Defendants.

16

17                                     **STIPULATION**

18         Plaintiff JM Vidal, Inc., by and through its counsel of record, and Defendants TEXDIS

19 USA, Inc. and DISTEX, Inc., by and through its counsel of record, respectfully move for, and

20 HEREBY STIPULATE AND AGREE THAT:

21         (1)    the time for Defendants to answer or otherwise respond to Plaintiff's

22 Complaint be extended for a period through and to May 12, 2008.

23         / / /

24         / / /

25         / / /

STIPULATED MOTION AND [PROPOSED]
ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER COMPLAINT - 1
C08-0485

K:\2053339\00001\20659_JOF\20659P279E

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1   Respectfully submitted this 17th day of April 2008.

2
                              **Stipulated to and presented by:**
3

4                             By:  _/s Jesse O. Franklin IV_____

5                                  Jesse O. Franklin IV, WSBA # 13755
                                   Kevin A. Rosenfield, WSBA # 34972
6                             KIRKPATRICK & LOCKHART
7                             PRESTON GATES ELLIS LLP
                              925 Fourth Avenue, Suite 2900
8                             Seattle,WA 98104
                              Telephone:  (206) 623-7580
9                             Facsimile:   (206) 370-6063
                              jesse.franklin@klgates.com
10                            kevin.rosenfield@klgates.com

11                            **Attorneys for Plaintiff (Local)**
                              **JM VIDAL, INC.**
12
                              and
13

14                            By:  _/s Alejandro Brito_____
                                   Robert Zarco
15                                 Alejandro Brito
                              ZARCO EINHORN SALKOWSKI & BRITO
16                            Bank of America Tower
                              100 S.E. 2nd Street - 27th Floor
17                            Miami, FL  33131-2193
                              Telephone:   (305) 374-5418
18                            Facsimile:   (305) 374-5428
                              ABrito@zarcolaw.com
19                            RZarco@zarcolaw.com

20                            **Attorneys for Plaintiff, *Pro Hac Vice***
21                            **JM VIDAL, INC.**

22                            and

23

24                            **[continued on next page]**

25

STIPULATED MOTION AND [PROPOSED]
ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER COMPLAINT - 2
C08-0485

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2053339\00001\20659_JOF\20659P279E

1
2
3
4
5
6

By:  s/Jennifer Lenga Long
      Jennifer Lenga Long
      Bradley Lloyd Fisher
Davis Wright Tremaine LLP
201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 757-8086
Facsimile: (206) 757-7086
jenniferlenga@dwt.com
bradfisher@dwt.com

7
8

**Attorneys for Defendants (Local)**
**TEXDIS USA, INC. and DISTEX, INC.**

9
10
11
12
13
14

By:  s/Lou Chronowski
      Lou Chronowski
      Dana Marjorie Orr
Seyfarth Shaw LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603
Telephone: (312) 460-5891
Facsimile:  (312) 460-7891
lchronowski@seyfarth.com
dorr@seyfarth.com

15

**Attorneys for Defendants *(Pro Hac Vice)***
**TEXDIS USA, INC. and DISTEX, INC.**

16
17

## ORDER
[PROPOSED]

18
19

The Court, having considered the parties' papers, including the above stipulation, as

well as all relevant matters of record HEREBY ORDERS:

20
21

(1)    the Defendants shall answer or otherwise respond to Plaintiff's Complaint
         on or before May 12, 2008.

22
23

DATED this _____ day of April, 2008.

24
25

_____
**HONORABLE RICARDO S. MARTINEZ**
**UNITED STATES DISTRICT COURT**

STIPULATED MOTION AND [PROPOSED]
ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER COMPLAINT - 3
C08-0485

K:\2053339\00001\20659_JOF\20659P279E

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

**CERTIFICATE OF SERVICE**

2

    I hereby certify that on April 17, 2008, I electronically filed the foregoing with the

3

Clerk of the Court using CM/ECF system, which will send notification of the filing to the

4

following parties:

5

6    Jennifer Lenga Long               Lou Chronowski
    Bradley Lloyd Fisher            Dana Marjorie Orr

7    Davis Wright Tremaine LLP      Seyfarth Shaw LLP
    201 Third Avenue, Suite 2200     131 S. Dearborn Street, Suite 2400

8    Seattle, WA 98101                Chicago, IL 60603

9

10                        By:  /s Jesse O. Franklin IV
                       Jesse O. Franklin IV, WSBA # 13755

11                           Kevin A. Rosenfield, WSBA # 34972
                  KIRKPATRICK & LOCKHART

12                      PRESTON GATES ELLIS LLP
                  925 Fourth Avenue Suite 2900

13                      Seattle, WA 98104
                  Telephone:  (206) 623-7580

14                      Facsimile:   (206) 370-6063
                  jesse.franklin@klgates.com

15                      kevin.rosenfield@klgates.com

16                      **Attorneys for Plaintiff (Local)**
                  **JM VIDAL, INC.**

17                        By:  s/Alejandro Brito

18                           Robert Zarco
                       Alejandro Brito

19                      ZARCO EINHORN SALKOWSKI & BRITO
                  Bank of America Tower

20                      100 S.E. 2nd Street - 27th Floor
                  Miami, FL  33131-2193

21                      Telephone:   (305) 374-5418
                  Facsimile:   (305) 374-5428

22                      ABrito@zarcolaw.com
                  RZarco@zarcolaw.com

23

24                      **Attorneys for Plaintiff, *Pro Hac Vice***
                  **JM VIDAL, INC.**

25

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7               UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
8                        AT SEATTLE

9
   JM VIDAL, INC.,                          No.   C08-0485 RSM
10   a Washington corporation,
                                            STIPULATED MOTION AND ORDER
11                          Plaintiff,      EXTENDING TIME FOR
                                            DEFENDANTS TO ANSWER
12        v.                                COMPLAINT

13   TEXDIS USA, INC., a Delaware
   corporation, and DISTEX, INC., a
14   Delaware corporation,

15                          Defendants.

16                        **STIPULATION**

17        Plaintiff JM Vidal, Inc., by and through its counsel of record, and Defendants TEXDIS

18   USA, Inc. and DISTEX, Inc., by and through its counsel of record, respectfully move for, and

19   HEREBY STIPULATE AND AGREE THAT:

20        (1)     The time for Defendants to answer or otherwise respond to Plaintiff's

21              Complaint be extended for a period through and to May 12, 2008.

22

23        (2)     Respectfully submitted this 17th day of April 2008.

24

25

STIPULATED MOTION AND
ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER COMPLAINT - 1
C08-0485

K:\2053339\00001\20659_JOF\20659P279E

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

**Stipulated to and presented by:**

2

By:  _/s Jesse O. Franklin IV_____
     Jesse O. Franklin IV, WSBA # 13755
     Kevin A. Rosenfield, WSBA # 34972

3

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP

4

925 Fourth Avenue, Suite 2900

5

Seattle, WA 98104
Telephone:  (206) 623-7580

6

Facsimile:   (206) 370-6063

7

jesse.franklin@klgates.com
kevin.rosenfield@klgates.com

8

9

**Attorneys for Plaintiff (Local)**
**JM VIDAL, INC.**

10

By:  _/s Alejandro Brito_____
     Robert Zarco

11

     Alejandro Brito

12

ZARCO EINHORN SALKOWSKI & BRITO
Bank of America Tower

13

100 S.E. 2nd Street - 27th Floor

14

Miami, FL  33131-2193
Telephone:   (305) 374-5418

15

Facsimile:    (305) 374-5428
ABrito@zarcolaw.com

16

RZarco@zarcolaw.com

17

**Attorneys for Plaintiff,** *Pro Hac Vice*

18

**JM VIDAL, INC.**

19

By:  s/Jennifer Lenga Long
     Jennifer Lenga Long

20

     Bradley Lloyd Fisher

21

Davis Wright Tremaine LLP
201 Third Avenue, Suite 2200

22

Seattle, WA 98101
Telephone: (206) 757-8086

23

Facsimile: (206) 757-7086
jenniferlenga@dwt.com

24

bradfisher@dwt.com

25

STIPULATED MOTION AND
ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER COMPLAINT - 2
C08-0485

K:\2053339\00001\20659_JOF\20659P279E

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**Attorneys for Defendants (Local)**
**TEXDIS USA, INC. and DISTEX, INC.**

By:  s/Lou Chronowski
        Lou Chronowski
        Dana Marjorie Orr
Seyfarth Shaw LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL 60603
Telephone: (312) 460-5891
Facsimile:  (312) 460-7891
lchronowski@seyfarth.com
dorr@seyfarth.com

**Attorneys for Defendants (*Pro Hac Vice*)**
**TEXDIS USA, INC. and DISTEX, INC.**

# <u>ORDER</u>

The Court, having considered the parties' papers, including the above stipulation, as well as all relevant matters of record HEREBY ORDERS:

(1)    the Defendants shall answer or otherwise respond to Plaintiff's Complaint on or before <u>May 12, 2008</u>.

DATED this _21_ day of April, 2008.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

STIPULATED MOTION AND
ORDER EXTENDING TIME FOR
DEFENDANTS TO ANSWER COMPLAINT - 3
C08-0485

K:\2053339\00001\20659_JOF\20659P279E

KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JM VIDAL, INC.,<br>a Washington corporation,<br><br>                    Plaintiff,<br><br>   v.<br><br>TEXDIS USA, INC., a Delaware<br>corporation, and DISTEX, INC., a<br>Delaware corporation,<br><br>                  Defendants. | No.   C08-0485 RSM<br><br>RULE 7.1 DISCLOSURE STATEMENT |

Pursuant to the requirements of Fed. R. Civ. P. 7.1(a), plaintiff JM Vidal, Inc.

("JMV") states as follows:   JMV has no parent corporation, and no publicly-held corporation

owns more than 10% of its stock.

DATED this 2nd day of May, 2008.

Respectfully submitted,

By:  /s Jesse O. Franklin IV
     Jesse O. Franklin IV, WSBA # 13755
     Kevin A. Rosenfield, WSBA # 34972
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone:  (206) 623-7580
Facsimile:   (206) 370-6063
jesse.franklin@klgates.com
kevin.rosenfield@klgates.com

RULE 7.1 DISCLOSURE STATEMENT  - 1
   No.  C08-0485 RSM
K:\2053339\00001\20695_KAR\20695P21GJ

KIRKPATRICK & LOCKHART
PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

s/Alejandro Brito_____
Robert Zarco
Alejandro Brito
ZARCO EINHORN SALKOWSKI & BRITO
Bank of America Tower
100 S.E. 2nd Street - 27th Floor
Miami, Florida  33131-2193
Telephone:  (305) 374-5418
Facsimile:  (305) 374-5428
E-mail:  ABrito@zarcolaw.com
Attorneys for Plaintiff, *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, who will send electronic notice to the following parties:

Bradley Lloyd Fisher
Jennifer Lenga Long
Davis Write Tremaine LLP
201 Third Avenue, Suite 2200
Seattle, WA  98101

Lou Chronowski
Seyfarth Shaw LLP
131 S. Dearborn Street, Suite 2400
Chicago, IL  60603

DATED this 1st day of May, 2008

_/s Jesse O. Franklin IV_____
Jesse O. Franklin IV, WSBA # 13755
Kevin A. Rosenfield, WSBA # 34972
KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Telephone:  (206) 623-7580
Facsimile:  (206) 370-6063
jesse.franklin@klgates.com
kevin.rosenfield@klgates.com
Attorneys for Plaintiff, Local

RULE 7.1 DISCLOSURE STATEMENT  - 2
   No.  C08-0485 RSM
K:\2053339\00001\20695_KAR\20695P21GJ

KIRKPATRICK & LOCKHART
PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JM VIDAL, INC., a Washington corporation, ) | No. 2:08-cv-00485-RSM |
| ) | |
| Plaintiff, ) | DEFENDANTS' ANSWER, |
| ) | AFFIRMATIVE DEFENSES AND |
| v. ) | COUNTERCLAIM |
| ) | |
| TEXDIS USA, INC., a Delaware corporation, ) | JURY DEMAND |
| and DISTEX, INC., a Delaware corporation, ) | |
| ) | |
| Defendants. ) | |

15      Defendants, TEXDIS USA, INC. ("Texdis") and DISTEX, INC. ("Distex"),

16   collectively referred to as "Defendants", by and through their counsel, Seyfarth Shaw LLP,

17   and for their answer, affirmative defenses and counterclaim, state as follows:

18                    **I.      SUMMARY OF ACTION**

19      1.      This action comes as a result of a franchise relationship between the parties.

20   Plaintiff is engaged in the operation of an MNG franchise, a retail outlet offering clothing and

     accessories.  Defendant TEXDIS USA, INC. is the franchisor of MNG franchise system and

21   Defendant DISTEX, INC. is an affiliate of the franchisor charged with the responsibility of

22   selling MNG clothing and apparel to the Plaintiff on a wholesale basis.  Through this action,

     Plaintiff seeks an award of damages against the Defendants as a result of Defendants'

23   unlawful and predatory conduct.  In addition, Plaintiff seeks to rescind the franchise

24   agreement between the parties on the grounds that Plaintiff was induced into signing the

     franchise agreement as a result of improper and unlawful representations made by

25   Defendants.

26      **ANSWER**:  Defendants admit the factual allegations of Paragraph 1, but deny that

27   Plaintiff is entitled to the relief sought.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 1
DWT 11049259v3 0086759-000001

## II.    JURISDICTION AND VENUE

2.    This Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332, in that the parties are citizens of different states, and the matter in controversy exceeds, exclusive of interest, costs and attorney's fees, the sum or value of Seventy-Five Thousand Dollars ($75,000.00).

**ANSWER**:  Defendants admit the allegations of Paragraph 2.

3.    This Court possesses jurisdiction over the Defendants pursuant to RCW §4.28.185.  Also, this Court possesses jurisdiction over the Defendants pursuant to RCW §19.100.160 given that the Washington Franchise Investment Protection Act, which "represents a fundamental policy of the state of Washington," specifically provides that any person engaged directly or indirectly in the sale or offer to sell a franchise "shall be subject to the provisions of this chapter, shall be amenable to the jurisdiction of the courts of this state and shall be amenable to the service of process under RCW 4.28.180, 4.28.185 and 19.86.160."  RCW §19.100.160 and §19.10.220.

**ANSWER**:    Defendants neither admit or deny the allegations of Paragraph 3 to the

extent that they are legal conclusions.  Defendants admit the remaining allegations of

Paragraph 3.

4.    Venue is proper in this District pursuant to 28 U.S.C. 1391(a).

**ANSWER**:    Defendants admit the allegations of Paragraph 4.

5.    All conditions precedent to the commencement of this action have occurred, or have been performed, excused, satisfied or waived.

**ANSWER**:    Defendants deny the allegations of Paragraph 5.

## III.    PARTIES

6.    Plaintiff, JM VIDAL, INC. (hereinafter referred to as "JMV"), is a corporation organized under the laws of the State of Washington and maintaining its principal place of business in Seattle, Washington.  JMV is engaged in the operation of an MNG franchise, a retail outlet offering women's clothing and accessories.

**ANSWER**:    Defendants admit the allegations of Paragraph 6.

7.    Defendant, TEXDIS USA, INC. ("Texdis"), is a corporation believed to be organized under the laws of the State of Delaware and maintaining its principal place of

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 2
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

1  business in the State of New York.  Texdis is the franchisor of the MNG franchise system in
the United States.

2      **ANSWER**:    Defendants admit the allegations of Paragraph 7

3

4      8.      Defendant, DISTEX, INC. ("Distex"), is a corporation believed to be
organized under the laws of the State of Delaware and maintaining its principal place of

5  business in the State of New York.  Defendant DISTEX, INC. is engaged in wholesaling
MNG brand clothing and accessories to MNG franchisees, including the Plaintiff.

6

7      **ANSWER**:    Defendants admit the allegations of Paragraph 8.

8

9      9.      Texdis and Distex shall also be collectively referred to as the "Defendants."

10     **ANSWER**:    Defendants admit the allegations of Paragraph 9.

11     **IV.    FACTUAL ALLEGATIONS APPLICABLE TO ALL COUNTS**

12             **The MNG Franchise System**

13     10.     Punto Fa. S.L. ("Punto Fa"), a company formed under the laws of Spain,
originated the MNG franchise system in 1984 in Barcelona, Spain.  Punto Fa is the entity

14  which operates and franchises Mango and MNG retail clothing stores throughout Europe.

15     **ANSWER**:    Defendants admit the allegations of Paragraph 10.

16

17     11.     Texdis is a wholly-owned subsidiary of Mango MNG USA, Inc.  Mango MNG
USA, Inc. is a wholly-owned subsidiary of Punto Fa.

18

19     **ANSWER**:    Defendants admit the allegations of Paragraph 11.

20

21     12.     An MNG retail store sells MNG, Mango and/or MNG by Mango branded
women's apparel and fashion accessories.

22     **ANSWER**:    Defendants admit the allegations of Paragraph 12.

23

24     13.     Prior to March, 2005, neither Texdis, Mango MNG USA, Inc. nor Punto Fa
had ever operated an MNG retail store in the United States or sold an MNG franchise store in

25  the Untied States.

26     **ANSWER**:    Defendants admit the allegations of Paragraph 13.

27

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 3
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

14.     As alleged more fully below, in March, 2005, when Texdis "officially" began selling MNG franchises in the United States, Texdis:

        a.     was entirely unprepared to do so;

        b.     engaged in said franchise sales in violation of U.S. laws;

        c.     was incapable of complying with the franchise agreements with its franchisees; and

        d.     entirely failed to render the support, service and assistance that a franchisor typically provides to its franchisees.

**ANSWER**:     Defendants deny the allegations of Paragraph 14.

15.     In addition, Texdis entered the United States market knowing full well of the vast and substantial difficulties that it and its affiliates had previously experienced in franchising the MNG concept outside of Spain.  Most notably, the franchising of the MNG concept in England and Canada had been an unqualified failure.

**ANSWER**:     Defendants deny the allegations of Paragraph 15.

### The FTC Franchise Rule

16.     The Federal Trade Commission has promulgated certain laws requiring the delivery to prospective franchisees of a prescribed disclosure document (the Uniform Franchise Offering Circular, or "UFOC") concerning, inter alia, the franchisor, its management, and the material terms and conditions of the franchise agreement prior to the execution of any agreement by a prospective franchisee (hereinafter referred to as "the FTC Rule").

**ANSWER**:     Paragraph 16 fails to allege facts to which a responsive pleading is required, and calls for a legal conclusion, to which no response is required.  To the extent facts are alleged in Paragraph 16, Defendants deny the same for want of knowledge or information sufficient to form a belief as to the truth thereof.

17.     Under the FTC Rule, a UFOC is required to be given to prospective franchisees at the earlier of (a) the "first personal meeting," or (b) the "time for making disclosures."  The FTC Rule defines the first personal meeting as a face-to-face meeting between a prospective franchisee and a franchisor or its representative held for the purpose of discussing the sale or possible sale of a franchise.  The "time for making disclosures" is defined as ten (10) business days prior to the earlier of (1) the execution of a contract by the prospective franchisee or (2) the payment of consideration for the franchise by the prospective franchisee.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**ANSWER**:     Paragraph 17 fails to allege facts to which a responsive pleading is required, and calls for a legal conclusion, to which no response is required.  To the extent facts are alleged in Paragraph 17, Defendants deny the same for want of knowledge or information sufficient to form a belief as to the truth thereof.

18.     The FTC Rule additionally requires:  (a) that the franchisor have a reasonable basis for any oral, written, or visual earnings or profit representation ("earnings claim") it makes to a prospective franchisee; (b) that the franchisor provide to prospective franchisees an earnings claim document containing information substantiating any earnings claims it makes; and (c) that the franchisor, in immediate conjunction with any generally disseminated earnings claim, disclose additional information including the number and percentage of prior purchasers known by the franchisor to have achieved the same or better results.

**ANSWER**:     Paragraph 18 fails to allege facts to which a responsive pleading is required, and calls for a legal conclusion, to which no response is required.  To the extent facts are alleged in Paragraph 18, Defendants deny the same for want of knowledge or information sufficient to form a belief as to the truth thereof.

19.     Severe penalties are imposed for violations of the FTC Rule.

**ANSWER**:     Paragraph 19 fails to allege facts to which a responsive pleading is required, and calls for a legal conclusion, to which no response is required.  To the extent facts are alleged in Paragraph 16, Defendants deny the same for want of knowledge or information sufficient to form a belief as to the truth thereof.

20.     The FTC has determined that the FTC Rule will not preempt state or local laws and regulations that either are consistent with the FTC Rule or, if inconsistent, would provide protection to prospective franchisees equal to or greater than that imposed by the FTC Rule.

**ANSWER**:     Paragraph 20 fails to allege facts to which a responsive pleading is required, and calls for a legal conclusion, to which no response is required.  To the extent facts are alleged in Paragraph 20, Defendants deny the same for want of knowledge or information sufficient to form a belief as to the truth thereof.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 5
DWT 11049259v3 0086759-000001

21.     Accordingly, franchise sales disclosure in states without franchise or business opportunity laws or regulations will be governed by the FTC Rule, while disclosure in those states with rules consistent with or more stringent than the FTC Rule will be governed by state laws and regulations.

**ANSWER**:     Paragraph 21 fails to allege facts to which a responsive pleading is

required, and calls for a legal conclusion, to which no response is required.  To the extent

facts are alleged in Paragraph 21, Defendants deny the same for want of knowledge or

information sufficient to form a belief as to the truth thereof.

### JMV Becomes Interested in the MNG Franchise System

22.     In or about 2004, JMV's President, Jean Marie Vidal ("Vidal") became interested in acquiring an MNG franchise.  To that end, Vidal communicated with Jose Gomez ("Gomez"), Texdis' Vice-President of International Expansion (USA and Canada), with respect to the operation of an MNG franchise in Washington.

**ANSWER**:     Defendants lack knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 22.  Answering further, Defendants admit that

Gomez had discussions with Vidal regarding a MNG franchise and deny the remaining

allegations of Paragraph 22.

23.     From the time that Vidal first spoke with Gomez through May 13, 2005, Texdis was not authorized to offer to sell or sell franchises by the State of Washington, Department of Financial Institutions, Securities Division, as is expressly required by the Washington Franchise Investment Protection Act.

**ANSWER**:     Defendants admit the allegations of Paragraph 23.

24.     Nevertheless, Texdis unlawfully engaged in the solicitation of a franchise sale in the State of Washington by attempting to induce JMV into becoming an MNG franchisee.

**ANSWER**:     Defendants deny the allegations of Paragraph 24.

25.     To that end, in November, 2004, Gomez traveled to Seattle to meet with Vidal for the express purpose of discussing the franchise sale, visiting a proposed site for JMV's franchised business and to conduct meetings with the landlord of the proposed site.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 6
DWT 11049259v3 0086759-000001

**ANSWER:**    Defendants deny the allegations of Paragraph 25.

26.    This visit by Gomez constituted a "first personal meeting" under the FTC Rule. Yet, no UFOC was delivered to Vidal or JMV at this "first personal meeting" as was required by law.

**ANSWER:**    Defendants deny the allegations of Paragraph 26.

27.    Thereafter, in December, 2004, Gomez directed JMV to engage in negotiations with the landlord for the purposes of securing the proposed site.

**ANSWER:**    Defendants deny the allegations of Paragraph 27.

28.    In January, 2005, Gomez requested that he be sent the CAD plans for JMV's location as well as the financial information relating to the build-out of the site.

**ANSWER:**    Defendants deny the allegations of Paragraph 28.

29.    Gomez was fully aware that Texdis was prohibited by law from offering to sell or selling a franchise prior to obtaining the requisite approval in the State of Washington. Indeed, he advised the landlord of the proposed site that Texdis "can not start any kind of formal negotiations with our potential licensees.  It would be illegal to do that."  [emphasis supplied].

**ANSWER:**    Defendants admit the allegations of Paragraph 29.

30.    Despite possessing knowledge that his actions on behalf of Texdis were unlawful, Gomez continued to discuss and negotiate the terms of the franchise relationship with JMV.

**ANSWER**:    Defendants deny the allegations of Paragraph 30.

31.    On or about May 13, 2005, approximately six (6) months after the "first personal meeting" between Texdis and JMV, Texdis delivered a UFOC to JMV.  A copy of the MNG UFOC delivered to JMV is attached hereto as Exhibit "A."

**ANSWER**:    Defendants admit that Texdis delivered a UFOC to JMV.  Defendants deny the remaining allegations of Paragraph 31.

**The UFOC Contains Inaccurate and Misleading Information**

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 7
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

32.     The UFOC provided by Texdis to JMV contained false and misleading information designed to induce JMV to enter into an MNG franchise agreement.

**ANSWER**:     Defendants deny the allegations of Paragraph 32.

33.     For example, as required by the FTC Rule, Item 7 of the Texdis UFOC is required to disclose the anticipated total initial investment that a prospective franchisee can expect to expend.  The Texdis UFOC stated that the anticipated total initial investment for an MNG franchise was from $1,009,200 to $1,124,000.

**ANSWER**:     Defendants admit that the Texdis UFOC stated that the anticipated total initial investment for an MNG franchise was from $1,009,200 to $1,124,000.  The remaining allegations of Paragraph 33 call for a legal conclusion, to which no response is required.

34.     The actual total initial investment that JMV was obligated to ultimately expend far exceeded the amount disclosed in the UFOC.  Namely, JMV was obligated to expend approximately $1,900,000.00 in order to commence operation of the franchise.  In addition, Texdis insisted that JMV construct a mezzanine at his location in order to have a stock room inside of the store, but which would come at an added cost of approximately $400,000.00.  Also, Texdis required that JMV have in a place an irrevocable letter of credit in favor of Texdis available in the amount of $675,000.00 in order to secure payment for the MNG merchandise being shipped to JMV.

**ANSWER**:     Defendants admit that Texdis required JMV to have in place an irrevocable letter of credit in favor of Texdis in the amount of $675,000.00 in order to secure payment for the MNG merchandise being shipped to JMV.  Defendants deny the remaining allegations of Paragraph 34.

**Texdis Engages in Improper and Unlawful Sales Tactics**

35.     As part of its predatory practice designed to induce JMV to enter into an MNG franchise agreement, Texdis made representations to JMV which are expressly prohibited by law.

**ANSWER**:     Defendants deny the allegations of Paragraph 35.

36.     Namely, prior to JMV signing a franchise agreement, Texdis provided JMV with written information relating to the actual sales revenue data of the MNG stores around the world.  Importantly, the written information also contained projected sales revenue data

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 8
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

over the next several years and reflected a substantial increase in the amount of sales on a yearly basis. The written information, which is tantamount to an earnings claim, did not contain the information or disclosures required by the FTC Rule.

**ANSWER**:    Defendants admit that Texdis provided sales revenue data for stores

outside of the United States. Defendants deny the remaining allegations of Paragraph 36.

37.    In addition, prior to the signing to any franchise agreement, Texdis requested that JMV prepare a sales forecast which would reflect the anticipated sales and profit that JMV believed it may realize through the operation of an MNG business. JMV prepared such a sales forecast and delivered it to Texdis.

**ANSWER**:    Defendants admit the allegations of Paragraph 37.

38.    Texdis reviewed the sales forecast with JMV's principal. Indeed, Texdis' representative, Gomez, advised JMV that the sales figures that were listed on the forecast were in line with the sales data possessed by Texdis for other existing MNG stores.

**ANSWER**:    Defendants deny the allegations of Paragraph 38.

39.    Further, in or around April, 2005, Gomez represented to JMV's principal that he fully expected that JMV's store would generate at least $1000 per square foot in annual sales. The size of the store that JMV was considering at the time was approximately 3,000 square feet. As such, based upon Gomez's representation, JMV was led to believe that his MNG store would generate no less than $3,000,000 in annual sales.

**ANSWER**:    Defendants deny the allegations of Paragraph 39.

40.    Gomez's statement was improper, false and misleading.

**ANSWER**:    Defendants deny the allegations of Paragraph 40.

41.    Aside from being factually inaccurate, Gomez's statement was designed to mislead, deceive and induce JMV into entering into a franchise agreement based upon false information.

**ANSWER**:    Defendants deny the allegations of Paragraph 41.

42.    Despite making such clear earnings claims to JMV and other, in its UFOC, Texdis represents that it does "not furnish or authorize salespersons to furnish any oral or written information concerning the actual or potential sales, costs, income or profits of an MNG store."

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 9
DWT 11049259v3 0086759-000001

**ANSWER**:    Defendants admit that in its UFOC, it represents that it does "not furnish or authorize salespersons to furnish any oral or written information concerning the actual or potential sales, costs, income or profits of an MNG store."  Defendants deny the remaining allegations of Paragraph 42.

43.    This representation in Texdis' UFOC was clearly untrue and misleading given that Texdis repeatedly furnished JMV with information concerning that actual or potential sales, costs, income or profits of an MNG store for the express purpose of inducing JMV to sign a franchise agreement.

**ANSWER**:    Defendants deny the allegations of Paragraph 43.

### JMV Becomes an MNG Franchisee

44.    On or about October 25, 2005, JMV entered into a Franchise Agreement with Texdis and Distex for the operation of an MNG franchise at the Bellevue Square Mall.  A copy of the MNG Franchise Agreement is attached hereto as Exhibit "B."

**ANSWER**:    Defendants admit the allegations of Paragraph 44.

45.    Since becoming an MNG franchisee, JMV has faced substantial difficulties in operating its business, which have been directly caused by Texdis and Distex's failure to comply with the terms of the Franchise Agreement.

**ANSWER**:    Defendants deny the allegations of Paragraph 45.

46.    Primarily, Texdis has failed to properly and sufficiently advertise, promote and market the MNG franchise system and MNG products in the United States.

**ANSWER**:    Defendants deny the allegations of Paragraph 46.

47.    Texdis was simply not prepared and/or capable of operating a franchise system in the United States.  Moreover, since the signing of the Franchise Agreement, Texdis is not, and still does not, possess the infrastructure necessary to provide the services it agreed to provide to its franchisees, including JMV.

**ANSWER**:    Defendants deny the allegations of Paragraph 47.

### Defendants' Predatory Scheme

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 10
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

48.     To exacerbate an already caustic situation, upon information and belief, Texdis has engaged in a pattern and scheme to defraud JMV and other MNG franchisees for its personal benefit and gain.

**ANSWER**:     Defendants deny the allegations of Paragraph 48.

49.     Specifically, upon information and belief, Texdis and/or its affiliates have orchestrated a scheme wherein the MNG franchise system in the United States was structured in such a manner that franchisees, such as JMV, could not operate the franchises successfully absent an overwhelmingly substantial investment of capital by the franchisees.

**ANSWER**:     Defendants deny the allegations of Paragraph 49.

50.     Upon information and belief, Texdis and its affiliates intentionally misrepresented the amount of capital investment needed to be made by franchisees, coupled with misrepresentations as to anticipated sales volume and profits, in order to induce these franchisees into signing franchise agreements and, most importantly, committing to the construction and development of MNG locations around the United States.

**ANSWER**:     Defendants deny the allegations of Paragraph 50.

51.     Upon information and belief, Texdis and its affiliates engaged in a scheme or plan wherein franchisees would build-out MNG locations at substantial costs to the franchises.  Once the stores were not operating successfully, Texdis would either wait for the franchisee to close its doors, wherein Texdis would assume the leasehold rights for the location and operate the MNG store on its own, or would offer to purchase the location from the franchisee at a fraction of what the franchisee invested in the build-out and development of the location.

**ANSWER**:     Defendants deny the allegations of Paragraph 51.

52.     In essence, upon information and belief, Texdis was setting up franchisees, including JMV, to fail in order for Texdis or an affiliate to opportunistically benefit from such failure and acquire a substantial asset (i.e., a fully built-out MNG location) at a bargain price.

**ANSWER**:     Defendants deny the allegations of Paragraph 52.

53.     Upon information and belief, this scheme came at the direction of Punto Fa, who also engaged in similar predatory practices in Germany, England and Canada.  In those countries, the MNG franchises were closed and/or re-sold to Punto Fa or one of its affiliates at discounted prices so that the MNG locations could be operated as corporate locations, rather than franchised locations.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 11
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

**ANSWER**:     Defendants deny the allegations of Paragraph 53.

2

3       54.     Moreover, with respect to JMV, Texdis was insistent that the landlord for
JMV's location provide JMV with a ten (10) year lease despite the fact that the term of the
Franchise Agreement being provided to JMV by Texdis was only five (5) years, plus the

4       possibility of a one (1) year extension thereafter.

5       **ANSWER**:     Defendants deny the allegations of Paragraph 54.

6

7       55.     Discussions between Texdis and JMV have occurred with respect to Texdis'
potential acquisition of JMV's location.  The offer tendered by Texdis was grossly under
value and served to enhance JMV's belief that Texdis participated in a course of conduct, the

8       effect of which was to set JMV up to fail so that Texdis could acquire a fully build MNG

9       location at a highly discounted price.

10      **ANSWER**:     Defendants admit that discussions between Texdis and JMV have

11      occurred with respect to Texdis' potential acquisition of JMV's location.  Defendants deny

12      the remaining allegations of Paragraph 55.

13

14                    V.     **COUNT I – VIOLATION OF WASHINGTON**
**FRANCHISE INVESTMENT PROTECTION ACT**

15

16                              **(Against Texdis)**

17

18      56.     JMV incorporates each and every allegation in paragraphs 1 through 55 above
as though fully set forth in this Count.

19      **ANSWER**:     Defendants hereby incorporate by reference its responses to the

20      allegations in paragraphs 1 through 55 as though fully set forth herein.

21

22      57.     This is a claim under the Washington Franchise Investment Protection Act,
RCW §§19.100.010 et. Seq. ("WFIPA").

23      **ANSWER**:     Defendants admit that Count I purports to be a claim under the

24      Washington Franchise Investment Protection Act.

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

58.     The provisions of WFIPA reflect a fundamental policy of the State of Washington to protect its citizens from oppressive practices historically associated with the sale of franchises.

**ANSWER**:     Paragraph 58 calls for a legal conclusion, to which no response is required.

59.     WFIPA provides that parties to a franchise agreement "shall deal with each other in good faith."  RCW §19.100.180(1).

**ANSWER**:     Paragraph 59 calls for a legal conclusion, to which no response is required.

60.     Texdis has violated the WFIPA by not dealing with JMV in good faith as evidenced by Texdis' failure to:

      a.     operate a viable franchise system in the United States;
      b.     possess the infrastructure necessary to provide the services it agreed to provide to its franchisees, including JMV;
      c.     possess a system sufficient to administer the proper and orderly ordering and shipping of seasonal merchandise to JMV in a timely manner;
      d.     possess an advertising plan sufficient to generate sales and brand awareness of the MNG business and products in the United States; and
      e.     possess a marketing and promotional program sufficient to generate sales and brand awareness of the MNG business and products in the United States.

**ANSWER**:     Defendants deny the allegations of Paragraph 60.

61.     Texdis has also violated the WFIPA by:

      a.     selling a franchise to JMV without first delivering to JMV a UFOC in a manner and format consistent with the requirements of the FTC Rule and RCW §19.100.010;
      b.     in failing to make requisite disclosures to JMV regarding its earnings claims and in stating falsely in its UFOC that it does not make earnings claims, making an untrue statement of a material fact and/or willfully omitting to state a material fact necessary in order to make the statements made in light of the circumstances under which they were made not misleading (RCW §19.100.170(2));
      c.     in failing to make requisite disclosures to JMV regarding its earnings claims and in stating falsely in its UFOC that it does not make earnings claims, employing a device, scheme or artifice to defraud (RCW §19.100.170(3));
      d.     in failing to make requisite disclosures to JMV regarding its earnings claims and in stating falsely in its UFOC that it does not make earnings claims, engaging in an act, practice, or course of business which operates or would operate as a fraud or deceit upon JMV (RCW §19.100.170(4)); and

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 13
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

e.      requiring JMV to assent to a release, assignment, novation, or waiver which would relieve Texdis and/or Distex from liability imposed by WFIPA (RCW §19.100.180(2)(g)).

**ANSWER**:      Defendants deny the allegations of Paragraph 61.

62.      As a direct and proximate cause of Texdis' conduct in violation of the WFIPA, JMV has suffered damages.

**ANSWER**:      Defendants deny the allegations of Paragraph 62.

63.      The WFIPA authorizes the Court to increase an award of damages to an amount not to exceed three times the actual damages sustained.

**ANSWER**:      Paragraph 63 calls for a legal conclusion, to which no response is required.

64.      WFIPA also authorizes the Court to award to the prevailing party the costs of the action, including reasonable attorney's fees.

**ANSWER**:      Paragraph 64 calls for a legal conclusion, to which no response is required.

65.      In addition, the WFIPA authorizes the rescission of the Franchise Agreement.

**ANSWER**:      Paragraph 65 calls for a legal conclusion, to which no response is required.

## VI.      COUNT II – VIOLATION OF NEW YORK FRANCHISE SALES ACT

### (Against Texdis)

66.      JMV incorporates each and every allegation in paragraphs 1 through 65 above as though fully set forth in this Count.

**ANSWER**:      Defendants hereby incorporate by reference its responses to the allegations in paragraphs 1 through 65 as though fully set forth herein.

67.      This is a claim under the New York Franchise Sales Act, N.Y. Gen. Oblig. Law §§680 et. seq.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 14
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

1

2

**ANSWER**:     Defendants admit Count II purports to be a claim under the New York Franchise Sales Act.

3

4

68.     Texdis has violated the New York Franchise Sales Act by:

5

6

     a.     offering to sell a franchise unless and until there shall have been registered with the department of law, prior to such offer or sale, a written statement to be known as an offering prospectus or UFOC concerning the contemplated offer or sale, in violation of N.Y. Gen. Oblig. Law §683(1);

7

     b.     offering to sell a franchise without first providing JMV with the required UFOC at the time of the first personal meeting, in violation of N.Y. Gen. Oblig. Law §683(8);

8

9

     c.     representing in its UFOC that it does "not furnish or authorize salespersons to furnish any oral or written information concerning the actual or potential sales, costs, income or profits of an MNG store," in violation of N.Y. Gen. Oblig. Law §687;

10

     d.     furnishing oral and written information concerning the actual or potential sales, costs, income or profits of an MNG store, in violation of N.Y. Gen. Oblig. Law §687;

11

     e.     by making improper and unlawful earnings claims, which constitutes employing a device, scheme or artifice to defraud, in violation of N.Y. Gen. Oblig. Law §687;

12

13

     f.     by making improper and unlawful earnings claims, which constitutes an act, practice, or course of business which operates or would operate as a fraud or deceit upon JMV, in violation of N.Y. Gen. Oblig. Law §687;

14

     g.     requiring JMV to assent to a release, assignment, novation, waiver or estoppel which would relieve any person from any duty or liability imposed by the New York Franchise Sales Act, in violation of N.Y. Gen. Oblig. Law §687;

15

16

**ANSWER**:     Defendants deny the allegations of Paragraph 68.

17

18

69.     As a direct and proximate cause of Texdis' conduct in violation of the New York Franchise Sales Act, JMV has suffered damages.

19

**ANSWER**:     Defendants deny the allegations of Paragraph 69.

20

21

70.     The New York Franchise Sales Act authorizes the Court to award to the prevailing party the costs of the action, including reasonable attorney's fees.

22

23

**ANSWER**:     Paragraph 70 calls for a legal conclusion, to which no response is required.

24

25

26

71.     In addition, the New York Franchise Sales Act authorizes the rescission of the Franchise Agreement.

27

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 15
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

1    **ANSWER**:    Paragraph 71 calls for a legal conclusion, to which no response is

2   required.

3

4               **VII.    COUNT III – BREACH OF CONTRACT**

5                        **(Against Texdis)**

6        72.    JMV incorporates each and every allegation in paragraphs 1 through 71 above
     as though fully set forth in this Count.

7
        **ANSWER**:    Defendants hereby incorporate by reference its responses to the
8
     allegations in paragraphs 1 through 71 as though fully set forth herein.
9

10       73.    On or about October 25, 2005, JMV entered into a Franchise Agreement with

11   Texdis and Distex for the operation of an MNG franchise at the Bellevue Square Mall.

12       **ANSWER**:    Defendants admit the allegations of Paragraph 73.

13

14       74.    The Franchise Agreement sets forth various obligations owed by Texdis to
     JMV.

15
        **ANSWER**:    Defendants admit the allegations of Paragraph 74.
16

17       75.    Texdis breached the Franchise Agreement by failing to, inter alia:

18              a.    match JMV's initial contribution to the Advertising Fund up to a
     maximum amount equal to JMV's required regular contribution and failing to conduct a grand
19   opening advertising and promotional campaign for the Store.  (Ex. B, & III.A.9);
              b.    plan, manage and coordinate the National Advertising Fund and
20   commit its resources for various national, regional and seasonal campaigns.  (Ex. A, &
     Ill.B.4);
21              c.    provide JMV with any updates, revisions and amendments to the Store
     Operations Manual.  (Ex. A, & III.B.5).
22
        **ANSWER**:    Defendants deny the allegations of Paragraph 75.
23

24       76.    In addition, There are implied terms contained within the Franchise
25   Agreement, including an implied covenant of good faith and fair dealing requiring each party
     to cooperate with the other so that each may obtain the full benefit of performance under the
26   Franchise Agreement.

27       **ANSWER**:    Defendants deny the allegations of Paragraph 76.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 16

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

77.     Inherent within the Franchise Agreement was the implied covenant and/or implied obligation upon Texdis that:

        a.     it was prepared and capable of operating a franchise system in the United States;

        b.     it possessed the infrastructure necessary to provide the services it agreed to provide to its franchisees, including JMV;

        c.     it possessed a system sufficient to administer the proper and orderly ordering and shipping of seasonal merchandise to JMV in a timely manner;

        d.     it possessed an advertising plan sufficient to generate sales and brand awareness of the MNG business and products in the United States; and

        e.     it possessed a marketing and promotional program sufficient to generate sales and brand awareness of the MNG business and products in the United States.

**ANSWER**:     Defendants deny the allegations of Paragraph 77.

78.     Texdis breached the implied obligations contained within the Franchise Agreement.

**ANSWER**:     Defendants deny the allegations of Paragraph 78.

79.     As a direct and proximate result of Texdis' breaches of contract, JMV has been substantially damaged.

**ANSWER**:     Defendants deny the allegations of Paragraph 79.

## VIII.   COUNT IV – BREACH OF CONTRACT

### (Against Distex)

80.     JMV incorporates each and every allegation in paragraphs 1 through 79 above as though fully set forth in this Count.

**ANSWER**:     Defendants hereby incorporate by reference its responses to Paragraphs 1 through 79 as though fully set forth herein.

81.     On or about October 25, 2005, JMV entered into a Franchise Agreement with Texdis and Distex for the operation of an MNG franchise at the Bellevue Square Mall.

**ANSWER**:     Defendants admit the allegations of Paragraph 81.

82.     The Franchise Agreement sets forth various obligations owed by Distex to JMV.

**ANSWER**:     Defendants admit the allegations of Paragraph 82.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 17
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

83.    Distex breached the Franchise Agreement by failing to deliver merchandise to replenish JMV's store's inventory and add new merchandise to the product mix.  (Ex. B, & III.B.1)

**ANSWER**:    Defendants deny the allegations of Paragraph 83.

84.    In addition, there are implied terms contained within the Franchise Agreement, including an implied covenant of good faith and fair dealing requiring each party to cooperate with the other so that each may obtain the full benefit of performance under the Franchise Agreement.

**ANSWER**:    Defendants deny the allegations of Paragraph 84.

85.    Inherent within the Franchise Agreement was the implied covenant and/or implied obligation upon Distex that:

a.    it possessed the infrastructure necessary to provide the services it agreed to provide to its franchisees, including JMV; and
b.    it possessed a system sufficient to administer the proper and orderly ordering and shipping of seasonal merchandise to JMV in a timely manner.

**ANSWER**:    Defendants deny the allegations of Paragraph 85.

86.    Distex breached the implied obligations contained within the Franchise Agreement.

**ANSWER**:    Defendants deny the allegations of Paragraph 86.

87.    As a direct and proximate result of Distex's breaches of contract, JMV has been substantially damaged.

**ANSWER**:    Defendants deny the allegations of Paragraph 87.

### IX.    COUNT V – FRAUDULENT MISREPRESENTATION

### (Against Texdis)

88.    JMV incorporates each and every allegation in paragraphs 1 through 87 above as though fully set forth in this Count.

**ANSWER**:    Defendants hereby incorporate by reference its responses to Paragraphs 1 through 87 as though fully set forth herein.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 18
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

89.     In or around April, 2005, Jose Gomez, on behalf of Texdis, represented to JMV's principal that he fully expected that JMV's store would generate at least $1000 per square foot in annual sales.  The size of the store that JMV was considering at the time was approximately 3,000 square feet.  As such, based upon Gomez's representation, JMV was led to believe that his MNG store would generate no less than $3,000,000 in annual sales.

**ANSWER**:     Defendants deny the allegations of Paragraph 89.

90.     Texdis was in a position to know the veracity of the information being supplied and, as a franchisor, was in a special position of superiority and/or privity with JMV which required Texdis to impart correct information to JMV.

**ANSWER**:     Defendants deny the allegations of Paragraph 90.

91.     Texdis knew or should have known that these representations were false.

**ANSWER**:     Defendants deny the allegations of Paragraph 91.

92.     Texdis intended that these statements would induce JMV to act.

**ANSWER**:     Defendants deny the allegations of Paragraph 92.

93.     JMV did not know, have reason to know, nor could have discovered, through the exercise of reasonable diligence, the falsity of the foregoing misrepresentations.

**ANSWER**:     Defendants deny the allegations of Paragraph 93.

94.     JMV reasonably and justifiably relied upon Texdis' misrepresentations.

**ANSWER**:     Defendants deny the allegations of Paragraph 94.

95.     As a direct, proximate, and foreseeable result of Texdis' fraudulent misrepresentations and concealment, JMV has been damaged.

**ANSWER**:     Defendants deny the allegations of Paragraph 95.

## X.      COUNT VI – NEGLIGENT MISREPRESENTATION

### (Against Texdis)

96.     JMV incorporates each and every allegation in paragraphs 1 through 95 above as though fully set forth in this Count.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 19
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**ANSWER**:    Defendants hereby incorporate by reference its responses to Paragraphs 1 through 95 as though fully set forth herein.

97.    Texdis supplied information to JMV relating to the anticipated sales revenue that JMV could anticipate its store to generate for the guidance of JMV in its business transactions.

**ANSWER**:    Defendants deny the allegations of Paragraph 97.

98.    Texdis was in a position to know the veracity of the information being supplied and, as a franchisor, was in a special position of superiority and/or privity with JMV which required Texdis to impart correct information to JMV.

**ANSWER**:    Defendants deny the allegations of Paragraph 98.

99.    The information supplied by Texdis was false.

**ANSWER**:    Defendants deny the allegations of Paragraph 99.

100.    Texdis knew or should have known that the information was supplied to guide JMV in its business transactions.

**ANSWER**:    Defendants deny the allegations of Paragraph 100.

101.    Texdis was negligent in obtaining or communicating the false information.

**ANSWER**:    Defendants deny the allegations of Paragraph 101.

102.    JMV reasonably and justifiably relied on the false information and was induced into signing the Franchise Agreement based upon such information.

**ANSWER**:    Defendants deny the allegations of Paragraph 102.

103.    As a direct and proximate result of Texdis' negligent misrepresentation, JMV has been substantially damaged.

**ANSWER**:    Defendants deny the allegations of Paragraph 103.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 20
DWT 11049259v3 0086759-000001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to state a claim upon which the Court may grant relief.

### SECOND AFFIRMATIVE DEFENSE

This forum is an inconvenient forum for this action and the parties involved with this action.  Thus, pursuant to 28 U.S.C. Section 1404(a), this action should be transferred to the Southern District of New York.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by waiver and/or estoppel.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred by laches.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff is barred from any equitable remedies under the doctrine of unclean hands.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred because any amount allegedly owed Plaintiff is setoff by the amount of money due Defendants as alleged in the Counterclaim.

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## COUNTERCLAIM

Texdis USA, Inc. and Distex, Inc., for their counterclaim against JM Vidal, Inc. ("JMV") state as follows:

## The Parties

1.      Texdis USA, Inc. ("Texdis") is a Delaware corporation with its principal place of business in New York.  Texdis is the franchisor of the MNG franchise system in the United States.

2.      Distex, Inc. ("Distex") is a Delaware corporation with its principal place of business in New York.  Distex is engaged in wholesaling MNG brand clothing and accessories to MNG franchisees, including Plaintiff/Counter-Defendant, JM Vidal, Inc.

3.      Texdis and Distex are collectively referred to throughout as Counter-Plaintiffs.

4.      JMV is a Washington corporation with its principal place of business in Washington.  JMV is engaged in the operation of an MNG franchise, a retail outlet offering women's clothing and accessories.

## Jurisdiction and Venue

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the matter in controversy exceeds $75,000, excluding interests and costs.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because JMV resides in this District and because a substantial part of the events or omissions giving rise to this claim occurred in this District.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 22
DWT 11049259v3 0086759-000001

**The Franchise Agreement**

7.      On or about October 25, 2006, JMV entered into a Franchise Agreement (the "Agreement") with Texdis and Distex for the operation of an MNG franchise at the Bellevue Square Mall in Seattle, Washington (the "Store").

8.      Pursuant to Section V of the Agreement, JMV was contractually bound to perform certain duties and obligations in its operation of the MNG franchise.

9.      At all times relevant to this action, JMV understood and acknowledged, pursuant to Section V(A) of the Agreement, that compliance with every detail and operation of the Store as set forth in the comprehensive and proprietary system relating to the establishment, development and operation of MNG retail outlets offering MNG® lines of clothing and accessories (the "System"), was critical to Counter-Plaintiffs.

10.     JMV agreed, pursuant to Section V(M) of the Agreement, that it would devote its best efforts to the management and operation of the Store.

11.     JMV agreed, pursuant to Section V(N) of the Agreement, that it would timely pay all obligations and liabilities due to Counter-Plaintiffs.

12.     JMV agreed, pursuant to Section V(O) of the Agreement, that it would operate the Store in conformity with uniform methods, standards and specification prescribed by Counter-Plaintiffs in the MNG Store Operations Manual (the "Manual").

13.     JMV agreed, pursuant to Section V(O) of the Agreement, that it would manage and operate the Store and conduct its business in a manner which reflects favorably at all times on the Store and the trade names, trademarks and service marks associated therewith.

14.     JMV agreed, pursuant to Section V(O)(2) of the Agreement, to maintain in the Store sufficient quantities of merchandise as prescribed by the Manual or otherwise in writing.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 23
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

15.     JMV agreed, pursuant to Section V(O)(6) of the Agreement, to comply in all respects with the standards, specification and requirements set forth in the Manual, including the use of promotions at the Store.

16.     JMV agreed, pursuant to Section V(P)(1) of the Agreement, to stock quantities specified by Counter-Plaintiffs and offer for retail sale at or through the Store all merchandise that Distex or any one of its affiliates delivers or arranges for delivery to it.

17.     JMV agreed, pursuant to Section V(Q) of the Agreement, that if any MNG Store customer is not satisfied with any merchandise purchased in a final sale at the Store within 30 days from the original purchase of such  merchandise, JMV will refund in full the amount of the purchase price paid by the customer for such merchandise.

18..    JMV agreed, pursuant to Section V(T) of the Agreement, that it would use its best efforts to promote and increase the sales and consumer recognition of the merchandise and the Store in accordance with the System and the Manual, to effect the widest and best possible distribution of Counter-Plaintiffs' merchandise and to devote its best efforts in operating and managing the Store.

19.     JMV agreed, pursuant to Section XIII(B) of the Agreement, that any failure on its part to comply with any of the terms of the Agreement could cause irreparable damage to Counter-Plaintiffs.

20.     JMV agreed, pursuant to Section XIII(B) of the Agreement, that upon breach of the Agreement by JMV, Counter-Plaintiffs have the right to immediately secure an order enjoining such breach.

21.     JMV agreed, pursuant to Section XV(A) of the Agreement, that during the term of the Agreement, it would devote its full time, energy and best efforts to the efficient and effective management and operation of the Store.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 24
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

22.     JMV agreed, pursuant to Section XV(C) of the Agreement, to support Counter-Plaintiffs' mission and to conduct the Store in accordance with Counter-Plaintiffs' operating policies and procedures.

23.     JMV agreed, pursuant to Section XXIII of the Agreement, that no representations by Counter-Plaintiffs or any third party induced it to execute the Agreement.

### JMV's Breach of the Agreement

24.     JMV has failed to communicate with Counter-Plaintiffs and provide responses to numerous communications sent by employees of Texdis requesting information regarding the day-to-day operation of the Store, including payments, advertising and merchandising.

25.     JMV has ordered merchandise and subsequently sold such merchandise, but has not tendered payment to Counter-Plaintiffs as required by the Agreement, resulting in an additional profit to JMV.

26.     JMV has refused to participate in a promotion and advertising campaign with T-Mobile that was initiated at Counter-Plaintiffs' direction, including refusing to display T-Mobile signage in the Store and failing to inform sales associates of the T-Mobile promotion.

27.     JMV has refused to honor coupons presented by customers in connection with the T-Mobile promotion at the Store.

28.     Several customers have complained about the service they received while shopping in the Store.

29.     On or about February 14, 2008, JMV has failed to follow the correct customer-merchandise return policy as specified in Section V(Q) of the Agreement.

30.     JMV has refused to accept and implement the advertising campaign planned, managed and coordinated by Texdis's Media Planning Department.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 25
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

31.    JMV has failed to display new merchandise, complete collections and the product mix requested by Counter-Plaintiffs in the Store in violation of Section V(P)(1) of the Agreement.

32.    JMV has prevented the display of new clothing and accessory lines at the Store and has specifically directed employees not to display new clothing and accessory lines at the Store, despite receipt of new merchandise and .

33.    Currently, JMV owes Counter-Plaintiffs $95,811.79 in unpaid and overdue invoices.

34.    JMV has failed to respond to emails from Counter-Plaintiffs on several occasions regarding its non-payment of outstanding invoices.

## COUNT I -- BREACH OF CONTRACT

35.    Counter-Plaintiffs incorporate and reallege paragraphs 1 through 34.

36.    The Agreement is a valid and enforceable contract between Counter-Plaintiffs and JMV.

37.    Counter-Plaintiffs have fully and completely performed all of their obligations under the Agreement.

38.    As set forth above, JMV has breached numerous sections of the Agreement.

39.    JMV's breaches of the Agreement have injured Counter-Plaintiffs and caused them damage.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Defendants/Counter-Plaintiffs demand a trial by jury.

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 26
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

**WHEREFORE**, Texdis and Distex request judgment on their answer and counterclaim as follows:

A.  That the Court dismiss Plaintiff's Complaint and each of its counts with prejudice, and that judgment be entered thereon in favor of Defendants/Counter-Plaintiffs;

B.  That the Court award Defendants/Counter-Plaintiffs the damages they have suffered in an amount to be proven at trial;

C.  That the Court award Defendants/Counter-Plaintiffs the costs of this action, including attorneys' fees that are available under RCW 19.100.190(3) or other applicable law; and

D.  That the Court award Defendants/Counter-Plaintiffs such other and further relief as is appropriate.

DATED May 12, 2008.

DAVIS WRIGHT TREMAINE LLP

By  */s/ Bradley L. Fisher*
    Bradley L. Fisher, WSBA #19895
    Davis Wright Tremaine LLP
    Suite 2200, 1201 Third Avenue
    Seattle, Washington 98101-3045
    Telephone: (206) 757-8042
    Fax: (206) 757-7042
    E-mail:   bradfisher@dwt.com

    Louis S. Chronowski
    Dana Marjorie Orr
    Seyfarth Shaw LLP
    131 South Dearborn Street, Suite 2400
    Chicago, IL 60603
    Telephone: (312) 460-5891
    E-mail:   dorr@seyfarth.com
              lchronowski@seyfarth.com

    Attorneys for Defendants

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 27
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

## <u>CERTIFICATE OF SERVICE</u>

2

3        I hereby certify that on May 12, 2008, I caused the document to which this certificate is

4    attached to be electronically filed with the Clerk of the Court using the CM/ECF system, which

5    will send notification of such filing to the following:

6
         Jesse O. Franklin IV          jesse.franklin@klgates.com
7        Kevin A. Rosenfield           krosenfield@prestongates.com
         Robert Zarco                  Rzarco@zarcolaw.com
8        Alejandro Brito               abrito@zarcolaw.com

9

10                                      *s/Bradley L. Fisher*
                                        Bradley L. Fisher
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS' ANSWER, DEFENSES AND
COUNTERCLAIM (2:08-cv-00485-RSM) — 28
DWT 11049259v3 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JM VIDAL, INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>TEXDIS USA, INC., a Delaware corporation,<br>and DISTEX, INC., a Delaware corporation,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 2:08-cv-00485-RSM

DEFENDANTS' MOTION TO
TRANSFER PURSUANT TO 28
U.S.C. § 1404 (A)

**NOTE ON MOTION
CALENDAR:**
June 6, 2008

Defendants, Texdis USA, Inc. ("Texdis) and Distex, Inc. ("Distex") (collectively referred to as "Defendants") move the Court for an order transferring this action to United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

**<u>INTRODUCTION</u>**

This case should be transferred to the district court sitting in the Southern District of New York. The subject matter of this dispute is a franchise agreement between the parties to operate a MNG franchise, a retail outlet offering clothing and accessories. Plaintiff, the MNG franchisee, seeks a judgment against Defendants Texdis and Distex, the franchisor and franchisor's affiliate, respectively, based on allegations that as a result of Defendants' conduct, Plaintiff was induced to enter into the franchise agreement (the "Agreement") and has been unable to operate the MNG franchise due to Defendants' alleged failure to comply with the terms of the Agreement. Defendants have filed a counterclaim based on Plaintiff's

DEFENDANTS' MOTION
TO TRANSFER (2:08-cv-00485-RSM) — 1
DWT 11051886v2 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

breach of its duties and obligations pursuant to the Agreement.  The parties agree by contract that New York law shall govern this dispute and any action brought pursuant to the agreement shall be brought in a New York court located in Manhattan.  A court sitting in New York is best able to apply New York law due to its familiarity with the substantive law of New York.  The sole connection to the State of Washington is the location of the MNG franchise.  Defendants' corporate headquarters is located in New York, and all of its witnesses are located in New York or New Jersey, along with the majority of relevant documents, thus New York is the forum most likely to minimize inconvenience.  Defendants have no offices or employees in Washington and the store location bears minimal relevance upon the issue of whether Plaintiff was fraudulently induced to enter the Agreement in the first place.

Causing Defendants to litigate in Washington would be disruptive to Defendants' business operations and cause Defendants economic hardship.  More importantly, non-party witnesses are beyond the subpoena power of a district court in Washington.  In contrast, Plaintiff cannot seriously claim inconvenience if required to litigate in New York, as New York was contractually agreed upon by the parties at the inception of the Agreement and Plaintiff's main contacts regarding the Agreement and operation of the MNG  franchise, have at all times been located in New York or New Jersey.  In short, New York is where most of the witnesses and most of the relevant documents and information are located, and the federal court there is best able to apply the New York law which the parties agreed must govern this case.

## STATEMENT OF FACTS

Texdis is a Delaware corporation with its principal place of business at 529 Fifth Avenue, 2nd Floor, New York, New York 10017.  (Gomez Declaration, ¶ 4).[1]  Texdis is a wholly-owned subsidiary of Mango MNG USA, Inc. ("Mango"), a Delaware corporation with its principal offices also located at 529 Fifth Avenue, 2nd Floor, New York, New York 10017.

---

[1] The Declaration of José Gómez in support of the motion is attached to the Declaration of Brad Fisher as Exhibit A, and is cited herein as the "Gomez Dec."

DEFENDANTS' MOTION
TO TRANSFER (2:08-cv-00485-RSM) — 2
DWT 11051886v2 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

(*Id.*, ¶ 5). Mango is a wholly-owned subsidiary of Punto Fa, a company organized under the laws of Spain with its principal place of business in Barcelona, Spain. (*Id.*, ¶6). Punto Fa granted Texdis the exclusive rights in the United States to develop a network of franchised Mango stores. (*Id.*, ¶ 7). Punto Fa granted to Distex certain rights to wholesale Mango brand clothes and accessories to franchisees, as well as to provide product design, store design, store fixtures, décor and equipment, promotional materials, packaging and shipping. (*Id.*, ¶ 8). Distex is also a wholly-owned subsidiary of Mango and its principal place of business is located at 529 Fifth Avenue, 2nd Floor, New York, New York 10017. (*Id.*, ¶ 9). Neither Texdis, Mango, Punto Fa or Distex have any offices or employees in the State of Washington. (*Id.*, ¶ 10). All communications, notices and summons are served to Texdis' and Distex's corporate addresses in New York. (*Id.*, ¶ 11). All of Texdis' and Distex's corporate files are located in New York or New Jersey. (*Id.*, ¶ 12). Neither Texdis nor Distex maintain any files in the State of Washington. (*Id.*.).

Plaintiff, JM Vidal, Inc. ("Vidal"), is a Washington corporation with its principal place of business in Seattle, Washington. (Gomez Dec., ¶ 13). Vidal first contacted Mango in 2001, sending several faxes and letters to Mango in Barcelona which explained its interest in distributing Mango merchandise via a distribution center. (*Id.*, ¶ 14). Mango rejected Vidal's offer to distribute merchandise and instead offered to review Vidal's business proposal for a United States franchise. (*Id.*, ¶ 15). After receiving more correspondence from Vidal in Barcelona, Mango agreed to meet with Vidal in Barcelona to better understand its business proposal. (*Id.*, ¶ 16). In 2002, Mango sent Vidal a letter from Barcelona informing him that Punto Fa did not anticipate opening United States shops until 2005 due to the need to obtain relevant state and federal permits. (*Id.*, ¶ 17).

Mango's José Gómez ("Gómez") sent Vidal a letter in October 2004. (Gomez Dec., ¶ 18). At the time, Gómez was employed by Texdis as the Vice President of International Expansion for Mango in the United States and Canada. (*Id.*, ¶ 19). Gómez was hired by Punto Fa and works out of Barcelona, but travels to New York often for work and has a New

DEFENDANTS' MOTION
TO TRANSFER (2:08-cv-00485-RSM) — 3
DWT 11051886v2 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1   York residence at 25 Central Park West, #11S in New York City, a U.S Social Security

2   number and New York State Driver's License.  (*Id.*, ¶ 20).  Gómez and Vidal president, Jean

3   Marie Vidal engaged in several discussions over the course of the next year, which mostly

4   consisted of Vidal's repeat inquiries as to when it would be able to start its Mango franchise,

5   and Gómez's repeat responses that Mango was not yet authorized to do business in the United

6   States. (*Id.*, ¶ 21).  Gómez traveled to Seattle in November 2004 to research premises for

7   Mango corporate stores – not franchises – and agreed to meet with Jean Marie Vidal as a

8   courtesy because he had pursued Mango business for several years, to no avail.  (*Id.*, ¶ 22).

9         Eventually, Mango obtained the necessary state and federal permits and on October

10  25, 2005, Vidal entered into the Agreement with Texdis and Distex for the operation of a

11  Mango franchise at Bellevue Square Mall in Seattle, Washington.  (Gomez Dec., ¶ 23).

12        Pursuant to the Agreement, the parties agreed that any dispute under the Agreement is

13  to be governed by New York law and litigated in state or federal court located in New York.

14  (Gomez Dec., ¶ 24).  The Agreement provides:

15              A.    **Governing Law.**  This Agreement takes effect upon its acceptance and
                      execution by us.  This Agreement shall be interpreted and construed under the
16                    laws of the State of New York.

17              B.    **Jurisdiction and Venue.**  You agree that any action brought by you
                      against us shall be brought in the state or federal courts of the State of New
18                    York located in Manhattan, and you waive your right to bring any action
                      against us in any other jurisdiction or venue.  Additionally, you agree to submit
19                    to the jurisdiction of the state and federal courts of the State of New York and
                      you waive any right you have to object to such jurisdiction and venue.
20

21  Complaint, Ex. B at p. 36.

22        No negotiations leading to the signing of the Agreement took place in Washington.

23  (Gomez Dec., ¶ 25).  All negotiations related to the Agreement took place through phone

24  calls, letters and email correspondence between Vidal and Gomez and other Punto Fa

25  employees in Barcelona.  (*Id.*, ¶ 26).  Before Vidal's franchise opened, Distex set up a

26  logistics center in New Jersey for the distribution of merchandise to Vidal two times per

27  week.  (*Id.*, ¶ 27).  Carlos Lozano, the President of both Texdis and Distex ("Lozano"), is a

DEFENDANTS' MOTION
TO TRANSFER (2:08-cv-00485-RSM) — 4
DWT 11051886v2 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  · Fax: (206) 757-7700

New Jersey resident and works in New Jersey at the same location as the logistics center. (*Id.*, ¶ 28).  Distex has four additional (4) employees other than Lozano: one customer service employee, two supervisors and one window dresser.  (*Id.*, ¶ 29).  Two of these four employees are located in New Jersey.  (*Id.*)

Vidal's Complaint is based on alleged difficulties in operating the franchise occasioned by Defendants' alleged misrepresentations and inducements for Vidal to become a Mango franchisee.  (Gomez Dec., ¶ 30).  Vidal seeks to rescind the Agreement on the grounds that it was induced to sign it as a result of improper and unlawful representations made by Defendants.  (*Id.*, ¶ 31).  Defendants are not aware of any non-party witnesses with knowledge of the facts alleged in Vidal's Complaint located in the State of Washington.  (*Id.*, ¶ 32).  Defendants are not aware of any Vidal employed witnesses to the facts underlying this dispute who are located in the State of Washington, other than Vidal president, Jean Marie Vidal.  (*Id.*, ¶ 33).  Forcing Distex and Texdis to litigate in the State of Washington would cause great inconvenience and burden, and it would be contrary to the express agreement of the parties in the Agreement to litigate in the State of New York. (*Id.*, ¶ 34).

## ARGUMENT

### I.    FACTORS RELEVANT TO TRANSFER UNDER 28 U.S.C. § 1404(A).

This action should be transferred to the United States District Court for the Southern District of New York pursuant to the United States Code, Title 28, Section 1404(a), which provides that a district court may transfer any civil action "to any other district …where it might have been brought."  28 U.S.C. §1404(a).  Under 28 U.S.C. § 1404(a), the Court has broad discretion to transfer cases, according to a case-by-case consideration of convenience and fairness, and in the interest of justice.  *Silver Valley Partners, LLC v. DeMotte*, 2006 WL 2711764 at *1 (W.D. Wash. 2006).

In deciding whether to transfer on grounds of convenience and in the interests of justice, the Court considers eight factors:

(1)    the location where the relevant agreements were negotiated and executed;

DEFENDANTS' MOTION
TO TRANSFER (2:08-cv-00485-RSM) — 5
DWT 11051886v2 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

1      (2)    the state that is most familiar with the governing law;

2      (3)    the plaintiff's choice of forum;

3      (4)    the respective parties' contacts with the forum;

4      (5)    the contacts relating to the plaintiff's cause of action in the chosen forum;

5      (6)    the differences in the cost of litigation in the two forums;

6      (7)    the availability of compulsory process to compel attendance of unwilling non-

7  party witnesses; and

8      (8)    the ease of access to sources of proof.

9  *Id.* at *2.  Additionally, the presence of a forum selection clause is a "significant factor" in the

10  court's § 1404(a) analysis.  *HSD Corp. v. KLA-Tencor Corp.*, 2006 WL 1075207 at *2 (E.D.

11  Wash. 2006); *Expedia, Inc. v. Reservationsystem.com, Inc.*, 2006 WL 3734160 at *4 (W.D.

12  Wash. 2006).

13  **II.    THE FACTORS TO BE WEIGHED BY THIS COURT WARRANT**
14  **TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK.**

15      This Court has wide discretion to transfer an action to an otherwise available forum

16  under Section 1404(a).  The purpose of this section is to prevent the waste of time, energy,

17  and money and to protect litigants, witnesses and the public against unnecessary

18  inconvenience and expense.  *Deatley v. Howard*, 2007 WL 2463297 at *2 (W.D. Wash.

19  2007).  With the single exception of Plaintiff's choice of forum, all relevant factors, both

20  regarding private and public interests, overwhelmingly favor transfer.

21      Certainly, Plaintiff's choice of forum is a factor to consider.  Yet, in this case

22  Plaintiff's freedom of choice of a litigation forum does not outweigh the additional

23  considerations of convenience of defendant and witnesses and the interests of justice.

24      The Agreement was negotiated and executed by the parties through a series of phone

25  calls, letters and emails between Vidal and Mango employees in Barcelona.  Gómez was

26  Vidal's primary contact regarding the Agreement, yet Gómez never traveled to Washington as

27  part of the negotiation or execution of the Agreement, as he works solely between Barcelona

DEFENDANTS' MOTION
TO TRANSFER (2:08-cv-00485-RSM) — 6
DWT 11051886v2 0086759-000001

1    and New York. Vidal travels often as well, and made numerous trips outside of the State of

2    Washington in connection with its pursuit of a franchise agreement and eventual purchase of

3    the Mango franchise.

4         The parties' forum selection clause dictates litigation in a New York court. Vidal has

5    not alleged that the forum selection clause at issue is unenforceable. Vidal failed to allege

6    that New York law will not govern the Agreement, especially in light of the choice of law

7    clause contained in the Agreement. Based on the choice of law clause, a New York court

8    would certainly be more familiar with applicable law. *See Expedia, Inc. v.*

9    *Reservationsystem.com, Inc.*, 2006 WL 3734160 at *5 (W.D. Wash. 2006) (failure to

10   demonstrate that Washington choice of law clause in contract would not govern resulted in

11   finding that Washington is more familiar with governing law). Moreover, the interest of

12   justice is of paramount concern in considering a venue transfer, and having a judge who is

13   familiar with applicable law try the case is one of the factors to consider when weighing the

14   interests of justice. *Deatley v. Howard*, 2007 WL 2463297 at *3 (W.D. Wash. 2007).

15   Cumulatively, these factors weigh in favor of transfer.

16        In fact, the only factor that does not favor transfer is that Vidal chose to file its lawsuit

17   in the Western District of Washington. While Vidal's choice of forum is entitled to

18   consideration in a Section 1404(a) analysis, the remaining factors overwhelmingly favor

19   transfer based on the Agreement and the resulting time, expense and inconvenience if

20   Defendants are forced to litigate in Washington. Defendants have zero contacts with

21   Washington aside from the fact that Vidal's franchise is located there. Presumably, Vidal

22   chose Washington based on the location of its corporate headquarters. Yet, prior to the filing

23   of this lawsuit, Vidal never insisted that Defendants come to Washington, as Vidal's

24   president, Jean Marie Vidal, was more than willing to travel to Barcelona to meet with Punto

25   Fa employees regarding the Agreement and once Vidal was awarded the franchise, Jean

26   Marie Vidal traveled often to New York and New Jersey to work out operational logistics

27   with Defendants.

DEFENDANTS' MOTION
TO TRANSFER (2:08-cv-00485-RSM) — 7
DWT 11051886v2 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    There are three (3) total employees working in the New Jersey logistics center,

2    including Lozano, Distex's and Texdis' President.  Aside from Lozano, the New Jersey

3    employees are responsible for customer service and supervising the operation of the franchise.

4    All of Distex's employees, all are likely to testify as witnesses in this matter based on Vidal's

5    allegations as to the alleged difficulties it encountered in operating its franchise.  Litigation

6    costs would be seriously reduced by litigation in New York, based on the proximity of the

7    employees located in New Jersey with information that is relevant to the parties' claims and

8    defenses.  Any non-party witnesses that may be subpoenaed would be outside of the subpoena

9    power of the Western District of Washington, as Defendants have no contacts within 100

10    miles of the District Court for the Western District of Washington, besides Vidal.

11    Vidal has failed to identify a single witness (besides himself) with knowledge of the

12    facts alleged in the Complaint that resides in Washington, thus the Court would be forced to

13    speculate as to what witness's testimony Vidal would offer that relates to the claims and

14    defenses at issue.  Under these circumstances, convenience factors strongly favor a transfer to

15    New York.  *See Asymetrix Corp. v. Lex Computer and Management Corp.*, 1995 WL 843059

16    (W.D. Wash. 1995) (failure to identify key witnesses left Court to speculate, based on a

17    scanty record, party's witnesses and the significance of their testimony, therefore convenience

18    factors did not weigh in party's favor).

19                                   **<u>CONCLUSION</u>**

20    Based on the foregoing, in the interest of justice and under the relevant factors of

21    Section 1404(a), this case should be transferred to the district court sitting in the Southern

22    District of New York.

23

24

25

26

27

DEFENDANTS' MOTION
TO TRANSFER (2:08-cv-00485-RSM) — 8
DWT 11051886v2 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP


By  */s/ Bradley L. Fisher*
    Bradley L. Fisher, WSBA #19895
    Davis Wright Tremaine LLP
    Suite 2200, 1201 Third Avenue
    Seattle, Washington  98101-3045
    Telephone:  (206) 757-8042
    Fax:  (206) 757-7042
    E-mail:    bradfisher@dwt.com

    Louis S. Chronowski (*Pro Hac Vice*)
    Dana Marjorie Orr (*Pro Hac Vice*)
    Seyfarth Shaw LLP
    131 South Dearborn Street, Suite 2400
    Chicago, IL  60603
    Telephone:  (312) 460-5891
    E-mail:    lchronowski@seyfarth.com
             dorr@seyfarth.com


    Attorneys for Defendants

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

## **CERTIFICATE OF SERVICE**

2     I hereby certify that on May 12, 2008, I caused the document to which this certificate is

3 attached to be electronically filed with the Clerk of the Court using the CM/ECF system, which

4 will send notification of such filing to the following:

5

6 Jesse O. Franklin IV          jesse.franklin@klgates.com
  Kevin A. Rosenfield          krosenfield@prestongates.com
7 Robert Zarco                 Rzarco@zarcolaw.com
  Alejandro Brito              abrito@zarcolaw.com

8

9                              *s/Bradley L. Fisher*_____
10                             Bradley L. Fisher

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS' MOTION
TO TRANSFER (2:08-cv-00485-RSM) — 10
DWT 11051886v2 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

3

4

5

6

7

8

9

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| JM VIDAL, INC., a Washington corporation, | ) | No. 2:08-cv-00485-RSM |
| Plaintiff, | )<br>)<br>) | [PROPOSED] ORDER |
| v. | )<br>) | GRANTING DEFENDANTS'<br>MOTION TO TRANSFER |
| TEXDIS USA, INC., a Delaware corporation,<br>and DISTEX, INC., a Delaware corporation, | )<br>)<br>) | PURSUANT TO<br>28 U.S.C. § 1404 (A) |
| Defendants. | )<br>) | |

10

11

12

13

14

15    This Court having considered DEFENDANTS' MOTION TO TRANSFER

16 PURSUANT TO 28 U.S.C. § 1404 (A) (the "Motion"), and having considered the briefs and

17 evidence submitted in support thereof and in opposition thereto,

18    NOW, THEREFORE, it is ordered that the Motion is GRANTED.  Pursuant to 28

19 U.S.C. § 1404, this action shall be transferred to the United States District Court for the

20 Southern District of New York, and the Clerk is ordered to take all actions reasonable and

21 necessary to accomplish such transfer.

22    DATED: _____, 2008.

23

24    _____
      Ricardo S. Martinez

25    United States District Judge

26

27

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

Presented by:

2

By:  */s/Bradley L. Fisher*
Bradley L. Fisher, WSBA #19895

3

Davis Wright Tremaine LLP
Suite 2200, 1201 Third Avenue

4

Seattle, Washington  98101-3045
Telephone:  (206) 757-8042

5

Fax:  (206) 757-7042
E-mail:  bradfisher@dwt.com

6

7

Louis S. Chronowski (*Pro Hac Vice*)
Dana Marjorie Orr (*Pro Hac Vice*)

8

Seyfarth Shaw LLP
131 South Dearborn Street, Suite 2400

9

Chicago, IL  60603
Telephone:  (312) 460-5891

10

E-mail:  dorr@seyfarth.com
        lchronowski@seyfarth.com

11

12

Attorneys for Defendants

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

[PROPOSED] ORDER GRANTING DEFENDANTS'
MOTION TO TRANSFER (2:08-cv-00485-RSM) — 2
DWT 11055251v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 12, 2008, I caused the document to which this certificate is attached to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Jesse O. Franklin IV | jesse.franklin@klgates.com |
| Kevin A. Rosenfield | krosenfield@prestongates.com |
| Robert Zarco | Rzarco@zarcolaw.com |
| Alejandro Brito | abrito@zarcolaw.com |

*s/ Bradley L. Fisher*
Bradley L. Fisher

[PROPOSED] ORDER GRANTING DEFENDANTS'
MOTION TO TRANSFER (2:08-cv-00485-RSM) — 3
DWT 11055251v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
9                             AT SEATTLE

JM VIDAL, INC., a Washington corporation,    )
10                                            )   No. 2:08-cv-00485-RSM
                    Plaintiff,                )
11                                            )   DECLARATION OF
        v.                                    )   BRAD FISHER RE
12                                            )   DEFENDANTS' MOTION TO
TEXDIS USA, INC., a Delaware corporation,     )   TRANSFER PURSUANT TO
13   and DISTEX, INC., a Delaware corporation, )  28 U.S.C. § 1404 (A)
                                              )
14                  Defendants.               )
                                              )
15

16      Brad Fisher declares as follows:

17      1.      I am a partner with the law firm of Davis Wright Tremaine LLP, local counsel

for defendants in this matter.  I make this declaration based on my personal knowledge.
18
        2.      Attached hereto as Exhibit A is a copy of the Declaration of Jose Gomez in
19
support of defendants' motion to transfer.
20
        I declare under penalty of perjury of the laws of the United States of America that the
21
foregoing is true and correct.
22
        Executed this 12th day of May, 2008 at Seattle, Washington.
23

24

25                                            Bradley L. Fisher, WSBA No. 19895

26

27

FISHER DECLARATION RE
MOTION TO TRANSFER (2:08-cv-00485-RSM) — 1
DWT 11054982v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

# EXHIBIT A

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| JM VIDAL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No.  C 08 485 |
| | ) | |
| TEXDIS USA, INC. and | ) | |
| DISTEX, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF JOSE GOMEZ

I, José Gómez, declare as follows:

1.      I make this declaration in support of Defendants' Motion to Transfer Venue to the Southern District of New York.

2.      The statements in this declaration are based on my own personal knowledge.  I am competent to testify to all matters stated herein.

3.      Currently, I am the Senior Vice-President of International Business Development at Mango MNG USA, Inc.

4.      Defendant Texdis USA, Inc. ("Texdis") is a Delaware corporation with its principal place of business at 529 Fifth Avenue, 2nd Floor, New York, New York 10017.

5.      Texdis is a wholly-owned subsidiary of Mango MNG USA, Inc. ("Mango"), a Delaware corporation with its principal offices also located at 529 Fifth Avenue, 2nd Floor, New York, New York 10017.

6.      Mango is a wholly-owned subsidiary of Punto Fa, S.L. ("Punto Fa"), a company organized under the laws of Spain with its principal place of business in Barcelona, Spain.

CH2 20215981.1

7.      Punto Fa granted Texdis the exclusive rights in the United States to develop a network of franchised Mango stores.

8.      Punto Fa granted to Defendant Distex, Inc. ("Distex") certain rights to wholesale Mango brand clothes and accessories to franchisees, as well as to provide product design, store design, store fixtures, décor and equipment, promotional materials, packaging and shipping.

9.      Distex is also a wholly-owned subsidiary of Mango and its principal place of business is located at 529 Fifth Avenue, 2nd Floor, New York, New York 10017.

10.     Neither Texdis, Mango, Punto Fa or Distex have any offices or employees located in the State of Washington.

11.     All communications to Texdis or Distex are received at their corporate office in New York, or at Distex's logistics center in New Jersey.

12.     All of Texdis' and Distex's corporate files are located in New York or New Jersey.  Neither Texdis nor Distex maintain any files in the State of Washington.

13.     Plaintiff JM Vidal, Inc. ("Vidal") is a Washington corporation with its principal place of business in Seattle, Washington.

14.     Vidal first contacted Mango in 2001, sending several faxes and letters to Mango in Barcelona which explained his interest in distributing Mango merchandise via a distribution center.

15.     Mango rejected Vidal's offer to distribute merchandise and instead offered to review Vidal's business proposal for a United States franchise.

16.     After receiving more correspondence from Vidal in Barcelona, Mango agreed to meet with Vidal in Barcelona to better understand his business proposal.

17.     In 2002, Mango sent Vidal a letter from Barcelona informing him that Punto Fa did not anticipate opening United States shops until 2005 due to the need to obtain relevant state and federal permits.

18.     I sent a letter to Vidal in October 2004.

19.     At that time, I was employed by Texdis as the Vice President of International Expansion for Mango in the United States and Canada.

20.     I was hired by Punto Fa and work out of Barcelona, but I travel to New York often for work and I have a New York residence at 25 Central Park West, #11S in New York City, a U.S. social security number and New York State Driver's License.

21.     Vidal and I engaged in several discussions over the course of the next year, which mostly consisted of Vidal's inquiries as to when he would be able to start his Mango franchise, and my repeat responses that Mango was not yet authorized to do business in the United States.

22.     Unrelated to my conversations with Vidal, I traveled to Seattle in November 2004 to research premises for Mango corporate stores – not franchises – and agreed to meet with Vidal as a courtesy because he had pursued Mango business for several years, to no avail.

23.     Eventually, Mango obtained the necessary state and federal permits and on October 25, 2005, Vidal entered into the Agreement with Texdis and Distex for the operation of a Mango franchise at Bellevue Square Mall in Seattle, Washington.

24.     Pursuant to the Agreement, the parties agreed that any dispute under the Agreement is to be governed by New York law.  The parties also agreed to litigate any dispute in New York.

25.    No negotiations leading to the signing of the Agreement took place in Washington.

26.    All negotiations related to the Agreement took place through phone calls, letters and email correspondence between Vidal and me and other Punto Fa employees in Barcelona.

27.    Before Vidal's franchise opened, Distex set up a logistics center in New Jersey for the distribution of merchandise to Vidal two times per week.

28.    Carlos Lozano, the President of both Texdis and Distex ("Lozano"), is a New Jersey resident and works in New Jersey at the same location as the logistics center.

29.    Distex has four other employees other than Lozano: one customer service employee, two supervisors and one window dresser. Two of these four employees are located in New Jersey.

30.    Vidal's Complaint is based on alleged difficulties in operating the franchise occasioned by Defendants' alleged misrepresentations and inducements for Vidal to become a Mango franchisee.

31.    Vidal seeks to rescind the Agreement on the grounds that he was induced to sign it as a result of improper and unlawful representations made by Defendants.

32.    To the best of my knowledge, there are no non-party witnesses with knowledge of the facts alleged in Vidal's Complaint located in the State of Washington.

33.    To the best of my knowledge, there are no Vidal employed witnesses, to the facts underlying this dispute, who are located in the State of Washington, other than Vidal's president, Jean Marie Vidal.

34.     Forcing Distex and Texdis to litigate in the State of Washington would cause great inconvenience and burden, and it would be contrary to the express agreement of the parties in the Agreement to litigate any dispute in New York.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 9th day of May, 2008.

José Gómez

1

## CERTIFICATE OF SERVICE

2    I hereby certify that on May 12, 2008, I caused the document to which this certificate is

3    attached to be electronically filed with the Clerk of the Court using the CM/ECF system, which

4    will send notification of such filing to the following:

5
     Jesse O. Franklin IV          jesse.franklin@klgates.com
6    Kevin A. Rosenfield           krosenfield@prestongates.com
     Robert Zarco                  Rzarco@zarcolaw.com
7    Alejandro Brito               abrito@zarcolaw.com

8

9                                  s/Bradley L. Fisher
10                                 Bradley L. Fisher

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

FISHER DECLARATION RE
MOTION TO TRANSFER (2:08-cv-00485-RSM) — 2
DWT 11054982v1 0086759-000001

The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                              AT SEATTLE

9   JIM VIDAL, INC.,                        )
                                            )
10                      Plaintiff,          )    No. 2:08-cv-00485-RSM
                                            )
11          v.                              )    NOTICE OF AMENDMENT
                                            )
12  TEXDIS USA, INC. and DISTEX, INC.,      )
                                            )
13  _____Defendant._____)

14          Filed herewith on behalf of Defendants Texdis USA, Inc. ("Texdis") and Distex,

15  Inc. is an Amended Declaration of José Gómez.  The Amended Declaration corrects

16  Paragraph 19 of the original Declaration of José Gómez, filed as Exhibit A to the

17  Declaration of Brad Fisher Regarding Defendants' Motion to Transfer on May 12, 2008

18  (Docket No. 17).  Paragraph 19 of the original Declaration of José Gómez states that Mr.

19  Gómez was employed by Texdis in October 2004.  Mr. Gómez's employer at the time was

20  actually Punta Fa, S.L., a parent company of Texdis.  The Amended Declaration therefore

21  replaces "Texdis" with "Punta Fa, S.L." in Paragraph 19.

22          Defendants' Motion to Transfer, also filed on May 12, 2008 (Docket No. 16)

23  references Paragraph 19 of the Declaration of José Gómez at page 3, line 25.  "Texdis"

NOTICE OF AMENDMENT (2:08-cv-00485-RSM) — 1
DWT 11214867v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    should be replaced with "Punta Fa, S.L." at that location in the brief, pursuant to the

2    Amended Declaration.

3           DATED this 30th day of May, 2008.

4                              Respectfully submitted,
                          DAVIS WRIGHT TREMAINE LLP

5

6                              By */s/ Jennifer Lenga Long*
                              Bradley L. Fisher, WSBA #19895

7                                  Jennifer Lenga Long, WSBA #32895
                              Davis Wright Tremaine LLP

8                                  Suite 2200, 1201 Third Avenue
                              Seattle, Washington  98101-3045

9                                  Telephone:  (206) 622-3150
                              Fax:  (206) 757-7700

10                                 E-mail:    bradfisher@dwt.com
                              E-mail:    jenniferlenga@dwt.com

11

12                                 Louis S. Chronowski (*Pro Hac Vice*)
                              Dana Marjorie Orr (*Pro Hac Vice*)

13                                 Seyfarth Shaw LLP
                              131 South Dearborn Street, Suite 2400

14                                 Chicago, IL  60603
                              Telephone:  (312) 460-5891

15                                 E-mail:    lchronowski@seyfarth.com
                                          dorr@seyfarth.com

16                                 Attorneys for Defendants

17

18

19

20

21

22

23

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
8                            AT SEATTLE

9   JIM VIDAL, INC.,                        )
                                            )
10                      Plaintiff,          )    No. 2:08-cv-00485-RSM
                                            )
11          v.                              )    DECLARATION OF JOSÉ
                                            )    GÓMEZ
12   TEXDIS USA, INC. and DISTEX, INC.,     )    AMENDED DECLARATION
                                            )
13                      Defendant.          )

14          I, José Gómez, declare as follows:

15          1.      I make this declaration in support of Defendants' Motion to Transfer Venue

16   to the Southern District of New York.

17          2.      The statements in this declaration are based on my own personal

18   knowledge.  I am competent to testify to all matters stated herein.

19          3.      Currently, I am the Senior Vice President of International Business

20   Development at Mango MNG USA, Inc.

21          4.      Defendant Texdis USA, Inc. ("Texdis") is a Delaware corporation with its

22   principal place of business at 529 Fifth Avenue, 2nd Floor, New York, New York 10017.

23

AMENDED DECLARATION OF JOSÉ GÓMEZ (2:08-cv-00485-           Davis Wright Tremaine LLP
RSM) — 1                                                          LAW OFFICES
                                                            Suite 2200 · 1201 Third Avenue
DWT 11071316v1 0086759-000001                              Seattle, Washington 98101-3045
                                                           (206) 622-3150 · Fax: (206) 757-7700

1      5.      Texdis is a wholly-owned subsidiary of Mango MNG USA, Inc.

2    ("Mango"), a Delaware corporation with its principal offices also located at 529 Fifth

3    Avenue, 2nd Floor, New York, New York 10017.

4      6.      Mango is a wholly-owned subsidiary of Punto Fa, S.L. ("Punto Fa"), a

5    company organized under the laws of Spain with its principal place of business in

6    Barcelona, Spain.

7      7.      Punto Fa granted Texdis the exclusive rights in the United States to develop

8    a network of franchised Mango stores.

9      8.      Punto Fa granted to Defendant Distex, Inc. ("Distex") certain rights to

10    wholesale Mango brand clothes and accessories to franchisees, as well as to provide

11    product design, store design, store fixtures, décor and equipment, promotional materials,

12    packaging and shipping.

13      9.      Distex is also a wholly-owned subsidiary of Mango and its principal place

14    of business is located at 529 Fifth Avenue, 2nd Floor, New York, New York 10017.

15      10.      Neither Texdis, Mango, Punto Fa or Distex have any offices or employees

16    located in the State of Washington.

17      11.      All communications to Texdis or Distex are received at their corporate

18    office in New York, or at Distex's logistics center in New Jersey.

19      12.      All of Texdis' and Distex's corporate files are located in New York or New

20    Jersey.  Neither Texdis nor Distex maintain any files in the State of Washington.

21      13.      Plaintiff JM Vidal, Inc. ("Vidal") is a Washington corporation with its

22    principal place of business in Seattle, Washington.

23

AMENDED DECLARATION OF JOSÉ GÓMEZ (2:08-cv-00485-
RSM) — 2
DWT 11071316v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

14.    Vidal first contacted Mango in 2001, sending several faxes and letters to Mango in Barcelona which explained his interest in distributing Mango merchandise via a distribution center.

15.    Mango rejected Vidal's offer to distribute merchandise and instead offered to review Vidal's business proposal for a United States franchise.

16.    After receiving more correspondence from Vidal in Barcelona, Mango agreed to meet with Vidal in Barcelona to better understand his business proposal.

17.    In 2002, Mango sent Vidal a letter from Barcelona informing him that Punto Fa did not anticipate opening United States shops until 2005 due to the need to obtain relevant state and federal permits.

18.    I sent a letter to Vidal in October 2004.

19.    At that time, I was employed by Punto Fa, S.L. as the Vice President of International Expansion for Mango in the United States and Canada.

20.    I was hired by Punto Fa and work out of Barcelona, but I travel to New York often for work, and I have a New York residence at 25 Central Park West, #11S in New York City, a U.S. social security number and New York State Driver's License.

21.    Vidal and I engaged in several discussions over the course of the next year, which mostly consisted of Vidal's inquiries as to when he would be able to start his Mango franchise, and my repeat responses that Mango was not yet authorized to do business in the United States.

22.    Unrelated to my conversations with Vidal, I traveled to Seattle in November 2004 to research premises for Mango corporate stores -- not franchises -- and agreed to

AMENDED DECLARATION OF JOSÉ GÓMEZ (2:08-cv-00485-RSM) — 3

DWT 11071316v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    meet with Vidal as a courtesy because he had pursued Mango business for several years, to

2    no avail.

3        23.    Eventually, Mango obtained the necessary state and federal permits and on

4    October 25, 2005, Vidal entered into the Agreement with Texdis and Distex for the

5    operation of a Mango franchise at Bellevue Square Mall in Seattle, Washington.

6        24.    Pursuant to the Agreement, the parties agreed that any dispute under the

7    Agreement is to be governed by New York law.  The parties also agreed to litigate any

8    dispute in New York.

9        25.    No negotiations leading to the signing of the Agreement took place in

10   Washington.

11       26.    All negotiations related to the Agreement took place through phone calls,

12   letters and email correspondence between Vidal and me and other Punto Fa employees in

13   Barcelona.

14       27.    Before Vidal's franchise opened, Distex set up a logistics center in New

15   Jersey for the distribution of merchandise to Vidal two times per week.

16       28.    Carlos Lozano, the President of both Texdis and Distex ("Lozano"), is a

17   New Jersey resident and works in New Jersey at the same location as the logistics center.

18       29.    Distex has four other employees other than Lozano: one customer service

19   employee, two supervisors and one window dresser.  Two of these four employees are

20   located in New Jersey.

21       30.    Vidal's Complaint is based on alleged difficulties in operating the franchise

22   occasioned by Defendants' alleged misrepresentations and inducements for Vidal to

23   become a Mango franchisee.

AMENDED DECLARATION OF JOSÉ GÓMEZ (2:08-cv-00485-
RSM) — 4
DWT 11071316v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    31.    Vidal seeks to rescind the Agreement on the grounds that he was induced to

2 sign it as a result of improper and unlawful representations made by Defendants.

3    32.    To the best of my knowledge, there are no non-party witnesses with

4 knowledge of the facts alleged in Vidal's Complaint located in the State of Washington.

5    33.    To the best of my knowledge, there are no Vidal employed witnesses, to the

6 facts underlying this dispute, who are located in the State of Washington, other than

7 Vidal's president, Jean Marie Vidal.

8    34.    Forcing Distex and Texdis to litigate in the State of Washington would

9 cause great inconvenience and burden, and it would be contrary to the express agreement

10 of the parties in the Agreement to litigate any dispute in New York.

11    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of

12 the United States of American that the foregoing is true and correct.

13

14 Executed this 26th day of May, 2008 at  Palau de Plegamans, Barcelona                .

15

16                                    José Gómez

17

18

19

20

21

22

23

AMENDED DECLARATION OF JOSÉ GÓMEZ (2:08-cv-00485-
RSM) — 5

DWT 11071316v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9   JM VIDAL, INC.,                              No. 2:08-cv-00485-RSM
    a Washington corporation,

10
                                  Plaintiff,    PLAINTIFF/COUNTER-
11                                              DEFENDANT'S ANSWER AND
                                                AFFIRMATIVE DEFENSES TO
12          v.                                  COUNTERCLAIM

13  TEXDIS USA, INC., a Delaware
    corporation, and DISTEX, INC., a
14  Delaware corporation,

15                                Defendants.

16          Plaintiff/Counter-Defendant, JM VIDAL, INC. (hereinafter "JMV"), by and through

17  undersigned counsel and pursuant to Rule 12 of the Federal Rules of Civil Procedure, hereby

18  files its Answer and Affirmative Defenses to Defendants/Counter-Plaintiffs' Counterclaim,

19  as follows:

20                                          **ANSWER**

21                                        **The Parties**

22          1.      With respect to the allegation that Texdis USA, Inc. possesses its principal

23  place of business in New York, at the time of the filing of this action JMV believed that the

24  allegation was accurate.  However, since the filing of this action, JMV has obtained

25  information which leads JMV to believe that the allegation is not accurate and thus denies

26  that allegation.  JMV admits the remaining allegations in paragraph 1 of the Counterclaim.

PLAINTIFF/COUNTER-DEFENDANT'S                          PRESTON GATES & ELLIS LLP
ANSWER AND AFFIRMATIVE DEFENSES                              925 FOURTH AVENUE
                                                                 SUITE 2900
TO COUNTERCLAIM - 1                                     SEATTLE, WASHINGTON 98104
                                                        TELEPHONE: (206) 623-7580
K:\2053339\00001\20695_KAR\20695P21HC                   FACSIMILE: (206) 623-7022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

2.      With respect to the allegation that Distex, Inc. possesses its principal place of business in New York, at the time of the filing of this action JMV believed that the allegation was accurate.  However, since the filing of this action, JMV has obtained information which leads JMV to believe that the allegation is not accurate and thus denies that allegation.  JMV admits the remaining allegations in paragraph 1 of the Counterclaim.

3.      Admitted.

4.      Admitted

### Jurisdiction and Venue

5.      Admitted.

6.      Admitted.

### The Franchise Agreement

7.      Admitted that the parties entered into a Franchise Agreement on or about October 25, 2005, not October 25, 2006 as alleged in the Counterclaim.

8.      Admitted.

9.      Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

10.      Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

11.      Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

12.      Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

13.      Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

PLAINTIFF/COUNTER-DEFENDANT'S
ANSWER AND AFFIRMATIVE DEFENSES
TO COUNTERCLAIM - 2

K:\2053339\00001\20695_KAR\20695P21HC

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

14.   Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

15.   Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

16.   Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

17.   Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

18.   Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

19.   Denied.

20.   Denied.

21.   Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

22.   Admitted that Counter-Plaintiffs have cited to certain provisions in the Franchise Agreement.

23.   Denied.

24.   Denied.

25.   Denied.

26.   Denied.

27.   Denied.

28.   JMV does not possess sufficient information to admit or deny the allegation that "several" unidentified customers have complained about the service they received while shopping at the Store and, thus, denies that allegation.

29.   Denied.

30.   Denied.

PLAINTIFF/COUNTER-DEFENDANT'S
ANSWER AND AFFIRMATIVE DEFENSES
TO COUNTERCLAIM - 3
K:\2053339\00001\20695_KAR\20695P21HC

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

31.    Denied.

32.    Denied.

33.    Denied.

34.    Denied.

## Count I – Breach of Contract

35.    JMV incorporates by specific reference the responses to the allegations in paragraph 1 through 34 of the Counterclaim as if fully set forth herein.

36.    Admitted.

37.    Denied.

38.    Denied.

39.    Denied.

## AFFIRMATIVE DEFENSES

1.    **Prior Breach.** Counter-Plaintiffs are barred from recovery due to their prior material breaches of contract. Counter-Plaintiffs have failed to comply with the terms of the Franchise Agreement. Additional facts supporting this defense are located in JMV's Complaint.

2.    **Inducement.** Counter-Plaintiffs are barred from recovery due to their conduct which induced JMV into entering into the Franchise Agreement. Additional facts supporting this defense are located in JMV's Complaint.

3.    **Setoff.** Any amounts alleged to be due and owing to the Counter-Plaintiffs must be set off against the amounts due and owing to JMV by the Counter-Plaintiffs.

4.    **Frustration of Performance or Purpose.** Counter-Plaintiffs have frustrated JMV's performance under, and the purpose of, the Franchise Agreement by engaging in wrongful conduct. Additional facts supporting this defense are located in JMV's Complaint.

PLAINTIFF/COUNTER-DEFENDANT'S
ANSWER AND AFFIRMATIVE DEFENSES
TO COUNTERCLAIM - 4
K:\2053339\00001\20695_KAR\20695P21HC

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    **WHEREFORE**, Counter-Defendant, JM VIDAL, INC., requests that judgment be

2    entered in its favor and against Counter-Plaintiff on Count I of the Counterclaim, and that

3    Counter-Defendant be awarded its costs, reasonable attorney's fees pursuant to RCW §

4    4.84.330 and such further relief as this Court deems appropriate.

5                                 **DEMAND FOR JURY TRIAL**

6          JMV demands a trial by jury of all issues triable as of right.

7
          DATED this 2nd day of June, 2008.
8

9                                          s/Jesse O. Franklin IV___
                                           Jesse O. Franklin IV, WSBA # 13755
10                                         Kevin A. Rosenfield, WSBA # 34972
                                           KIRKPATRICK & LOCKHART
11                                         PRESTON GATES & ELLIS LLP
                                           925 Fourth Avenue Suite 2900
12                                         Seattle WA 98104-1158
                                           Telephone:  (206) 623-7580
13                                         Facsimile:  (206) 370-6063
                                           E-mail:  jesse.franklin@klgates.com;
14                                         kevin.rosenfield@klgates.com

15
                                           s/Alejandro Brito____
16                                         Robert Zarco
                                           Alejandro Brito
17                                         ZARCO EINHORN SALKOWSKI & BRITO
                                           100 S.E. 2nd Street -27th Floor
18                                         Miami, Florida  33131-2193
                                           Telephone:  (305) 374-5418
19                                         Facsimile:  (305) 374-5428
                                           E-mail:  ABrito@zarcolaw.com
20                                         *Appearing Pro Hac Vice*

21                                         Attorneys for Plaintiff
                                           JM VIDAL, INC.
22

23

24

25

26

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

The Honorable Ricardo S. Martinez

1
2
3
4
5
6
7                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
8                                   AT SEATTLE
9
   JM VIDAL, INC.,                          No. 2:08-cv-00485-RSM
10  a Washington corporation,
                                            PLAINTIFF'S RESPONSE IN
11                             Plaintiff,    OPPOSITION TO DEFENDANTS'
                                            MOTION TO TRANSFER
12       v.                                 PURSUANT TO
                                            28 U.S.C. § 1404(a)
13  TEXDIS USA, INC., a Delaware
   corporation, and DISTEX, INC., a         **NOTED ON MOTION CALENDAR:**
14  Delaware corporation,
                                            **June 6, 2008**
15                             Defendants.
                                            **ORAL ARGUMENT REQUESTED**
16
17
18         Plaintiff JM VIDAL, INC., by and through undersigned counsel, hereby files its

19  memorandum of law in opposition to Defendants' motion to transfer pursuant to 28 U.S.C.

20  §1404(a), as follows:

21              I.       SUMMARY OF ACTION

22         On March 27, 2008, Plaintiff filed this action, which comes as a result of a franchise

23  relationship between the parties.  Plaintiff is engaged in the operation of an MNG franchise, a

24  retail outlet offering clothing and accessories.  Defendant TEXDIS USA, INC. is the

25  franchisor of MNG franchise system and Defendant DISTEX, INC. is an affiliate of the

26  franchisor charged with responsibility of selling MNG clothing and apparel to the Plaintiff on

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 1
No.   C08-0485 RSM

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

a wholesale basis. Through this action, Plaintiff seeks an award of damages against the Defendants as a result of Defendants' unlawful and predatory conduct. In addition, Plaintiff seeks to rescind the franchise agreement between the parties on the grounds that Plaintiff was induced into signing the franchise agreement as a result of improper and unlawful representations made by the Defendants.

On May 12, 2008, Defendants responded to the Complaint by filing: (a) an Answer, Affirmative Defenses and Counterclaim, and (b) a Motion to Transfer Pursuant to 28 U.S.C. §1404(a). Defendants' motion seeks the transfer of this action to the United States District Court for the Southern District of New York. For the reasons set forth herein, Plaintiff submits that Defendants' motion is without merit and should be denied in its entirety.

## II.    ARGUMENT

### A.    Defendants Admit That Venue in This District Is Proper.

It is important to make clear that Defendants' motion does not contend that this District is an improper venue but, rather, that a more convenient venue exists. In their Answer to Plaintiff's complaint, the Defendants admitted that not only does this Court possess subject matter jurisdiction and personal jurisdiction over the Defendants, but also that venue is proper in this District pursuant to 28 U.S.C. § 1391(a). *See* Answer, p. 2, ¶¶2-4. Additionally, in their Counterclaim, Defendants also alleged that venue in this District is proper. *Id.* at p. 22 ¶¶5-6. In considering Defendants' motion, Plaintiff submits that proper weight should be afforded to Defendants' admissions as to the propriety of the current venue.

### B.    Applicable Standard

Defendants' motion is made pursuant to 28 U.S.C. §1404(a), which has two facial requirements: (1) that the district to which defendants seek to have the action transferred is one in which the action "might have been brought," and (2) that the transfer be for the convenience of parties and witnesses, and in the interest of justice. 28 U.S.C. §1404(a). In

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 2
No.  C08-0485 RSM
K:\2053339\00001\20695_KAR\20695P21H6

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580

analyzing the criteria, courts "weigh multiple factors in its determination whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). The factors are "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.* at 498-99.

Defendants' argument that the case should be transferred to New York hinges on Defendants' contention that: (a) the forum selection provision in the parties' Franchise Agreement "dictates" the selection of the forum, and (b) because Defendants' principal place of business, files and witnesses are all located in New York, the requested transfer is appropriate. As referenced more fully below, the forum selection provision in the Franchise Agreement does not dictate the Court's decision here when balanced with the terms of the Washington Franchise Investment Protection Act. Further, with respect to the factors to be examined by the Court, it is clear that the Defendants have not met their burden of demonstrating that a transfer is warranted.

**C.    The Forum Selection Provision in the Franchise Agreement is Not Dispositive.**

It is undisputed that the Franchise Agreement executed by the parties contains a forum selection provision which provides for venue in the State of New York. Defendants contend that the forum selection provision contained in the Franchise Agreement "dictates" the decision as to the proper forum of this dispute. *See* Defendants' Motion to Transfer (hereinafter "Defs.' Mot."), p. 7. In making this argument, Defendants entirely ignore the causes of action alleged by the Plaintiff and the effect that the laws of the State of Washington have over the Defendants.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 3
No.   C08-0485 RSM
K:\2053339\00001\20695_KAR\20695P21H8

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580

Count I of Plaintiff's Complaint alleges a violation of the Washington Franchise Investment Protection Act ("FIPA"). FIPA is recognized as being a fundamental policy of the State of Washington. *See* RCW §19.100.220 ("This chapter represents a fundamental policy of the state of Washington."); *Rutter v. Bx of Tri-Cities*, 60 Wn. App. 743, 748, 806 P.2d 1266 (1991) ("The provisions of FIPA reflect a fundamental policy of this state to protect its citizens from oppressive practices historically associated with the sale of franchises."). Indeed, FIPA contains an emergency effective date provision which reads: "This act is necessary for the immediate preservation of the public peace, health and safety . . ." Laws of 1972, 1st Ex. Sess., ch. 116, §17.

Consistent with the goal of protecting the fundamental rights of franchisees in the State of Washington, FIPA contains an express jurisdiction and venue provision, which reads:

> Any person who is engaged or hereafter engaged directly or indirectly in the sale or offer to sell a franchise or a subfranchise or in business dealings concerning a franchise, either in person or in any other form of communication, shall be subject to the provisions of this chapter and shall be amenable to the jurisdiction of the courts of this state and shall be amenable to the service of process under RCW 4.28.180, 4.28.185 and 19.86.160.

*RCW* §19.100.160.[1]

The provisions of FIPA make clear that Defendants, as persons engaged in the sale of franchises in the State of Washington, "*shall* be subject to the provisions of [FIPA], *shall* be amenable to the jurisdiction of the courts of this state and *shall* be amenable to the service of process . . ." *Id.* [emphasis supplied]. To the extent that the Defendants seek to avoid the effect of FIPA, it is their burden to demonstrate the grounds as to why they should be exempt from the *mandatory* language of FIPA. *See RCW* §19.100.220(1) ("In any proceeding under

---

1    FIPA defines a "Person" as "a natural person, corporation, partnership, trust, or other entity and in the case of an entity, it shall include any other entity which has a majority interest in such an entity or effectively controls such other entity as well as the individual officers, directors, and other persons in act of control of the activities of each such entity." RCW §19.100.010.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 4
No. C08-0485 RSM
K:\2053339\00001\20695_KAR\20695P21H8

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580

this chapter, the burden of proving an exception from a definition or an exemption from

registration is upon the person claiming it."). Plaintiff submits that Defendants cannot meet

this burden and their motion should be denied.

    To the extent that Defendants contend that the venue provision in the Franchise

Agreement somehow prevails over FIPA, such an argument is without legal support and,

indeed, is expressly rejected by FIPA. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th

Cir. 2000) ("Additionally, the presence of a forum selection clause is a 'significant factor' in

the court's §1404(a) analysis. We also conclude that the relevant public policy of the forum

state, if any, is at least as significant a factor in the §1404(a) balancing.") Moreover, FIPA

bars parties from attempting to contract around the provisions of FIPA, including through the

use of choice of law provisions and forum selection clauses, as follows:

> **Any agreement, condition, stipulation or provision, including a
> choice of law provision, purporting to bind any person to waive
> compliance with any provision of this chapter or any rule or order
> hereunder is void.** A release or waiver executed by any person pursuant
> to a negotiated settlement in connection with a bona fide dispute
> between a franchisee and a franchisor, arising after their franchise
> agreement has taken effect, in which the person giving the release or
> waiver is represented by independent legal counsel, is not an agreement
> prohibited by this subsection.

*See* RCW §19.100.220(2) [emphasis supplied].

    As noted above, FIPA uses mandatory language with respect to jurisdiction and venue

being appropriate in Washington courts for those engaged in the sale of franchises in

Washington. Defendants' contention that the venue provision supersedes FIPA is simply

unsupported. Indeed, under the express provisions of FIPA, the forum selection clause in the

parties' Franchise Agreement, which Defendants contend "dictates" this Court's decision to

transfer the matter to New York, is void as a matter of law. *Id.*

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580

1    Plaintiff submits that the prevailing effect and authority manifested by the mandatory

2 provision of FIPA, standing alone, serves as sufficient grounds to deny Defendants' motion to

3 transfer this action from this Court to New York.

4
**D.    An Examination of the Relevant Factors Demonstrates that a Transfer of This
5        Action Is Not Warranted**

6        *1.    Location of Negotiation and Execution of Agreements*

7    Defendants readily admit that the negotiation of the terms of the Franchise Agreement

8 was conducted by "phone calls, letters and email correspondence between [Plaintiff's

9 principal] and [Gomez] and other Punto Fa employees in Barcelona." *See* Declaration of Jose

10 Gomez ("Gomez Decl.") ¶26.[2]  Plaintiff's principal, Jean Marie Vidal ("Vidal"), was in

11 Washington when he placed or received the "phone calls, letters and email correspondence"

12 that comprised these negotiations.  Declaration of Jean Marie Vidal ("Vidal Decl.") ¶6.  New

13 York did not factor into the negotiations at all.  *Id.*

14    Although Defendants note that the location of the execution of the Franchise

15 Agreement is one of the factors to be analyzed by the Court, Defendants fail to factually

16 address it.  The omission is not accidental.  As with the negotiations, the Franchise Agreement

17 was executed by Vidal in Washington.  *Id.* at ¶7.  The person who signed the Agreement on

18 behalf of the Defendants is Isak Halfon Cakim ("Cakim"), Punto Fa's principal, who resides

19 in Barcelona, Spain.  *Id.* at ¶8.  Based on the information available to Plaintiff, Cakim does

20 not work or reside in New York.  *Id.* at ¶9.  As such, it is Vidal's understanding that Cakim

21 signed the Franchise Agreement in Spain, not New York.  *Id.* at ¶10.

22

23    2    Plaintiff requests that the Court strike the Declaration of Jose Gomez.  Mr. Gomez's declaration is not
actually signed by him; rather, the signature page makes clear that an unidentified person signed the
24    declaration on Mr. Gomez's behalf.  No explanation is provided in the declaration or in the declaration of
Defendants' counsel as to why Mr. Gomez did not sign the declaration.  Absent his signature, such
25    declaration plainly does not comply with the requirements of 28 U.S.C. § 1746, which provides, among
other things, that a declaration must be signed under penalty of perjury. The Declaration of Brad Fisher,
26    local counsel for Defendants, does not cure the defect in the Declaration of Jose Gomez.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 6
No.  C08-0485 RSM

K:\2053339\00001\20695_KAR\20695P21H8

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580

1    Accordingly, this factor weighs in favor of **Washington**.

2    **2.    State Most Familiar with Governing Law**

3    Plaintiff's complaint alleges six (6) causes of action.  Count I is for a violation of

4    FIPA which is clearly governed by the laws of the State of Washington.  *See RCW*

5    §19.100.220(2).  Count II alleges a Violation of New York Franchise Sales Act, which is

6    governed by New York law.  Counts III and IV, both of which are for breach of contract, are

7    governed by New York law pursuant to the choice of law provision in the Franchise

8    Agreement.  Counts V and VI are for fraudulent misrepresentation and negligent

9    misrepresentation, respectively, are governed by Washington.  *See Mikron Indus. v. Hurd*

10   *Windows & Doors, Inc.,* 2007 U.S. Dist. LEXIS 80982, *6 (W.D. Wa. Oct. 12, 2007, Lasnik,

11   J.)[3] (*citing Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir.

12   1992) (*quoting Consolidated Data Terminals v. Applied Digital Data Systems*, 708 F.2d 385,

13   390 n. 3 (9th Cir. 1983)) (finding that fraud and misrepresentation claims were not subject to a

14   choice of law provision which read '[t]his agreement shall be controlled and interpreted under

15   the internal laws of the State of Washington,' on the grounds that "claims arising in tort are

16   not 'ordinarily controlled by a contractual choice of law provision' but are instead 'decided

17   according to the law of the forum state.'").[4]

18   Accordingly, because the six causes of action are divided equally between the

19   competing states, this factor *does not* favor a transfer.

20

21

22

23   ————————————

24   3    A copy of the *Mikron Indus. v. Hurd Windows & Doors, Inc.* decision is attached as Exhibit A to the Declaration of Kevin A. Rosenfield.

25   4    The choice of law provision in the Franchise Agreement is limited to the following: "This Agreement shall be interpreted and construed under the laws of the State of New York."  *See* Complaint, Ex. B, p. 36,

26   ¶XXV(A).

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 7
No.  C08-0485 RSM

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE:(206) 623-7580
FACSIMILE:(206) 623-7022

### 3.    Plaintiff's Choice of Forum

The general rule is that a plaintiff's choice of forum is accorded substantial weight. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Indeed, "the defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Id.* (*citing Continental Oil Co. v. Atwood & Morrill Co.*, 265 F. Supp. 692, 699 (D. Mont. 1967)).

Accordingly, this factor weighs in favor of ***Washington***.

### 4.    The Respective Parties' Contacts with the Forum

Plaintiff is a corporation organized under the laws of the State of Washington maintaining its principal place of business in Seattle, Washington. *See* Vidal Decl., ¶3. Based on the admissions contained in the Defendants' Answer, Affirmative Defenses and Counterclaim ("Answer"), as well as those contained in the Gomez Declaration, it is clear that Defendants have multiple and repeated contacts with the State of Washington. *See* Answer ¶¶ 2-4, 8, 31, 44, 55, 74, 82; Gomez Decl. ¶¶ 18, 21–23, 26. Defendants have attempted to distance themselves from the obvious contacts that they possess with the State of Washington by contending that ***Gomez*** did not travel to Washington for purposes of selling Plaintiff a franchise, but rather for purposes of opening a corporate location for the Defendants in Washington. This contention misses the mark. It is ***Defendants'*** contacts with the State of Washington, not ***Gomez's*** that are relevant. Defendants cannot, and do not, deny that they sold a franchise in the State of Washington and that they are subject to jurisdiction in Washington as a result of their contacts with the State of Washington. *See* Answer ¶¶ 31, 44.

With respect to Plaintiff's contact with the alternative forum, such contact is limited to the venue provision. Plaintiff does not travel to New York in relation to its business endeavors with the Defendants. *See* Vidal Decl. ¶11.[5] In their motion, Defendants represent,

---

5   In their motion, Defendants liberally contend that "Vidal travels often as well, and made numerous trips outside of the State of Washington in connection with its pursuit of a franchise agreement and eventual

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 8
No.   C08-0485 RSM

K:\2053339\00001\20695_KAR\20695P21H8

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580

and have submitted Gomez's testimony in support, that Defendants' "principal place of business is located at 529 Fifth Avenue, 2nd Floor, New York, New York 10017." Defs.' Mot., p. 3; Gomez Decl., ¶¶4, 9. This representation warrants scrutiny. The address listed as Defendants principal place of business is the office of Citrin Cooper & Co., an accounting firm. *See* Vidal Decl. ¶12. Defendants do not maintain a physical office at the location. *Id.* Rather, it appears that the Citrin firm serves as a registered agent for the Defendants. However, it does not appear that the Defendants actually conduct any business out of the address they have represented to this Court. It strains credulity for the Defendants to suggest that an accounting firm's office location, which appears to serve as nothing more than a registered agent for the Defendants, constitutes the Defendants' principal place of business and, more importantly, serves to support Defendants' contention that they possess contacts with the State of New York that exceed those with the State of Washington.

Accordingly, given that the parties all clearly possess numerous and direct contacts with the State of Washington, and little to no contact with the State of New York, this factor weighs in favor of ***Washington***.

### 5.    *The Contacts Relating To the Plaintiff's Cause of Action in the Chosen Forum*

The Complaint makes clear that this case is primarily based upon pre-contractual representations made by the Defendants, which caused the Plaintiff to execute a Franchise Agreement, which was subsequently breached by the Defendants. A plain examination of the elements of Plaintiff's causes of action demonstrates that that these causes of action are directly connected to the State of Washington. Defendants offered and sold the subject franchise, and made the unlawful representations, in Washington. Plaintiff executed the Franchise Agreement in Washington. Plaintiff's franchise is located in Washington. The

purchase of the Mango franchise." Defs.' Mot., p. 7. Noticeably absent is any contention, much less evidence, that Vidal traveled to New York in relation to his purchase of the Mango franchise.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 9
No.  C08-0485 RSM

K:\2053339\00001\20695_KAR\20695P21H8

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580

losses suffered by the Plaintiff as a result of Defendants' conduct occurred in Washington. The State of New York does not factor into this criterion in any respect.

Accordingly, this factor weighs in favor of *Washington*.

### 6.    *Differences in the Costs of Litigation in the Two Forums*

There does not appear to be any difference between the Federal Courts in Washington and New York as to this factor.  Indeed, Defendants' lead counsel is based out of Chicago; thus if the case were in New York, the litigation costs to the Defendants would not be reduced dramatically from those that are to be borne by trying this case before this Court.

Accordingly, considering that Defendants bear the burden of demonstrating that a transfer is warranted, this factor *does not* favor a transfer.

### 7.    *Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses*

There does not appear to be any difference between the Federal Courts in Washington and New York as to this factor.  Defendants disagree and baldly contend that non-party witnesses will be outside of the Court's subpoena power.  No such non-party witnesses are identified.  Indeed, the only witnesses identified by the Defendants are the Plaintiff's principal and the employees of the Defendants, who should be willing or able to testify absent the need of a subpoena.  Nevertheless, witnesses residing in New York, New Jersey or any other state can certainly be subpoenaed for testimony pursuant to Rule 45(a)(2) of the Federal Rules of Civil Procedure by having the U.S. District Court in the district where the testimony is to be taken issue a subpoena commanding the appearance of any such witness.

Accordingly, considering that Defendants bear the burden of demonstrating that a transfer is warranted, this factor *does not* favor a transfer.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 10
No.   C08-0485 RSM

K:\2053339\00001\20695_KAR\20695P21H8

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

**8.    *Ease of Access to Sources of Proof***

2    There does not appear to be any difference between the Federal Courts in Washington

3    and New York as to this factor.  Accordingly, considering that Defendants bear the burden of

4    demonstrating that a transfer is warranted, this factor ***does not*** favor a transfer.

5    ### III.    CONCLUSION

6    Put simply, the Defendants, who bear the burden of demonstrating that a transfer of

7    this action is warranted, have not met this burden.  Venue in this District has been admitted to

8    be proper.  Indeed, the Defendants have sought affirmative relief from this Court in the form

9    of a Counterclaim against the Plaintiff.  The criteria to be examined by this Court does not

10    support a transfer.  Most importantly, Washington law does not support Defendants' position

11    that this matter should be transferred.

12    **WHEREFORE**, Plaintiff JM VIDAL, INC., respectfully requests that the Court enter

13    an Order denying  Defendants' motion to transfer pursuant to 28 U.S.C. §1404(a) in its

14    entirety.

15    RESPECTFULLY submitted this 2nd day of June, 2008.

16

17                    s/Jesse O. Franklin IV___
                     Jesse O. Franklin IV, WSBA # 13755

18                   Kevin A. Rosenfield, WSBA # 34972
                     KIRKPATRICK & LOCKHART

19                   PRESTON GATES & ELLIS LLP

20                   925 Fourth Avenue Suite 2900
                     Seattle WA 98104-1158

21                   Telephone:  (206) 623-7580
                     Facsimile:  (206) 370-6063

22                   E-mail:  jesse.franklin@klgates.com;
                     kevin.rosenfield@klgates.com

23

24                   and

25

26

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 11
No.  C08-0485 RSM

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623 7022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

s/Alejandro Brito_____
Robert Zarco
Alejandro Brito
ZARCO EINHORN SALKOWSKI & BRITO
Bank of America Tower
100 S.E. 2nd Street
27th Floor
Miami, Florida   33131-2193
Telephone:   (305) 374-5418
Facsimile:   (305) 374-5428
E-mail:  ABrito@zarcolaw.com
*Appearing Pro Hac Vice*

Attorneys for Plaintiff
JM VIDAL, INC.

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 12
No.   C08-0485 RSM

K:\2053339\00001\20695_KAR\20695P21H8

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

| | |
|---|---|
| JM VIDAL, INC.,<br>a Washington corporation,<br><br>                              Plaintiff,<br><br>    v.<br><br>TEXDIS USA, INC., a Delaware<br>corporation, and DISTEX, INC., a<br>Delaware corporation,<br><br>                        Defendants. | No. 2:08-cv-00485-RSM<br><br>[PROPOSED] ORDER DENYING<br>DEFENDANTS' MOTION TO<br>TRANSFER PURSUANT TO<br>28 U.S.C. § 1404(a) |

10

11

12

13

14

15

16

THIS MATTER came before the Court upon Defendants' Motion to Transfer Pursuant

17
to 28 U.S.C. § 1404(a).  Having considered Defendants' motion, and having considered the

18
briefs and evidence submitted in support thereof and in opposition thereto,

19
NOW, THEREFORE, is it hereby ordered that Defendants' motion to transfer

20
pursuant to 28 U.S.C. § 1404(a) is DENIED.

21

22
DATED this _____ day of June, 2008.

23

24
_____

25
Ricardo S. Martinez,
United States District Judge

26

ORDER DENYING DEFENDANTS'
MOTION TO TRANSFER - 1

No.   C08-0485 RSM

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    Presented by:

2    s/Jesse O. Franklin IV___
       Jesse O. Franklin IV, WSBA # 13755
3    Kevin A. Rosenfield, WSBA # 34972
       KIRKPATRICK & LOCKHART
4    PRESTON GATES & ELLIS LLP
       925 Fourth Avenue Suite 2900
5    Seattle WA 98104-1158
       Telephone:  (206) 623-7580
6    Facsimile:  (206) 370-6063
       E-mail:  jesse.franklin@klgates.com;
7    kevin.rosenfield@klgates.com

8

9    s/Alejandro Brito____
       Robert Zarco
10    Alejandro Brito
       ZARCO EINHORN SALKOWSKI & BRITO
11    Bank of America Tower
       100 S.E. 2nd Street - 27th Floor
12    Miami, Florida   33131-2193
       Telephone:  (305) 374-5418
13    Facsimile:  (305) 374-5428
       E-mail:  ABrito@zarcolaw.com
14    *Appearing Pro Hac Vice*

15    Attorneys for Plaintiff
16    JM VIDAL, INC.

17

18

19

20

21

22

23

24

25

26

ORDER DENYING DEFENDANTS'
MOTION TO TRANSFER - 2

No.   C08-0485 RSM

K:\2053339\00001\20695_KAR\20695P21H6

KIRKPATRICK ¶ LOCKHART
PRESTON GATES ¶ ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580

The Honorable Ricardo S. Martinez

1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9  JM VIDAL, INC.,
   a Washington corporation,

10                                              Plaintiff,

11      v.

12  TEXDIS USA, INC., a Delaware
    corporation, and DISTEX, INC., a
13  Delaware corporation,

14                                              Defendants.

No. 2:08-cv-00485-RSM

DECLARATION OF KEVIN A.
ROSENFIELD IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO
TRANSFER PURSUANT TO
28 U.S.C. § 1404(a)

15
      I, KEVIN A. ROSENFIELD, declare and state as follows:
16
      1.      I am an attorney with Kirkpatrick & Lockhart Preston Gates Ellis, LLP,
17
counsel of record for Plaintiff JM Vidal, Inc. ("JMV"), in the above captioned matter.  I
18
am over the age of eighteen and make this declaration based on my personal knowledge.
19
      2.      Attached as **Exhibit A** to this declaration is a true and correct copy of a
20
Lexis printout of the unpublished decision of *Mikron Indus. v. Hurd Windows & Doors,*
21
*Inc.,* 2007 U.S. Dist. LEXIS 80982 (W.D. Wa. Oct. 12, 2007, Lasnik, J.).
22
      / / /
23
      / / /
24
      / / /
25

DECLARATION OF KEVIN A. ROSENFIELD IN
SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 1

K:\2053339\00001\20695_KAR\20695P21H1

KIRKPATRICK & LOCKHART
PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct:

EXECUTED this 2nd day of June, 2008 at Seattle, Washington.

_____

Kevin A. Rosenfield

DECLARATION OF KEVIN A. ROSENFIELD IN
SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER - 2

K:\2053339\00001\20695_KAR\20695P21H1

KIRKPATRICK & LOCKHART
PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# EXHIBIT A

LEXSEE 2007 U.S. DIST. LEXIS 80982



Analysis
As of: May 28, 2008

**MIKRON INDUSTRIES, INC., Plaintiff, v. HURD WINDOWS & DOORS, INC., et al., Defendants.**

**Case No. C07-0532RSL**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON**

**2007 U.S. Dist. LEXIS 80982**

**October 12, 2007, Decided**
**October 12, 2007, Filed**

**SUBSEQUENT HISTORY:** Summary judgment denied by Mikron Indus. v. Hurd Windows & Doors, Inc., 2008 U.S. Dist. LEXIS 27455 (W.D. Wash., Mar. 28, 2008)

**COUNSEL:** [*1] For Mikron Industries Inc, a Washington Corporation, Plaintiff: Gavin Williams Skok, Michael Pierson, LEAD ATTORNEYS, RIDDELL WILLIAMS, SEATTLE, WA.

For Hurd Windows & Doors Inc, formerly known as Monarch Hurd Acquisition Company, an Iowa corporation, HMC Inc, formerly known as Hurd Millwork Company Inc, a dissolved Wisconsin corporation, UIS Inc, a New Jersey corporation, Defendants: Jeffrey S Eden, LEAD ATTORNEY, BULLIVANT HOUSER BAILEY (PORTLAND), PORTLAND, OR; Barbara J Rhoads-Weaver, BULLIVANT HOUSER BAILEY (SEA), SEATTLE, WA.

For Hurd Windows & Doors Inc, HMC Inc, UIS Inc, a New Jersey corporation, Counter Claimants: Jeffrey S Eden, LEAD ATTORNEY, BULLIVANT HOUSER BAILEY (PORTLAND), PORTLAND, OR; Barbara J Rhoads-Weaver, BULLIVANT HOUSER BAILEY (SEA), SEATTLE, WA.

For Mikron Industries Inc, a Washington Corporation, Mikron Industries Inc, a Washington Corporation, Counter Defendants: Gavin Williams Skok, Michael Pierson, LEAD ATTORNEYS, RIDDELL WILLIAMS, SEATTLE, WA.

**JUDGES:** Robert S. Lasnik, United States District Judge.

**OPINION BY:** Robert S. Lasnik

**OPINION**

ORDER GRANTING IN PART PLAINTIFF'S MOTION TO DISMISS

**I. INTRODUCTION**

This matter comes before the Court on "Plaintiff's Motion to Dismiss Defendants' Fraud [*2] and Misrepresentation Counterclaims and to Strike Punitive Damages Request" (Dkt. # 22). On April 11, 2007, plaintiff filed a complaint for damages and declaratory relief based upon defendants' alleged breach of the Mikron-Wood Supply Agreement, entered into by both parties on July 2, 2002. Complaint at 9-13. On August 8, 2007, defendants filed an amended answer with counterclaims, including allegations of fraud and misrepresentation and a demand for punitive damages. Amended Answer with Counterclaims at 11-12. Plaintiff now requests that the Court dismiss defendants' fraud and misrepresentation counterclaims and strike defendants' demand for punitive damages. For the reasons set forth below, the Court GRANTS IN PART plaintiff's motion to dismiss: defendants' fraud and misrepresentation counterclaims are dismissed with leave to amend. Plaintiff's motion to strike defendants' demand for punitive damages is DENIED.

## II. DISCUSSION

### A. Defendants' fraud and misrepresentation counterclaims lack the specificity required by Rule 9(b).

Federal Rule of Civil Procedure 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." [*3] Rule 9(b)'s heightened pleading standard also applies to claims for misrepresentation. *See Moore v. Kayport Package Express, Inc.,* 885 F.2d 531, 540 (9th Cir. 1989). Ninth Circuit authority provides definitive guidance on the degree of particularity required by Rule 9(b): "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003)(quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir. 1997)). *See also Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985)("Rule 9(b) ensures that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.").

Defendants' counterclaims for fraud and misrepresentation fail to specify the time, place, and identities of the parties to the alleged misrepresentations. Amended Answer with Counterclaims at 7, 11-12. Moreover, because defendants' allegations of fraud are so vague and generalized, plaintiff has insufficient detail to adequately prepare its defenses. The [*4] Court finds that defendants' counterclaims fail to meet Rule 9(b)'s heightened pleading requirements for fraud and misrepresentation.

Defendants correctly note that Ninth Circuit law favors granting leave to amend unless it is clear "that the complaint could not be saved by any amendment." *McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc.,* 339 F.3d 1087, 1090 (9th Cir. 2003). Accordingly, the Court dismisses defendants' fraud and misrepresentation counterclaims and grants defendants 20 days to amend those claims.

### B. The statute of limitations does not presently bar defendants' fraud counterclaim.

Washington law provides that a cause of action for fraud "shall be commenced within three years" and that "the cause of action in such case [is] not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." RCW 4.16.080(4). Although the defense of the statute of limitations may be raised by a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the running of the statute must be evident on the face of the pleading. *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir. 1980). Washington law provides that a cause of action accrues when a [*5] party knows or should know through the exercise of due diligence of the relevant facts. *Allen v. State,* 118 Wash.2d 753, 758, 826 P.2d 200, 203 (1992). Analysis of due diligence raises issues of fact. *Id.* at 760, 826 P.2d at 204.

Nothing in the existing record makes it evident on the face of the pleadings when defendants' fraud claim accrued. Plaintiff argues that because defendants filed their counterclaim on August 8, 2007, any alleged misrepresentations before August 8, 2004 would exceed the statute of limitations. Motion at 8. Plaintiff goes on to argue that because the parties maintained an ongoing business relationship since entering into the Mikron-Wood Agreement on July 2, 2002, and because defendant received customer complaints about plaintiff's product, defendants discovered or should have discovered any misrepresentations before August 8, 2004. Motion at 8-9. Given the basic facts surrounding this dispute, defendants may well be able to prove that they did not discover, and could not reasonably have discovered, any misrepresentations until after August 8, 2004, notwithstanding the ongoing relationship and/or customer complaints. The Court therefore denies plaintiff's motion to dismiss [*6] defendants' fraud and misrepresentation counterclaims based upon the running of the statute of limitations.

### C. Defendant adequately states a claim for punitive damages.

Although the Mikron Wood Supply Agreement specified that "[t]his agreement shall be controlled and interpreted under the internal laws of the State of Washington," Exhibit A to Claim at 4, defendants' fraud and misrepresentation counterclaims also sound in tort. Claims arising in tort are not "ordinarily controlled by a contractual choice of law provision" but are instead "decided according to the law of the forum state." *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.,* 971 F.2d 401, 407 (9th Cir. 1992)(quoting *Consolidated Data Terminals v. Applied Digital Data Systems,* 708 F.2d 385, 390 n. 3 (9th Cir. 1983)). Defendants correctly note that the Washington Supreme Court has been hesitant to decide a conflict of law case based upon a record "in which the facts may develop in a number of ways before us at trial, reducing our opinion to nothing more than an advisory opinion." *Southwell v. Widing Transp., Inc.,* 101 Wn.2d 200, 207, 676 P.2d 477, 481 (1984). Here, as in *Southwell,* the record is insufficiently developed [*7] to provide the necessary facts to permit the Court to conduct a choice of law analysis. Accordingly, the Court finds that a conflict of law analysis would be premature at this point in the proceedings.

Should at some point in the future the Court determine that Wisconsin law governs defendants' tort claims,

defendants' demand for relief would be sufficient to satisfy the notice pleading requirements under both Wisconsin law and the Federal Rules of Civil Procedure. [1] Under the Federal Rules of Civil Procedure, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief, and ... a demand for judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a). Furthermore, allegations of "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). Wisconsin law provides virtually identical direction for the contents of pleadings. *See* Wis. Stat. 802.02. Although Wisconsin law limits punitive damages to instances of malice or intentional disregard for another party's rights, Wis. Stat. 895.043(3), it does not impose any type of heightened pleading standard. Under Wisconsin law, a [*8] claim for punitive damages "should be dismissed as legally insufficient only if it is clear that plaintiff cannot recover under any condition." *Wangen v. Ford Motor Co.,* 97 Wis.2d 260, 308, 294 N.W. 2d 437, 462 (1980).

> 1   Since both Federal and Wisconsin Rules of Civil Procedure have virtually identical notice pleading requirements, it is unnecessary at this point for the Court to determine whether Federal or Wisconsin pleading requirements govern defendants' demand for punitive damages.

In the present situation, defendants' counterclaim characterizes plaintiff's misrepresentations as "deceitful and totally contrary to the rights of [defendant]." Amended Answer with Counterclaims at 11-12. Thus, in averring a disregard for their rights in general terms, defendants' counterclaim is sufficient to meet the notice pleading requirement for a demand for punitive damages under Wisconsin law. Accordingly, the Court denies plaintiff's motion to strike defendants' demand for punitive damages.

### III. CONCLUSION

For all of the foregoing reasons, "Plaintiff's Motion to Dismiss Defendants' Fraud and Misrepresentation Counterclaims and to Strike Punitive Damages Request" (Dkt. # 22) is GRANTED IN PART. The [*9] Court GRANTS plaintiff's motion to dismiss defendants' fraud and misrepresentation counterclaims and dismisses those claims with leave to amend. Defendant must amend the fraud and misrepresentation counterclaims within 20 days of the date of this order. The Court DENIES plaintiff's motion to strike defendants' request for punitive damages.

DATED this 12th day of October, 2007.

Robert S. Lasnik

United States District Judge

The Honorable Ricardo S. Martinez

1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
                                 AT SEATTLE
8

9   JM VIDAL, INC.,                              No. 2:08-cv-00485-RSM
    a Washington corporation,
10
                                                 CERTIFICATE OF SERVICE
                              Plaintiff,
11
          v.
12
    TEXDIS USA, INC., a Delaware
13  corporation, and DISTEX, INC., a
    Delaware corporation,
14
                              Defendants.
15

16        I hereby certify that on June 2, 2008, I electronically filed the referenced documents:

17    •   PLAINTIFF/COUNTER-DEFENDANT'S ANSWER AND AFFIRMATIVE
          DEFENSES TO COUNTERCLAIM
18
      •   PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
19        TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

20    •   DECLARATION OF KEVIN A. ROSENFIELD IN SUPPORT OF
          PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER
21        PURSUANT TO 28 U.S.C. § 1404(a)

22    •   [PROPOSED] ORDER DENYING DEFENDANTS' MOTION TO
          TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
23
    with the Clerk of the Court using the CM/ECF system which will send notification of such
24
    filing to the following:
25
          --    Bradley L. Fisher, Davis Wright Tremaine LLP
26        --    Louis S. Chronowski (Pro Hac Vice), Seyfarth Shaw LLP

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2      --    Dana Marjorie Orr (Pro Hac Vice), Seyfarth Shaw LLP

3      DATED this 2nd day of June, 2008.

4                                        s/Jesse O. Franklin IV__
                                         Jesse O. Franklin IV, WSBA # 13755
5                                        Kevin A. Rosenfield, WSBA # 34972
                                         KIRKPATRICK & LOCKHART
6                                        PRESTON GATES & ELLIS LLP
                                         925 Fourth Avenue Suite 2900
7                                        Seattle WA 98104-1158
                                         Telephone:  (206) 623-7580
8                                        Facsimile:   (206) 370-6063
                                         E-mail:  jesse.franklin@klgates.com;
9                                        kevin.rosenfield@klgates.com

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

CERTIFICATE OF SERVICE - 2

K:\2053339\00001\20695_KAR\20695P21H9

1

2

The Honorable Ricardo S. Martinez

3

4

5

6

7                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
8                           AT SEATTLE

9
JM VIDAL, INC.,                          No.   C08-0485 RSM
10  a Washington corporation,
                                         DECLARATION OF JEAN MARIE
11                          Plaintiff,   VIDAL

12       v.

13  TEXDIS USA, INC., a Delaware
    corporation, and DISTEX, INC., a
14  Delaware corporation,

15                          Defendants.

16          **<u>DECLARATION OF JEAN MARIE VIDAL</u>**

17       1.     Pursuant to 28 U.S.C. § 1746, I, JEAN MARIE VIDAL, hereby declare,

18  certify, verify, and state under penalty of perjury that the following declaration is true and

19  correct.

20       2.     This declaration is based upon direct and personal knowledge and is being

21  made in support of Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to

22  Transfer Pursuant to 28 U.S.C. §1404(a).

23       3.     I am the principal of Plaintiff, JM VIDAL, INC. (hereinafter referred to as

24  "JMV"), a corporation organized under the laws of the State of Washington and maintaining

25  its principal place of business in Seattle, Washington.  JMV is engaged in the operation of an

26  MNG franchise, a retail outlet offering women's clothing and accessories.

DECLARATION OF JEAN MARIE VIDAL - 1
    No.   C08-0485 RSM

KIRKPATRICK & LOCKHART
PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

4.      I have reviewed Defendants' Motion to Transfer Pursuant to 28 U.S.C. §1404(a) and the declaration of Jose Gomez filed in support thereof.

5.      Defendants state that the negotiation of the terms of the Franchise Agreement that JMV executed with the Defendants was conducted by "phone calls, letters and email correspondence between [Plaintiff's principal] and [Gomez] and other Punto Fa employees in Barcelona." *See* D.E. #17, Declaration of Jose Gomez ("Gomez Decl.") &26.

6.      I was in Washington when I placed or received the "phone calls, letters and email correspondence" that comprised these negotiations. New York did not factor into the negotiations at all.

7.      As with the negotiations, the Franchise Agreement was executed by me on behalf of JMV in Washington.

8.      The person who signed the Franchise Agreement on behalf of the Defendants is Isak Halfon Cakim ("Cakim"), Punto Fa's principal, who I understand to reside in Barcelona, Spain.

9.      Based on the information available to me, Cakim does not work or reside in New York.

10.     It is my understanding that Cakim signed the Franchise Agreement in Spain, not New York.

11.     I do not travel to New York in relation to JMV's business endeavors with the Defendants.

12.     The address listed as Defendants principal place of business is the office of Citrin Cooper & Co., an accounting firm. The notice provision in the Franchise Agreement lists the office of Citrin Cooper & Co., 529 Fifth Avenue, 2nd Floor, New York, New York 10017, as the location where notices should be sent to the Defendants.

13.     It is my understanding that Defendants do not maintain a physical office at the Citrin Cooper & Co location.

DECLARATION OF JEAN MARIE VIDAL - 2
No.   C08-0485 RSM

KIRKPATRICK & LOCKHART
PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

14.    Rather, it appears that the Citrin firm serves as a registered agent for the Defendants.

15.    However, it does not appear that the Defendants actually conduct any business out of the address they have represented to this Court.

16.    The losses suffered by JMV as a result of Defendants' conduct occurred in Washington.

**UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED HEREIN ARE TRUE AND CORRECT.**

Dated: _____May 27_____, 2008

_____
JEAN MARIE VIDAL

DECLARATION OF JEAN MARIE VIDAL - 3

No.   C08-0485 RSM

KIRKPATRICK & LOCKHART
PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# CERTIFCATE OF SERVICE

I hereby certify that on June 2, 2008, I electronically filed the referenced document:

- DECLARATION OF JEAN MARIE VIDAL (in support of Plaintiffs's Response in Opposition to Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)

with the Clerk of the Court using the CM/ECF system which will send notification of such

filing to the following:

      --    Bradley L. Fisher, Davis Wright Tremaine LLP
      --    Louis S. Chronowski (Pro Hac Vice), Seyfarth Shaw LLP
      --    Dana Marjorie Orr (Pro Hac Vice), Seyfarth Shaw LLP

DATED this 2nd day of June, 2008.

<div style="margin-left: 40%;">

s/Jesse O. Franklin IV__
Jesse O. Franklin IV, WSBA # 13755
Kevin A. Rosenfield, WSBA # 34972
KIRKPATRICK & LOCKHART
PRESTON GATES & ELLIS LLP
925 Fourth Avenue Suite 2900
Seattle WA 98104-1158
Telephone:  (206) 623-7580
Facsimile:   (206) 370-6063
E-mail:  jesse.franklin@klgates.com;
kevin.rosenfield@klgates.com

</div>

PRESTON GATES & ELLIS LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

K:\2053339\00001\20695_KAR\20695P21HD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Honorable Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| JM VIDAL, INC., a Washington corporation, | ) | No. 2:08-cv-00485-RSM |
| Plaintiff, | ) ) | |
| v. | ) ) | DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO TRANSFER VENUE |
| TEXDIS USA, INC., a Delaware corporation, and DISTEX, INC., a Delaware corporation, | ) ) ) | |
| Defendants. | ) ) ) | |

## I.  Preliminary Statement

On October 25, 2005, at JM Vidal's request and insistence, Texdis granted JM Vidal a franchise to operate a Mango store in Washington state.  As a result, JM Vidal and Texdis/Distex mutually agreed to a franchise agreement (the "Agreement") that covered all aspects of the parties franchise relationship, including the rights and responsibilities of each party.  JM Vidal also agreed to a forum selection clause (the "Forum Selection Clause") requiring it to litigate any dispute against Texdis or Distex in New York.  The Forum Selection Clause provides, in pertinent part:

> *[JM Vidal] agree[s] that any action brought by [JM Vidal] against [Texdis or Distex] shall be brought in the state or federal courts of the State of New York.*

Complaint, Ex. B at 36.  In clear violation of the Forum Selection Clause, JM Vidal filed this action in Washington.  In its response, JM Vidal fails to carry its heavy burden for

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
TO TRANSFER VENUE (2:08-cv-00485-RSM) — 1
DWT 11259089v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

invalidating the Forum Selection Clause.  As a result, this Court should transfer this matter to New York.

## II.    The Agreement's Forum Selection Clause is Presumptively Valid

JM Vidal mistakenly argues that the Forum Selection Clause in the Agreement *is not valid* and *should not be enforced.  See* JM Vidal Br. at 3-6.[1]  However, in a case cited by JM Vidal, the Ninth Circuit recognizes binding Supreme Court authority holding that:

> . . . *[A] forum selection clause is presumptively valid and should not be set aside* unless the party challenging the clause "clearly show[s] that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000) (emphasis added); *Sapp v. K-1 Corp.*, No. 06-1791-JCC, 2007 WL 101167, at *4 (W.D. Wash., Jan. 10, 2007).  However, a presumptively valid forum selection clause will not be enforced "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision."  *Id.*  Further, "even though a clause is the product of a full and free bargaining process, and contravenes no public policy of the forum, it 'may nevertheless be 'unreasonable' and unenforceable if the chosen forum is seriously inconvenient for the trial of the action.'  The party challenging the forum selection clause bears a '*heavy burden*' of establishing the existence of one of the aforementioned grounds for rejecting its enforcement."  *Id.*  (emphasis added).  JM Vidal fails to carry its heavy burden on all of these grounds.

First, JM Vidal does not claim or argue that the Agreement's forum selection clause is clearly unreasonable, unjust, or the result of fraud or overreaching.

Second, despite JM Vidal's arguments to the contrary, the Agreement's forum selection clause does not contravene a strong public policy of the forum as set forth by statute or judicial decision.

---

[1]    JM Vidal also mistakenly argues that Texdis/Distex's admission that venue is proper in Washington somehow carries the day for its opposition to this motion.  It does not because an analysis of a motion to transfer venue pursuant to 28 U.S.C. § 1404 presumes that venue is proper in both the transferor and transferee court. *Hamilton v. Firestone Tire & Rubber Co.*, 679 F.2d 143, 146 (9th Cir. 1982) ("Section 1404(a) concerns the District Court's power to transfer an action to another District Court, when venue is proper in both courts . . .").

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
TO TRANSFER VENUE (2:08-cv-00485-RSM) — 2
DWT 11259089v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200  ·  1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150  ·  Fax: (206) 757-7700

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

JM Vidal reads into the Washington Franchise Investment Protection Act ("FIPA") a venue requirement that does not exist. JM Vidal Br. at 5. Clearly, the FIPA requires a franchisor, like Texdis, to "be amenable to the jurisdiction" of Washington courts and to "be amenable to service of process." RCW 19.100.160. However, JM Vidal futilely claims that the jurisdiction and service of process "*amenability*" provisions of the FIPA translate into a *mandatory* venue provision. JM Vidal Br. at 5. They do not. Moreover, the FIPA nowhere contains language invalidating forum selection clauses found in franchise agreements or requiring disputes between franchisors and franchisees to be venued only in Washington.

There is no doubt that the Washington legislature understands the difference between jurisdiction, service of process and venue provisions. For example, in Washington's [Motor Vehicle] Manufacturers' and Dealers' Franchise Agreement Act (the "WMDFA"), the Washington legislature specifically required the venue for all disputes between motor vehicle manufacturers and franchised dealers to be Washington. The Washington legislature also recognized the venue provision as the public policy of Washington. The WMDFA provides in pertinent part:

> Notwithstanding the provisions of a franchise agreement or other provision of law to the contrary, the venue for a cause of action, claim, lawsuit, administrative hearing or proceeding, arbitration, or mediation, whether arising under this chapter or otherwise, in which the parties or litigants are a manufacturer or distributor and one or more motor vehicle dealers, is the state of Washington. *It is the public policy of this state* that venue provided for in this section may not be modified or waived in any contract or other agreement, and any provision contained in a franchise agreement that requires arbitration or litigation to be conducted outside the state of Washington is void and unenforceable.

RCW 46.96.240 (emphasis added). The FIPA contains no such similar language.

Moreover, the *Jones* case is clearly distinguishable from this case because California's franchise act contained a venue requirement similar to the WMDFA. In *Jones*, the court declined to enforce a forum selection clause because California's franchise act contained an express provision invalidating forum selection clauses in franchise agreements. *Jones*, 211 F.3d at 487. This is like the WMDFA, but unlike the FIPA. If the FIPA contained an express venue provision, like in *Jones*, then this Court would likely be required to invalidate the

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
TO TRANSFER VENUE (2:08-cv-00485-RSM) — 3
DWT 11259089v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  Forum Selection Clause and to keep this matter in Washington. But, since the FIPA contains

2  no such language, this Court should enforce the Forum Selection Clause.

3      Third, as discussed in Texdis/Distex's opening brief, and below, it would not be

4  seriously inconvenient for the trial in this action to be held in New York, the state where JM

5  Vidal promised it would bring any action against Texdis/Distex.

6  **III.    It is Not Seriously Inconvenient for the Parties to Litigate in New York**

7      JM Vidal has not met its heavy burden in showing that litigation of this matter would

8  be seriously inconvenient in New York.

9  **A.    *The Location Agreement Was Negotiated***

10     JM Vidal admits that the Agreement was essentially negotiated over the phone and

11 through correspondence between JM Vidal in Washington and individuals in Spain. This

12 factor does not suggest that New York would be an inconvenient forum. Because JM Vidal

13 fails to carry its heavy burden regarding this factor, transfer to New York is favored.

14 **B.    *State Most Familiar with the Law***

15     JM Vidal admits that its six causes are equally split between Washington claims and

16 New York claims. In doing so, JM Vidal admits that its breach of contract claims will be

17 governed by New York law pursuant to the choice of law provision in the Agreement.[2]

18 Texdis/Distex's breach of contract counterclaim will also be governed by New York law. As

19 a result, four of the seven causes of action in this case will be governed by New York law.

20 This factor suggests that New York would be a more convenient forum, and as a result, favors

21 transfer.

22 **C.    *Plaintiff's Choice of Forum***

23     JM Vidal's choice of forum should be given no consideration. Valid forum selection

24 clauses negate the presumption given to plaintiff's choice of forum. *Jumera v. State Farm*

25 *Ins. Co.*, 55 F.3d 873, 880 (3d Cir. 1995); *Knudsen v. Elite Trading Group, Inc.*, No. CV-99-

26 1497-HU, 2000 WL 488481, at *5 (D. Or., Mar. 17, 2000); *Storm v. Witt Biomedical Corp.*,

27

---

[2]  Paradoxically, JM Vidal does not argue that the FIPA requires application of Washington law to its breach of contract claims.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
TO TRANSFER VENUE (2:08-cv-00485-RSM) — 4
DWT 11259089v1 0086759-000001

No. C-95-3718 SI, 1996 WL 53624, at *5 (N.D. Cal., Jan. 23, 1996).  Moreover, JM violated the Agreement by filing this action in Washington.  As a result, transfer to New York is favored.

### D.    *Parties' Contact with the Forum*

JM Vidal states that it "does not travel to New York *in relation to* its business endeavors with the Defendants."  JM Vidal Br. at 8 (emphasis added).  Apparently, JM Vidal travels to New York for reasons unrelated to its relationship with Texdis/Distex.  As a result, New York does not appear to be an inconvenient forum for JM Vidal.  JM Vidal ignores Texdis/Distex's contacts with New York.  Mr. José Goméz, a key witness in this case, regularly travels to New York, has a residence in New York, and a New York driver's license.  Given that this factor does not suggest that New York would be a seriously inconvenient forum, JM Vidal fails to carry its heavy burden regarding it.

### E.    *Contacts Relating to Plaintiff's Cause of Action in the Chosen Forum*

JM Vidal mistakenly argues that its claims are based upon "pre-contractual representations" made by Texdis/Distex.  JM Vidal Br. at 9.  JM Vidal expressly disclaimed, as follows, that Texdis/Distex made any representations not set forth in the Agreement that induced JM Vidal to execute the Agreement:

> NO REPRESENTATIONS OR PROMISES HAVE BEEN MADE BY [TEXDIS/DISTEX] TO INDUCE [JM VIDAL] TO ENTER THE AGREEMENT EXCEPT AS SPECIFICALLY INCLUDED HEREIN.

Complaint, Ex. B at 34.

JM Vidal fails to carry its heavy burden regarding this factor and transfer is favored.

### F.    *Costs of Litigation*

JM Vidal claims that there is no difference in the cost of litigation between Washington and New York.  In fact though, New York may be less costly for all parties because the parties' lead counsel are located east of the Mississippi.  JM Vidal's lead counsel is located in Miami and Texdis/Distex's lead counsel is located in Chicago.  Once again, JM Vidal fails to carry its heavy burden regarding this factor.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
TO TRANSFER VENUE (2:08-cv-00485-RSM) — 5
DWT 11259089v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington  98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**G.    *Compulsory Process***

JM Vidal claims that there is no difference regarding the compulsory process issue between Washington and New York.  JM Vidal also claims that Rule 45 solves this issue.  However, Rule 45 will only require a witness to appear for a deposition pursuant to a deposition subpoena pursuant to the conditions of Rule 45.  Fed. R. Civ. P. 45(a)(2)(A).  Rule 45 does not compel process for trial witnesses located outside of the territorial reach of a District Court.  Moreover, JM Vidal fails to identify any witnesses located in Washington.  Since JM Vidal has failed to meet its heavy burden regarding this factor, transfer to New York is favored.

**H.    *Ease of Access to Proof***

JM Vidal claims, with no evidentiary support, that either forum would be a convenient forum regarding this factor.  However, the Amended Declaration of José Goméz establishes that all of Texdis/Distex's files are located in New York or New Jersey.  Am. Goméz Decl. ¶12.  Since JM Vidal has failed to meet its heavy burden regarding this factor, transfer to New York is favored.

### IV.    Conclusion

JM Vidal fails to show why this Court should invalidate the presumptively valid Forum Selection Clause.  The best JM Vidal can do is to read language into the FIPA that does not exist.  Moreover, Washington law mandates enforcement of the Forum Selection Clause.

JM Vidal has failed to carry its heavy burden showing that trial of this matter in New York would be seriously inconvenient to the parties.  If anything, JM Vidal's analysis of the factors favors transfer, not keeping this case in Washington.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
TO TRANSFER VENUE (2:08-cv-00485-RSM) — 6
DWT 11259089v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP


By  /s/ Jennifer Lenga Long
     Bradley L. Fisher, WSBA #19895
     Jennifer Lenga Long, WSBA #32895
     Davis Wright Tremaine LLP
     Suite 2200, 1201 Third Avenue
     Seattle, Washington  98101-3045
     Telephone:  (206) 757-8042
     Fax:  (206) 757-7042
     E-mail:    bradfisher@dwt.com

     Louis S. Chronowski (*Pro Hac Vice*)
     Dana Marjorie Orr (*Pro Hac Vice*)
     Seyfarth Shaw LLP
     131 South Dearborn Street, Suite 2400
     Chicago, IL  60603
     Telephone:  (312) 460-5891
     E-mail:    lchronowski@seyfarth.com
              dorr@seyfarth.com

     Attorneys for Defendants

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
TO TRANSFER VENUE (2:08-cv-00485-RSM) — 7
DWT 11259089v1 0086759-000001

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on June 6, 2008, I caused the document to which this certificate is

3  attached to be electronically filed with the Clerk of the Court using the CM/ECF system,

4  which will send notification of such filing to the following:

5      Jesse O. Franklin IV           jesse.franklin@klgates.com
       Kevin A. Rosenfield           krosenfield@prestongates.com
6      Robert Zarco                  Rzarco@zarcolaw.com
       Alejandro Brito               abrito@zarcolaw.com
7

8                                   */s/* Jennifer Lenga Long
                                    Jennifer Lenga Long
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION
TO TRANSFER VENUE (2:08-cv-00485-RSM) — 8
DWT 11259089v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

The Honorable Ricardo S. Martinez

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

| | | |
|---|---|---|
| JM VIDAL, INC., a Washington corporation, | ) | No. 2:08-cv-00485-RSM |
| Plaintiff, | ) | |
| | ) | DECLARATION OF JENNIFER |
| v. | ) | LENGA LONG IN SUPPORT OF |
| | ) | DEFENDANT'S REPLY IN |
| TEXDIS USA, INC., a Delaware corporation, | ) | SUPPORT OF MOTION TO |
| and DISTEX, INC., a Delaware corporation, | ) | TRANSFER VENUE |
| | ) | |
| Defendants. | ) | |

10
11
12
13
14
15
16

I, Jennifer Lenga Long, declare and state as follows:

17      1.      I am an attorney with Davis, Wright, Tremaine, LLP, local counsel for

18  defendants in this matter.  I make this declaration based on my personal knowledge.

19      2.      Attached as **Exhibit A** to this declaration is a true and correct copy of a

20  Westlaw printout of the unpublished decision of *Sapp v. K-1 Corp.*, No. 06-1791-JCC,

21  2007 WL 101167 (W.D. Wash., Jan. 10, 2007).

22      3.      Attached as **Exhibit B** to this declaration is a true and correct copy of a

23  Westlaw printout of the unpublished decision of *Knudsen v. Elite Trading Group, Inc.*,

24  No. CV-99-1497-HU, 2000 WL 488481 (D. Or., Mar. 17, 2000)

25      4.      Attached as **Exhibit C** to this declaration is a true and correct copy of a

26  Westlaw printout of the unpublished decision of *Storm v. Witt Biomedical Corp.*, No. C-95-

27  3718 SI, 1996 WL 53624 (N.D. Cal., Jan. 23, 1996).

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1    I declare under penalty of perjury of the laws of the United States of America that the

2    foregoing is true and correct.

3

4    Executed this 6th day of June, 2008 at Seattle, Washington.

5

6                                          s/Jennifer Lenga Long
                                           Jennifer Lenga Long, WSBA No. 32895

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF JENNIFER LENGA LONG IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT
OF MOTION TO TRANSFER VENUE (2:08-cv-00485-RSM) — 2
DWT 11259090v1 0086759-000001

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1

## CERTIFICATE OF SERVICE

2       I hereby certify that on June 6, 2008, I caused the document to which this certificate is

3   attached to be electronically filed with the Clerk of the Court using the CM/ECF system,

4   which will send notification of such filing to the following:

5       Jesse O. Franklin IV          jesse.franklin@klgates.com
        Kevin A. Rosenfield           krosenfield@prestongates.com
6       Robert Zarco                  Rzarco@zarcolaw.com
        Alejandro Brito               abrito@zarcolaw.com
7

8                                     /s/ Jennifer Lenga Long
                                      Jennifer Lenga Long
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DECLARATION OF JENNIFER LENGA LONG IN SUPPORT OF DEFENDANT'S REPLY IN SUPPORT
OF MOTION TO TRANSFER VENUE (2:08-cv-00485-RSM) — 3

DWT 11259090v1 0086759-000001

# EXHIBIT A

Westlaw.

Slip Copy
Slip Copy, 2007 WL 101167 (W.D.Wash.)
**(Cite as: 2007 WL 101167 (W.D.Wash.))**

Page 1

c
Sapp v. K-1 Corp.
W.D.Wash.,2007.
Only the Westlaw citation is currently available.
United States District Court, W.D. Washington,
at Seattle.
Robert M. SAPP, Plaintiff,
v.
K-1 CORPORATION., a Japanese corporation, and
Sadaharu Tanikawa, a citizen or subject of Japan,
Defendants.
**No. C06-1791-JCC.**

Jan. 10, 2007.

Hall Baetz, Natasha Shekdar Black, Davis Wright
Tremaine, Seattle, WA, for Plaintiff.
Anthony Todaro, Brian D. Buckley, Stellman
Keehnel, DLA Pipers U.S. LLP, Seattle, WA, Ryan
S. Goldstein, Timothy L. Alger, Quinn Emanuel
Urquhart Oliver & Hedges, Los Angeles, CA, for
Defendants.

ORDER DENYING PRELIMINARY INJUNC-
TION

JOHN C. COUGHENOUR, United States District
Judge.
**\*1** This matter comes before the Court on Plaintiff's
Motion for Preliminary Injunction (Dkt. No. 4) as
amended by Plaintiff's Amended Motion for Pre-
liminary Injunction (Dkt. No. 10). After consider-
ing the parties' submissions regarding the motion
and determining that oral argument is not neces-
sary, the Court hereby rules as follows.

**I. BACKGROUND AND FACTS**[FN1]

> FN1. For purposes of this motion for a pre-
> liminary injunction, "[t]he district court is
> not required to make any binding findings
> of fact; it need only find probabilities that
> the necessary facts can be proved."*Sierra
> On-Line, Inc. v. Phoenix Software, Inc.,*

739 F.2d 1415, 1423 (9th Cir.1984). Ac-
cordingly, the facts discussed herein are
those the Court finds could probably be
proven at trial.

Plaintiff is a professional mixed martial artist, kick-
boxer and pro wrestler. He turned to this career
after an injury ended his previous NFL football ca-
reer in the late 1990s. (First Sapp Decl. 2 (Dkt. No.
2).) Plaintiff has had significant success at these
sports, and has attained substantial notoriety world-
wide. (*Id.* at 1.) In the instant dispute, Plaintiff
seeks a preliminary injunction allowing him to par-
ticipate in pro wrestling, kickboxing, and mixed
martial arts events without the approval of Defend-
ant K-1 Corporation, despite the existence of a con-
tractual exclusivity agreement. (Pl.'s Am. Mot. for
Prelim. Inj. 1.)

Starting in 2002, Defendant K-1, a prominent or-
ganization in the world of professional kickboxing
and martial arts, began working with Plaintiff to ar-
range his participation in several fights in Japan.
(First Sapp Decl. 3.) Though Plaintiff was based
out of Seattle, Defendant K-1 flew him to Japan on
several occasions to participate in these events.
(*Id.*) In early 2003, Plaintiff told Defendant K-1
that he was uncomfortable continuing to operate
without a written contract "given the nature of the
sport and the large amounts of money
involved."(*Id.* at 3.) In response, Defendant K-1
drafted the Exclusive Management Agreement
(First Sapp Decl. Ex. 1) and Fighting Agreement
(First Sapp Decl. Ex. 2) which are the subjects of
this litigation.

It is uncontested that the parties negotiated portions
of the contract over a six month period. (Ishii Decl
3; Third Sapp Decl. 4 (Dkt. No. 25).) While
Plaintiff agrees that certain terms of the contract
were negotiated over that time, he claims that the
negotiations focused on issues such as "fight
money, bonuses, rent, and other benefits," that such
negotiations were conducted without passing the

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 101167 (W.D.Wash.)
(Cite as: 2007 WL 101167 (W.D.Wash.))

Page 2

contract documents back and forth, and that he was not aware for the vast majority of that time of the existence of a forum-selection provision. (Third Sapp Decl. 4.) Plaintiff and Defendant K-1 signed the contracts in Tokyo on June 25, 2003 in what Plaintiff characterizes as an "extravagant" affair that was videotaped and photographed before a large number of people. (First Sapp Decl. 3-4.)

The Exclusive Management Agreement contained the following provision:

**Article 20. GOVERNING LAW AND JURIS-DICTION**

20.1 This Agreement shall be governed by and construed in accordance with the laws of Japan.

20.2 All disputes, controversies or differences which may arise between the parties hereto out of, in relation to or in connection with this Agreement, or for the breach hereof, shall be subject to the exclusive jurisdiction of the Tokyo district Court of first Instance.

*2 (Exclusive Management Agreement 10.) The Fighting Agreement contains identical language. (Fighting Agreement 13.) Though he asked several questions regarding his compensation package, Plaintiff contends that "K-1 did not advise or assist me with regard to [the] meaning" of this particular provision. (First Sapp Decl. 4.) Plaintiff states: "[w]hile I may have glanced at [the Governing Law and Jurisdiction provisions] during the signing event, I had no understanding of how those articles might have affected my rights."(*Id.*) Another provision of those contracts contained an exclusivity agreement, which prevents Plaintiff from fighting without prior approval of Defendant K-1. (Exclusive Management Agreement 1.)

After the signing of the contract, Plaintiff participated in a number of events organized by Defendant K-1. As of December 31, 2005, Plaintiff had fought in more than forty events at Defendant K1's request. (First Sapp Decl. 5.)

In February of 2006, there was a dispute between Plaintiff and Defendant K-1 regarding an event hosted in Amsterdam that led to significant fallout between the parties. Plaintiff has not fought since December 31, 2005. (*Id.* at 2.) He contends that he is at a critical stage of his career where he is at peak performance and that there is a very limited time period in which he can continue to participate in the highest levels of the sport. (*Id.* at 1.) He argues that Defendants' invocation of the exclusivity agreement is having a substantial negative impact on his career. (Third Sapp Decl. 6.)

Defendant K-1 filed suit against Plaintiff in Tokyo for breach of contract on November 7, 2006. (Ishii Decl. 3.) Plaintiff filed the instant lawsuit in the Western District of Washington against Defendants on December 14, 2006 (Compl. 1 (Dkt. No. 1)) and filed this motion for a preliminary injunction on the same day (Pl.'s Mot. 1).

**II. ANALYSIS**

The basic function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits. *Chalk v. U.S. Dist. Court Cent. Dist. of California,* 840 F.2d 701, 704 (9th Cir.1988). Courts have generally required a movant to meet a higher degree of scrutiny where the movant seeks to alter rather than maintain the status quo, or where issuance of the injunction will provide the movant with substantially all of the relief that would be available after a trial on the merits. *Tom Doherty Associates, Inc. v. Saban Entm't, Inc.,* 60 F.3d 27, 33-34 (2nd Cir.1995). Thus, Plaintiff's preliminary injunction faces a very high burden: He requests to alter the status quo by seeking relief from the exclusivity provision of his contract that is currently in place. Moreover, having the provision lifted pending the resolution of the merits will give him substantially all the relief he requests because any such trial is unlikely to be concluded much sooner than the exclusivity agreement's September 20, 2007 expiration date (Exclusive Management Agreement 1; Fighting Agreement 1.)

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 101167 (W.D.Wash.)
(Cite as: 2007 WL 101167 (W.D.Wash.))

*3 To obtain a preliminary injunction, Plaintiff must satisfy either the "traditional" or "alternative" test. Under the traditional test, the Court must find that: (1) the moving party will suffer irreparable injury if the relief is denied; (2) the moving party will probably prevail on the merits; (3) the balance of potential harm favors the moving party; and (4) the public interest favors granting relief. *Cassim v. Bowen,* 824 F.2d 791, 795 (9th Cir.1987). The alternative test requires the Court to find: (1) a combination of probable success and the possibility of irreparable injury; or (2) that serious questions are raised and the balance of hardships tips sharply in his favor.*Id.* Under this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits.*Johnson v. Cal. State Bd. of Accountancy,* 72 F.3d 1427, 1430 (9th Cir.1995). The two tests are not separate inquiries, but rather "extremes of a single continuum." *Clear Channel Outdoor, Inc. v. City of Los Angeles,* 340 F.3d 810, 813 (9th Cir.2003)."[T]he less certain the district court is of the likelihood of success on the merits, the more plaintiffs must convince the district court that the public interest and balance of hardships tip in their favor."*Southwest Voter Registration Educ. Project v. Shelley,* 344 F.3d 914, 918 (9th Cir.2003). At a bare minimum, Plaintiff must demonstrate a fair likelihood of success on the merits to obtain a preliminary injunction.*Johnson,* 72 F.3d at 1430.

Plaintiff's first potential impediment to success on the merits is the forum-selection clause requiring that all disputes be litigated in Japan. Plaintiff argues that even if the forum-selection clause precludes this Court from making a merits determination, the Court may nevertheless exercise its discretion to issue a preliminary injunction. He cites *Hendricks v. Bank of America, N.A.* for the proposition that courts can issue preliminary injunctions even when valid forum-selection clauses require that the merits of the dispute be litigated in another forum. 408 F.3d 1127, 1137 (9th

*Hendricks,* however, does not stand for the broad proposition that courts can always grant any kind of preliminary injunctive relief they wish despite lack of proper venue. Rather it applies to the narrower class of "actions designed to *preserve assets* pending judgment on the merits in the contractually selected forum."*Id.* at 1138 (emphasis added). Whereas in *Hendricks*"the case before [the court was] not about the agreement itself or its validity," that is precisely what is at issue in the present matter. Here, Plaintiff is not merely seeking to secure assets prior to litigation on the merits, but rather seeks the very relief that a judgment on the merits in his favor would provide-relief from a contractual exclusivity agreement that prevents him from fighting without Defendants' consent. Accordingly, the preliminary injunction sought by Plaintiff in this case is improper if the forum-selection clause is valid.

*4 Forum-selection clauses are presumptively valid. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972). The Supreme Court has outlined only three situations in which Courts should not enforce such agreements: "first, if the inclusion of the clause in the agreement was the product of fraud or overreaching; second, if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and third, if enforcement would contravene a strong public policy of the forum in which suit is brought."*Richards v. Lloyd's of London,* 135 F.3d 1289, 1294 (9th Cir.1998) (citing, *M/S Bremen,* 407 U.S. at 12-13, 15, 18). Plaintiff asserts the existence of each of these *Bremen* factors and each will be addressed in turn.

*1. Fraud or overreaching*

Plaintiff does not allege that Defendants engaged in any fraud in order to obtain his signature on the agreement. Rather, he argues that Defendants committed acts short of fraud which allegedly amount to the type of "overreaching" discussed in *M/S Bremen.*He argues that he did not substantially negoti-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ate the forum-selection clause, did not fully understand its effect on his rights, and that Defendants exerted undue pressure against him in order to obtain his consent. (Pl.'s Reply 8-10.)

Plaintiff's argument that the forum-selection clause is unenforceable because it was not negotiated or that he did not fully contemplate the extent to which it might affect his rights has been rejected by both the Supreme Court and the Ninth circuit. In *Carnival Cruise Lines, Inc. v. Shute,* the Supreme Court enforced a forum-selection clause requiring passengers on a cruise ship to settle all disputes in Florida, even though the clause was never negotiated between the parties. 499 U.S. 585 (1991). The Ninth Circuit applied *Shute* to hold that "unequal bargaining power between the parties does not make a forum-selection clause unenforceable" in the context of a forum-selection clause in an employment contract requiring a long haul truck operator who lived in Oregon to litigate a dispute in Wisconsin. *Murphy v. Schneider National, Inc.,* 362 F.3d 1133, 1141 (9th Cir.2004). Similarly, the forum-selection clause in this case would likely be held reasonable at trial even if it was never openly negotiated between the parties. Plaintiff entered into a contract with a Japanese company to participate in events that took place primarily in Japan. Given the centrality of that location to the contract and the potential cost-saving benefits of specifying a particular forum *ex ante* outlined in *Shute* and *Murphy,* it was entirely reasonable to contractually limit resolution of disputes to courts of that country.

Further, unlike the parties in *Shute* and *Murphy,* it seems that Plaintiff both had the power and business skills to negotiate a known and unambiguous forum-selection clause but simply chose not to do so. After all, it was Plaintiff-a professional athlete and former NFL player who likely had some experience in negotiating similar contracts-and not Defendants who asked that the parties create a written agreement in the first place. (First Sapp Decl. 3.) Presumably he did so because he understood the

significance of the written document. He also admits that before signing the agreement he may have "glanced at" the specific provision of the contract (included in both the Fighting Agreement and the Exclusive Management Agreement) which unambiguously states on the signature page that "any disputes" arising under the agreements were governed by Japanese law and would have to be litigated in a Tokyo district court. Thus, even though the choice-of-forum provision may not have been the subject of back-and-forth discussion, it likely was a term in the contract about which the parties simply chose to agree.

**\*5** Plaintiff's remaining argument on this first *M/S Bremen* factor is that he was induced to sign the agreement because of the elaborate signing ceremony. This argument is wholly without merit, as the mere existence of an elaborate ceremony fails to demonstrate that Defendants somehow overpowered Plaintiff's will or otherwise engaged in illegitimate coersion.

*2. Effective deprivation of Plaintiff's day in court due to severe inconvenience.*

Plaintiff's assertion of the second *M/S Bremen* factor, whether enforcement of the forum-selection clause would be so inconvenient that it would deprive him of the ability to meaningfully litigate his dispute, is meritless. Plaintiff bases this argument on the fact that he lives in the United States and is now seeking domestic employment.

Plaintiff primarily fought in Japan, contracted with a Japanese company, and even flew to Japan to sign the contract which contained the forum-selection clause. That he now finds it inconvenient to return to Japan to litigate his dispute does not meet the "heavy burden of proof" required for such convenience-based challenges, *M/S Bremen,* 407 U.S. at 17. After all, this is not a situation where "two Americans [agree] to resolve their essentially local disputes in a remote alien form,"*see id,* but is a dispute centered in Japan in which one party happens to be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                     Page 5
Slip Copy, 2007 WL 101167 (W.D.Wash.)
**(Cite as: 2007 WL 101167 (W.D.Wash.))**

American. Accordingly, the forum-selection clause will not be held unenforceable for reasons of Plaintiff's inconvenience.

*3. Enforcement would contravene a strong public policy*

Plaintiff contends that enforcement of the forum-selection clause would contravene public policy. The policy he points to is the "public policy against contracts mixing the role of managers and promoters" found in the Muhammad Ali Boxing Reform Act, 15 U.S.C. § 6301-13. The Act to which Plaintiff refers is an attempt to regulate the domestic boxing industry and in no way implies an intent by Congress to regulate fighting around the globe. Further, to the extent there is any such public policy with regard to regulation of international fighting, this Court declines to exercise its discretion to invalidate a forum-selection clause, the enforcement of which serves important public policy goals of its own. *See M/S Bremen,* 407 U.S. at 12-13;*Fireman's Fund Ins. Co. v.. M.V. DSR Atlantic,* 131 F.3d 1336, 1338 (9th Cir.1997) (holding that the deprivation of the right to proceed in rem in a foreign jurisdiction was insufficient to overcome the public policy in favor of enforcing forum-selection agreements).

\* \* \*

Plaintiff has not been able to overcome *M/S Bremen's* presumption in favor of the enforceability of a forum-selection clause, and thus cannot demonstrate a fair chance of success on the merits. This is especially true because of the higher scrutiny given to preliminary injunctions that aim to upset the status quo while providing substantially all of the relief that would be available after a decision on the merits. Accordingly, the Court need not address the remainder of Plaintiff's arguments regarding the validity of the specific contractual provisions or any potential problems due to lack of formal service of process.

## III. CONCLUSION

\*6 For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction is hereby DENIED.

SO ORDERED.

W.D.Wash.,2007.
Sapp v. K-1 Corp.
Slip Copy, 2007 WL 101167 (W.D.Wash.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.))

**C**
Knudsen v. Elite Trading Group, Inc.
D.Or.,2000.
Only the Westlaw citation is currently available.
United States District Court, D. Oregon.
Harold O. KNUDSEN; Elvin and Helen M. Mills,
husband and wife; and Robert M. Cozad, Plaintiffs,
v.
ELITE TRADING GROUP, INC.; Iowa Grain Co.;
and Rodney Reid-Renaud, Defendants.
No. CV-99-1497-HU.

March 17, 2000.

Keith A. Ketterling, Timothy S. DeJong, Stoll Stoll
Berne Lokting & Shlachter, P.C., Portland, OR, for
plaintiffs.
Patrick G. King, Jeffry M. Henderson, Henderson
& Lyman, Chicago, IL, Robert Rosenthal, Robert
Rosenthal, P.C., Portland, OR, for defendants.

FINDINGS & RECOMMENDATION

HUBEL.
*1 Plaintiffs Harold Knudsen, Elvin Mills, Helen
Mills, and Robert Cozad bring this action against
defendants Elite Trading Group, Inc., Iowa Grain
Company, and Rodney Reid-Renaud. The action
arises out of plaintiffs' opening of brokerage ac-
counts with Iowa Grain through Elite and Reid-
Renaud, and losing their investments within a relat-
ively short period of time. Specifically, plaintiffs
bring the following claims against Elite and Reid-
Renaud: breach of fiduciary duty, negligence,
fraud, violations of Oregon's securities laws, Ore-
gon Revised Statutes (ORS) 59.115 and 59.135, and
violations of Oregon's Elder Abuse law, ORS
124.100. Plaintiffs also bring a claim under the
Commodities Exchange Act, 7 U.S.C. §§ 1-25,
against all defendants.

Defendants move to transfer the case to the North-
ern District of Illinois based on a forum selection
clause in the customer agreements signed by each

plaintiff. I recommend that the motion be denied.

BACKGROUND

Knudsen, an eighty-one year old senior citizen
residing in Sherwood, saw a television advertise-
ment touting the benefits of investing through Elite.
Upon calling Elite, Knudsen was referred to Reid-
Renaud who opened an account for him. Knudsen
then referred his friends, Elvin and Helen Mills,
and Robert Cozad to Reid-Renaud. The Millses and
Cozad also opened accounts with Reid-Renaud. All
plaintiffs lost all of their investments within about
six months. Generally, they contend that Reid-
Renaud made misrepresentations regarding the
nature of the investments and mismanaged their ac-
counts.

As part of opening accounts with Elite, Reid-
Renaud forwarded various documents to each
plaintiff, totaling approximately twenty eight or
twenty-nine pages. The packet of documents starts
with a cover sheet entitled "BOOKLET NO. 1
WELCOME TO IOWA GRAIN COMPANY."Ex.
A to DeJong Affid. at p 2; Ex. C to DeJong Affid.
at p. 1. There, Iowa Grain states as follows: "A new
account can be traded only when the application
forms and initial funds are accepted by Iowa Grain
Company, following IB [Introducing Broker] ap-
proval."*Id.* At the bottom of this page is a table of
contents indicating that the customer agreement
consists of pages four to eleven of the packet of
documents.

Next, the documents contain a "NEW ACCOUNT
FACT SHEET" at the top of which, in the left hand
corner, is a space for "Iowa Approval & Date" and
"IB Approval & Date." The relevant documents for
each plaintiff show initials in the "IB Approval and
Date" space, but no date. The space for "Iowa Ap-
proval & Date" is blank. Ex. A to DeJong Affid. at
p. 3; Ex. B to DeJong Affid. at p. 1; Ex. C to De-
Jong Affid. at p. 2.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.))

Page 2

Additionally, paragraph thirty-three of each customer agreement states that "[t]his Agreement shall not be deemed to be accepted by Iowa Grain or become a binding Contract between Customer and Iowa Grain until approved by Iowa Grain at 141 W. Jackson Boulevard, Chicago, Illinois 60604."Ex. A to DeJong Affid. at p. 13; Ex. B to DeJong Affid. at p. 4; Ex. C to DeJong Affid. at p. 12.

*2 In an affidavit filed in support of the motion to transfer, Iowa Grain Vice-President Scott Eisner states that "Iowa Grain Company's approval of Customer Agreements occurs in its office located in Chicago."Eisner Affid. at ¶ 5. He further states that

[a]ctual approval occurs only after the information supplied by the customer on the Customer Agreement is inputted into Iowa Grain Company's computer system. Upon the inputting of the information into its computer and approval of the account of Iowa Grain's Compliance Department, the Customer Agreement is deemed accepted and becomes a binding contract. The information supplied by Plaintiffs Mr. Knudsen, Mr. and Mrs. Mills and Mr. Cozad was received and inputted by Iowa Grain Company in Chicago in March, May and June respectively of 1998, at which time their respective Customer Agreements were accepted and became binding contracts.

*Id.*

Paragraph twenty-four of each customer agreement contains the following forum selection clause:

The undersigned ("Customer") agrees to bring any judicial action, including any complaint, counterclaim, cross-claim or third party complaint, arising directly, indirectly, or otherwise in connection with, out of, related to or from this Agreement or any transaction covered hereby or otherwise arising in connection with the relationship between the parties including any action by Customer against Iowa Grain or any person who is an officer, agent, employee or Associated Person of Iowa Grain at the time the cause of action arises, only in courts loc-

ated with [sic] the Northern District of Illinois. The undersigned ("Customer") also consents and submits to the jurisdiction of any state or federal court located within the Northern District of Illinois. Customer waives any right Customer may have to transfer or change the venue of any litigation brought against Customer by Iowa Grain.

Ex. A to DeJong Affid. at p. 11; Ex. C. to DeJong Affid. at p. 10; Ex. A to Defts' Memo in Support of Motion at p. 6.

Additionally, each customer agreement contains a choice of law provision designating Illinois law as the governing law. Ex. A to DeJong Affid. at p. 12; Ex. C. to DeJong Affid. at p. 11; Ex. A to Defts' Memo in Support of Motion at p. 7. Finally, each customer agreement also provides that its terms are negotiable. Ex. A to DeJong Affid. at p. 12; Ex. C. to DeJong Affid. at p. 11; Ex. A to Defts' Memo in Support of Motion at p. 7.

Additional relevant facts include those contained in the declarations filed by each plaintiff. Plaintiffs' ages range from sixty-seven to eighty-one years old. Each plaintiff has an annual household income of less than $25,000. Cozad has been recently diagnosed with prostate cancer and is currently being monitored by his physician. He is due to be admitted to a hospital at the end of April for the implantation of a type of "seed" in the prostrate which will deliver radiation treatment to the tumor.

*3 Each plaintiff states that he or she did not understand that by signing the customer agreement, he or she was agreeing to limit himself or herself to the courts in Chicago in the event of a dispute with defendants. Until recently, each plaintiff did not understand the nature of the relationship between Iowa Grain and Elite Trading Group. Each plaintiff did not understand that federal law makes Iowa Grain responsible for wrongdoings committed by Elite Trading. Each plaintiff understood only what Reid-Renaud said which was that plaintiffs needed to send money for their investments to Iowa Grain.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Each plaintiff recalls that the only conversation regarding paperwork was with Reid-Renaud by telephone to his Florida office in which he stated that he was sending paperwork that needed to be filled out and returned. Reid-Renaud did not explain the terms of the customer agreement or explain that any of the plaintiffs was giving up rights by signing the agreement. Reid-Renaud told each plaintiff which pages to fill out and sign.

Plaintiffs did not know they could be making a contract with Iowa Grain by signing the paperwork as instructed by Reid-Renault. Reid-Renault did not explain that plaintiffs had a right to negotiate the terms of the customer agreement, which was made to seem like a routine and unimportant document. None of the plaintiffs negotiated or discussed the terms of the customer agreement with any of the defendants.

Each plaintiff states that it would be extremely inconvenient if he or she is forced to continue this case in Chicago. Each plaintiff states that it is difficult enough for him or her to pursue the lawsuit in Portland because he or she has a difficult time driving in the city.

## STANDARDS

### I. Section 1404(a) Motions

28 U.S.C. § 1404 governs change of venue and provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a). The decision whether to transfer venue lies in the discretion of the district court. 28 U.S.C. § 1404; *Creative Tech. Ltd., v. Aztech Sys. Pte., Ltd.,* 61 F.3d 696, 699 (9th Cir.1995) (forum non conveniens determination committed to sound discretion of the trial court). In determining

proper venue, the court considers both public and private factors. *Id.* Private factors include ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; the possibility of viewing subject premises; and other factors contributing to an expeditious and inexpensive trial.

...

[Public] factors include administrative difficulties flowing from court congestion; imposition of jury duty on the people of a community unrelated to the litigation; the local interest in resolving the controversy at home; the interest in having a diversity case tried in a forum familiar with the law that governs the action; and the avoidance of unnecessary conflicts of law problems.

*4 *Gemini Capital Group, Inc. v. Yap Fishing Corp.,* 150 F.3d 1088, 1093, 1094 (9th Cir.1998).

Generally, defendants "must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."*Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir.1986).

### II. Standards When Forum Selection Clause is Present

In a 1988 case, the Supreme Court held that federal law controls the analysis of venue issues in diversity cases. *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 32 (1988). The Court also held that the presence of a forum selection clause is not determinative of the issue. *Id.* There, the plaintiff resisted a change in venue, arguing that state law controlled the determination and that the relevant state law looked unfavorably upon contractual forum selection clauses. *Id.* at 24.The Supreme Court held that the determination of appropriate venue was controlled by 28 U.S.C. § 1404(a), not state law, and that the presence of a valid forum selection clause was one factor the court should consider in its sec-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.))

tion 1404(a) analysis but was not a determinative factor. *Id.* at 30, 31-32 (forum-selection clause, while a significant factor that will figure centrally in district court's case-specific analysis, "should receive neither dispositive consideration ... nor no consideration...."). Additionally, the Court noted that while the *Stewart* case was a diversity case, "the presence of a federal-question could cut only in favor of the application of federal law."*Id.* at 26 n. 3. Thus, because jurisdiction in the instant case is based on a federal question, *Stewart* suggests that section 1404(a) governs the motion to transfer venue in this case.

Defendant argues that the venue analysis is controlled by *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 15 (1972), which holds, in essence, that a forum selection clause in a commercial context, unaffected by fraud, undue influence or overweening bargaining power, should be given full effect. However, cases after *Stewart* make clear that when only a motion to transfer is at issue, as is the case here, the analysis is controlled by section 1404(a).*See, e.g., Terra Int'l v. Mississippi Chemical Corp.,* 119 F.3d 688, 690, 695-97 (8th Cir.1997) (deciding motion to transfer venue which was based on presence of forum selection clause, by examining factors under 1404(a)); *International Software Sys., Inc. v. Amplicon, Inc.,* 77 F.3d 112, 115 (5th Cir.1996) (1404(a) analysis called for in *Stewart* does not apply to motion to dismiss or remand based on forum selection clause); *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 877-80 (3d Cir.1995) (when venue proper in more than one district, 1404(a) controls motion to transfer venue and under *Stewart,* presence of forum selection clause is a non-dispositive, albeit, "substantial" factor); *Jones v. Weibrecht,* 901 F.2d 17, 18 (2d Cir.1990)(*Stewart* did not apply to case where motion was to dismiss or remand and thus, did not invoke section 1404(a)); *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1293-94 (7th Cir.1989) (applying section 1404(a) factors to motion to transfer venue; determining that all section 1404(a) factors relevant except forum selection clause acts

as a waiver of party's right to assert own inconvenience as a reason to transfer); *Manetti-Farrow, Inc. v.. Gucci Am., Inc.,* 858 F.2d 509, 512 n. 2 (9th Cir.1988) (noting that because the case involved a motion to dismiss and not a motion to transfer venue, *Stewart* did not apply).

**\*5** In applying *Stewart* to motions to transfer venue, lower courts have generally held that a **forumselectionclause** negates the presumption given to the **plaintiff'schoice of forum** rendering deference to that choice inappropriate. *See, e.g., Jumara,* 55 F .3d at 880 (deference to plaintiff's choice of forum in filing suit is inappropriate where plaintiff has already freely contractually chosen an appropriate venue); *In re Ricoh Corp.,* 870 F.2d 570, 573 (11th Cir.1989) (in the usual motion for transfer under section 1404(a), the burden is on the movant to establish that the suggested forum is more convenient, but when parties have entered into a contract containing a valid, reasonable choice of forum provision, the burden of persuasion is altered); *Strategic Marketing & Communications v. Kmart Corp.,* 41 F.Supp.2d 268, 273 (S.D.N.Y.1998) (deference to **plaintiff'schoice of forum** is inappropriate with presence of **forumselectionclause**); *Micro-Assist, Inc. v. Cherry Communications, Inc.,* 961 F.Supp. 462, 465 (E.D.N.Y.1997) (same); *Huntingdon Eng'g & Envtl., Inc. v. Platinum Software Corp.,* 882 F.Supp. 54, 56 (W.D.N.Y.1995) (presence of forum selection clause shifts presumption); *Brock v . E ntre Compu ter Centers , Inc.,* 7 40 F.Supp. 428, 432 (E.D.Tex.1990) (describing the presence of a **forumselectionclause** as neutralizing the presumption in favor of **plaintiff'schoice of forum**); *see also Terra Int'l,* 119 F.3d at 695-96 (noting that district court held that existence of forum selection clause shifted the burden to party opposing the transfer motion but not deciding the issue itself); *cf. FUL, Inc. v. Unified Sch. Dist. No. 204,* 839 F.Supp. 1307, 1311 n. 4 (N.D.Ill.1993) (valid forum selection clause waives the factor of convenience of the parties).

While I found no Ninth Circuit cases on whether

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.))

the presence of a forumselectionclause eliminates the deference typically afforded to a plaintiff'schoice of forum, I follow that analysis in this case because it is a sound implementation of *Stewart.*

### DISCUSSION

I. Validity of Forum Selection Clause

Plaintiffs argue that the forum selection clause is invalid because the contract documents show that Iowa Grain's approval is required before the customer agreements are valid, and the place for Iowa Grain's approval on the "NEW ACCOUNT FACT SHEET" is blank. Thus, argue plaintiffs, because there is no manifestation of Iowa Grain's approval, the customer agreements never became binding contracts.

Defendants first respond that because the customer agreements are limited to pages four through eleven of the documents provided to plaintiffs, and do not include the "NEW ACCOUNT FACT SHEET" on which the blank space appears, that page is extrinsic to the contract and I should not give it any effect. *Air Safety, Inc. v. Teachers Realty Corp.,* 185 Ill.2d 457, 462, 706 N.E.2d 882, 884 (1999) (written agreement is presumed to express the intention of parties who signed it; intent must be determined by language used and not changed by extrinsic evidence).

*6 I reject defendants' argument. The customer agreements are contained within a document entitled "Booklet No. 1" which appears to be all one document with the pages, inclusive of those deemed the customer agreement, numbered sequentially following the cover sheet. The "NEW ACCOUNT FACT SHEET" is page number one of this booklet with the customer agreement in the middle of the approximately twenty-eight page document. The customer agreement is not a separate contract unto itself.

Next, defendants rely on Eisner's affidavit stating that the customer agreements were approved pursuant to Iowa Grain's usual approval procedure, after inputting information into its computers. Now, plaintiffs make the same argument defendants did above: plaintiffs contend Eisner's affidavit is extrinsic to the contract and should not be considered. I conclude that the affidavit is appropriate evidence because the contract, considering all of its pages, is ambiguous regarding the form of Iowa Grain's approval.

Clearly, the contracts require Iowa Grain's approval to be valid. They do not, however, specify how that approval occurs and they certainly do not state that approval occurs only upon signing the "NEW ACCOUNT FACT SHEET." There are a variety of possible approval methods, one of which could be the initialing "NEW ACCOUNT FACT SHEET" page. Because the contracts do not specify one particular method of approval, and because there is more than one reasonable manifestation of the term "approval," the contracts are ambiguous and consideration of Eisner's affidavit is appropriate. *Id.* at 462-63, 706 N.E.2d at 884 (if trial court finds that the language of the contract is susceptible to more than one meaning, then an ambiguity is present, and parol evidence may be admitted to resolve the ambiguity). Given Eisner's uncontradicted testimony, I conclude that the contracts were approved.

Defendants also contend that the contracts were accepted by performance. It is not disputed that Iowa Grain performed under the contracts. Plaintiffs argue, however, that acceptance by performance is not recognized under Illinois law when the contract itself limits the manifestation of acceptance. *See LaSalle Nat'l Bank v. Vega,* 167 Ill.App.3d 154, 161-62, 520 N.E.2d 1129, 1133, 117 Ill.Dec. 778, 782 (1988) (offeror has control over offer and can govern the mode of acceptance; only specified mode of acceptance may be used). The problem with plaintiffs' argument is that, as noted above, the customer agreements do not limit the mode of ac-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                       Page 6
Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.)
(Cite as: Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.))

ceptance by Iowa Grain. Therefore, acceptance and approval of the contracts is properly demonstrated by their performance. *See* Restatement (Second) of Contracts § 50 (recognizing acceptance of contract by performance).

Plaintiffs also suggest that the forum selection clause is invalid because it is part of a form contract and plaintiffs, with little or no experience in financial matters, had little or no bargaining power to negotiate different terms in the agreement. I find this argument unpersuasive.

*7 Even considering the entire twenty-eight or twenty-nine page contract, it is not overwhelmingly long. The print is of normal size type and all paragraphs are clearly labeled. The forum selection clause is clearly worded, appears in a separately numbered paragraph, and has a heading entitled "Forum Selection and Consent to Jurisdiction" which clearly expresses the paragraph's content.

While plaintiffs may have felt some pressure to return the documents as quickly as possible to Reid-Renaud, they were able to privately examine the documents in their own homes and were free to ask family members, other friends, or an attorney, for advice. Additionally, there is an express provision recognizing the negotiability of contract terms. Thus, I conclude that the contracts were not designed to mislead plaintiffs and unknowingly lure them into the Northern District of Illinois. I also find that while the bargaining power between plaintiffs and defendants was not equal, plaintiffs were not without the ability to negotiate. Even if they were without that ability, the forum selection clause would not be invalid on that basis alone. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593 (1991) (refusing to adopt circuit court's determination that a forum selection clause is invalid when it is contained in a form contract the terms of which are not subject to negotiation and when the parties have unequal bargaining power). The forum selection clause is valid.

## II. 1404(a) Analysis

### A. Private Factors

#### 1. Ease of Access to Sources of Proof

The plaintiffs all reside in Oregon. Reid-Renault is a resident of Florida. Elite is located in Florida. Iowa Grain is located in Chicago. The majority of the documents are in Chicago. None of the parties were able to identify any relevant non-party fact witnesses.

#### 2. Compulsory Process to Obtain the Attendance of Hostile Witnesses

Neither party addresses this factor other than to note that witnesses may be located in Oregon, Florida, or Illinois.

#### 3. Cost of Transporting Friendly Witnesses

Neither party addresses this factor other than to note that witnesses may be located in Oregon, Florida, or Illinois.

#### 4. Possibility of Viewing Subject Premises

This factor is not relevant in this case.

### B. Public Factors

#### 1. Administrative Difficulties Flowing from Court Congestion

As of September 30, 1998, the most recent date for which statistics were available at the time of oral argument, there were 7,694 cases pending in the Northen District of Illinois and 1,874 cases pending in the District of Oregon. Ex. D to DeJong Affid. at pp. 12, 13.Forty percent of the cases in the Northern District of Illinois were pending for more than one year compared with twenty-seven percent of those in Oregon. *Id.* The median time to jury trial in

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 7
Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.))**

the Northern District of Illinois is twenty-seven months compared to fifteen months in Oregon. *Id.* at pp. 9, 10.

Defendants cite a January 28, 2000 article summarizing comments made by the Chief Judge of the Northern District of Illinois at his annual "state of the court" address to the Federal Bar Association. While Chief Judge Aspen noted the district's improvement in the disposition of cases, including that the median time for disposing of civil cases in the district is six months, he did not cite any statistics regarding the median time to jury trial.

2. Imposition of Jury Duty on the People of a Community Unrelated to the Litigation

*8 While Iowa Grain is a party, it is sued in only one claim. The bulk of the dispute lies between plaintiffs and Reid-Renaud and Elite, none of whom reside in Illinois. Thus, while Illinois jurors bear some interest in the litigation, the connection between Illinois jurors and the litigation is much less than that between Oregon (or Florida) jurors and the litigation.

3. The Local Interest in Resolving the Controversy at Home

Again, only one of the claims involves an Illinois defendant. At least two of the claims arise under Oregon statutes. Oregon's elder abuse statute has few, if any, counterparts in other states. Thus, given the nature of the dispute, Oregon has a stronger interest in resolving the controversy in its courts than Illinois has in resolving the controversy there.

4. The Interest in Having a Diversity Case Tried in a Forum Familiar with the Law that Governs the Action

Under the choice of law provision, Illinois law governs the agreement. It does not, however, govern other state law claims arising out the parties' rela-

tionship, and does not limit the claims that can be brought. Therefore, claims brought under Oregon statutes and federal law are unaffected by the choice of law provision.

5. Avoidance of Unnecessary Conflicts of Law Problems

The parties have not identified any potential conflicts of law issues and I discern none.

C. Discussion

As indicated above, because *Stewart* holds that the forum selection clause should be a "significant factor that figures centrally in the district court's calculus[,]" I accord no deference to plaintiff's choice of forum. Nonetheless, I find that retention of the case in the District of Oregon is appropriate based on consideration of all the relevant factors.

The parties' inability to identify any relevant non-party fact witnesses is due to the nature of the controversy and the early stage of the litigation. Nonetheless, the result of that inability is that in examining the private factors, neither Oregon nor Illinois carries more weight. Additionally, though most documents are in Chicago, there is no evidence that producing them in Oregon would be burdensome.

The public factors, however, suggest that Oregon is the proper forum. The parties will get to trial faster in Oregon than in Illinois. This is an especially relevant consideration given the ages of all plaintiffs and Cozad's health status. Although Iowa Grain is a named party, they are named in only one claim and it is clear that the heart of the case is the allegations against Reid-Renault and Elite. Thus, Illinois bears only a minimal relationship to the controversy. Oregon has a much stronger interest in the case and imposition of jury duty on its citizens is more appropriate than on those in Illinois. Oregon courts are familiar with the Oregon statutes at issue in the case, and while Illinois law will apply to those

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 8
Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.)
**(Cite as: Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.))**

claims brought under the agreements, there are no
conflicts issues which cause concern.

*9 The evidence shows that Oregon is just as con-
venient, if not more so, than Illinois. Therefore, I
conclude that transfer to Illinois is inappropriate
under the facts of this case.


                  CONCLUSION

I recommend that defendants' motion to transfer
venue (# 7-2) be denied.


              SCHEDULING ORDER

The above Findings and Recommendation will be
referred to a United States District Judge for re-
view. Objections, if any, are due April 4, 2000. If
no objections are filed, review of the Findings and
Recommendation will go under advisement on that
date.

If objections are filed, a response to the objections
is due April 18, 2000, and review of the Findings
and Recommendation will go under advisement on
that date.
MARSH, Judge.
Magistrate Judge Dennis James Hubel filed his
Findings and Recommendation on March 17, 2000.
The matter is now before me. *See* 28 U.S.C. §
636(b)(1)(B) and Fed.R.Civ P. 72(b). No objections
have been timely filed. This relieves me of my ob-
ligation to give the factual findings *de novo* review.
*See* § 636(b)(1)(C); *Simpson v. Lear Astronics
Corp.,* 77 F.3d 1170, 1174-5 (9th Cir.1996). Having
reviewed the legal principles *de novo,* I find no er-
ror.

Accordingly, I ADOPT Magistrate Judge Hubel's
Findings and Recommendation # 42. Defendant's
Motion (# 7-2) to Transfer Venue to the Northen
District of Illinois is DENIED.

IT IS SO ORDERED.

D.Or.,2000.

Knudsen v. Elite Trading Group, Inc.
Not Reported in F.Supp.2d, 2000 WL 488481 (D.Or.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

Westlaw.

Not Reported in F.Supp.                                                                  Page 1
Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.)
(Cite as: Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.))

C
Storm v. Witt Biomedical Corp.
N.D.Cal.,1996.
Only the Westlaw citation is currently available.
    United States District Court, N.D. California.
        Joseph STORM, Plaintiff,
                    v.
WITT BIOMEDICAL CORP. et al., Defendants.
            No. C-95-3718 SI.

                Jan. 23, 1996.

          ORDER TRANSFERRING CASE

ILLSTON, District Judge.
*1 On January 19, 1996, the Court heard argument
on defendants' motions to dismiss and to transfer
venue. Having considered the arguments of counsel
and the papers submitted, the Court hereby
TRANSFERS this matter to district court for the
Middle District of Florida.

            I. BACKGROUND

On September 22, 1995, plaintiff Joseph Storm
sued defendants Witt Biomedical Corporation
("WBC"), Terrence Witt[FN1] and Doe defendants
(collectively "defendant") in Contra Costa County
Superior Court. Defendant manufactures and sells
cardiac monitoring equipment. WBC's headquarters
are located in Brevard County, Florida. Defendant
removed the case to federal court on the basis of di-
versity jurisdiction. The following facts are alleged
in the complaint:

In or about 1989, plaintiff became a distributor for
defendant's products in California and other west-
ern states. In June 1992, defendant hired plaintiff as
vice-president for sales and marketing. Plaintiff
was to be paid 3% of WBC's gross sales and a 1%
equity interest in WBC for each year of service, be-
ginning in 1992. Plaintiff worked for WBC without
a written contract for approximately eighteen

months and, during that period, he gave up his own
business. Plaintiff worked and resided in Danville,
California during this period and WBC maintained
an office in Danville.

In January 1994, plaintiff travelled to Florida and
signed an employment contract. Under the terms of
the contract, plaintiff was to serve as WBC's Exec-
utive Vice-President for National and International
Sales and Marketing and was to perform his duties
at WBC's Danville office. Under the contract,
plaintiff was to receive as compensation an interest
in WBC each year, beginning in 1993, equal to
WBC's gross sales divided by WBC's gross sales
target for that same year.[FN2]Apparently, plaintiff
was also to be compensated in cash in the amount
of 3% of WBC's gross national and international
sales. Under the contract, plaintiff was to be given
120 days written notice of termination of the agree-
ment. If terminated, plaintiff was to be paid his
salary for six months following termination plus
any accrued but unpaid commissions. The contract
contained the following forum selection clause:

The parties stipulate and agree that the proper ven-
ue for any proceeding brought to enforce the terms
of the agreement shall be Brevard County, Florida.
[Plaintiff] stipulates that said court shall have in
personam jurisdiction for purposes of hearing said
proceedings.

In 1993, plaintiff and defendant agreed that plaintiff
was entitled to a 1.16% interest in WBC based on
WBC's gross sales and targeted gross sales. In
1994, plaintiff and defendant agreed that plaintiff
was entitled to 0.93% interest in WBC.

On or about December 21, 1994, defendant de-
livered written notice terminating plaintiff. After
terminating plaintiff, defendant then solicited
plaintiff to remain an officer of WBC and to serve
as a distributor of WBC's products. The complaint
alleges that defendant told plaintiff that the reason
he was being terminated was that defendant could

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.))**

not provide the compensation called for under the contract.

**\*2** In order to induce plaintiff to remain with WBC, defendant offered him an additional, unconditional 1% equity interest in WBC and offered to continue to maintain the Danville office and pay $500 in rent on that office.[FN2] Plaintiff's new position with WBC was Vice-President of Marketing which was announced to all employees and sales representatives on January 19, 1995. Plaintiff performed various acts based on defendant's promises, including attending meetings, preparing presentations and preparing WBC's marketing plans. Plaintiff also agreed to pay the remaining rent on the Danville office. Plaintiff incurred other expenses in running the office and employing a secretary.

In addition, plaintiff agreed to serve as a distributor of WBC product. Plaintiff and defendant signed a "Sales Distribution Agreement" which provided, *inter alia*, that plaintiff had the exclusive right to sell WBC's products in California, Nevada, Arizona and New Mexico. Plaintiff was to receive a commission of 20% of all sales made in his territory. The Distribution agreement did not contain a forum selection clause.

In or about April 1995, plaintiff agreed to assist in the outright sale of WBC. Plaintiff and defendant orally agreed that plaintiff would receive 0.5% interest in WBC in exchange for selecting a brokerage firm, preparing a detailed history and analysis of WBC and attending meetings and presentations relating to the sale of WBC.

Based on these facts, as alleged, plaintiff filed a complaint containing nine causes of action. As the specific allegations of each cause of action will be significant to the analysis of the pending motions, each cause of action is described below.

*First Cause of Action: Breach of oral contracts*

Plaintiff alleges that defendant breached the oral contracts of June 1992, January 1995, and April

1995 by failing and refusing to: grant plaintiff a 2% equity interest in WBC; provide an accounting and profits due plaintiff; disclose to plaintiff the equity interest that he held in WBC in connection with the sale of WBC; pay $500 per month in rent for the Danville office; and grant plaintiff the additional 0.5% interest in WBC.

*Second Cause of Action: Wrongful discharge*

Plaintiff alleges that he was employed by defendant from January 1, 1995 through April 2, 1995, under an oral contract with defendant. Under the alleged oral contract, plaintiff was to be employed as long as his performance was satisfactory; and was not to be discharged arbitrarily or without good and just cause. On April 2, 1995, plaintiff was discharged without good cause and as a pretext for denying him the equity interest due him under the January 1994 contract and under the Distribution agreement.

*Third Cause of Action: Breach of written contracts*

Plaintiff alleges that defendant breached the January 1994 contract and the Distribution agreement by failing to provide the severance pay and unpaid commissions due under the contract and by failing to pay plaintiff the 20% commission due on all sales under the Distribution agreement. Plaintiff also alleges that defendant failed to grant plaintiff the equity interests called for in both the January 1994 contract and the Distribution agreement.

*Fourth Cause of Action: Recovery of unpaid wages and penalties*

**\*3** Plaintiff alleges that he is entitled to unpaid wages and penalties based upon all of the wages and other compensation that defendant refused to pay under all of the oral and written contracts alleged in the complaint as well as penalties under California Labor Code Section 203 and attorneys' fees and costs under Labor Code Section 218.5.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                Page 3
Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.))**

*Fifth Cause of Action: Fraud and deceit*

Plaintiff alleges that defendant entered into the following agreements with no intention of fulfilling them and that defendant fraudulently and deceitfully induced plaintiff to accept these agreements: the agreement for plaintiff to serve as Vice-President of WBC in 1992, the January 1994 contract, the January 1995 contract, and the Distribution agreement.

*Sixth Cause of Action: Breach of fiduciary duty*

Defendant Witt is alleged to have breach his fiduciary duty to plaintiff by failing to deal fairly and in good faith with him. Witt is alleged to have misrepresented his true intentions to plaintiff and to have converted and misappropriated monies and equity interests due to plaintiff based on the various agreements alleged.

*Seventh Cause of Action: Conversion*

Plaintiff alleges that he was the owner and was entitled to a total of 4.59% of the equity of WBC based on the various agreements alleged and that defendant converted plaintiff's interest in WBC to itself.

*Eighth Cause of Action: Constructive trust*

Plaintiff alleges that he is entitled to a constructive trust over the 4.59% equity interest in WBC that he is alleged to own based on the various agreements alleged and a constructive trust over 4.59% of the proceeds of any sale of WBC to any third party.

*Ninth Cause of Action: Declaratory relief*

Plaintiff seeks a declaratory judgment stating his legal rights and interests against defendant for each cause of action in the complaint.

## II. DISCUSSION

*A. Motion to Dismiss for Improper Venue[FN4]*

Forum selection clauses are presumptively valid. *M/S Bremen v. Zapata Offshore Co.,* 92 S.Ct. 1907, 1913 (1972). As long as the clause indicates a mandatory choice of venue, such a clause will be enforced unless the resisting party can show that enforcement would be "unreasonable under the circumstances".[FN5] *Id.; see also Docksider, Ltd. v. Sea Technology, Ltd.,* 875 F.2d 762, 763 (9th Cir. 1989). The forum selection clause in this case indicates that Brevard County, Florida is "the proper venue" for enforcing the contract. Such language is sufficient to constitute a mandatory selection of venue. *See Docksider, Ltd.,* 875 F.2d at 764.

In *Carnival Cruise Lines v. Shute,* 111 S.Ct. 1522 (1991), the Supreme Court reviewed a forum selection clause found in a standardized, pre-printed contract for a cruise. The Court held that a forum selection clause found even in adhesion contracts, such as tickets for cruises, were not *per se* invalid. 111 S.Ct. at 1528. The Court restated the *Bremen* standard of "unreasonable under the circumstances" as a standard of "fundamental fairness." *Id.* Unfairness could be shown by demonstrating bad faith in the choice of the venue. *Id.*[FN6] The Court in *Carnival* noted that bad faith could be manifested either by a choice of forum designed to discourage plaintiffs from pursuing legitimate claims or by showing "that [defendant] obtained [plaintiff's] accession *to the forum clause* by fraud or overreaching."*Id.* (emphasis added).

*4 Here, the evidence submitted to the Court indicates that Brevard County, Florida was chosen as the venue because WBC is a small company located there and Mr. Witt, its key executive, lives there. The choice of this local venue arose from the legitimate business interests of WBC and Mr. Witt to litigate cases close to their place of business rather than an attempt to discourage litigation.

Further, plaintiff submits no evidence that the forum selection clause was obtained through fraud or overreaching. Plaintiff has submitted a lengthy de-

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                          Page 4
Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.)
(Cite as: Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.))

claration describing the allegedly unfair conditions leading to the signing of the contract as a whole.FN7None of plaintiff's allegations of over-reaching goes specifically to the forum selection clause as is required under *Carnival.*This rule was set forth in cases prior to *Carnival* as well. In *Scherk v. Alberto-Culver Co.,* 94 S.Ct. 2449 (1974) the Supreme Court stated:

In *The Bremen* we noted that forum-selection clauses "should be given full effect" when "a freely negotiated private international agreement [is] unaffected by fraud"... [citation]. This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud ... the clause is unenforceable. Rather it means that an arbitration or forum-selection clause is not enforceable if the *inclusion of that clause in the contract* was the product of fraud or coercion. [citation]. 94 S.Ct. at 2457 n.14 (emphasis original).FN8

Based on the specificity requirement for allegations of fraud or overreaching set forth in both *Carnival* and *Scherk,* plaintiff has failed to raise any cognizable allegation of fraud or overreaching.

Furthermore, the forum-selection clause is not so onerous as to deny plaintiff a meaningful day in court. Plaintiff asserts increased expense and inconvenience to himself and witnesses as hardships associated with having to litigate this matter in Florida. These difficulties are not the grave hardships that would deprive plaintiff of a meaningful day in court. *See Manetti-Farrow, Inc. v. Gucci American, Inc.,* 858 F.2d 509, 515 (9th Cir. 1988) (difficulties in litigating in forum must be grave). Courts have upheld forum selection clauses that required litigation in foreign countries. *See, e.g., Tisdale v. Shell Oil Co.,* 723 F.Supp. 653 (M.D. Ala. 1987) (requiring Alabama resident to litigate in Saudi Arabia); *Manetti-Farrow, supra; Commerce Consultants International v. Vetrerie Ruinite,* 867 F.2d 697 (D.C. Cir. 1989); *Paper Exp., Ltd. v. Pfankuch Maschinen GmbH,* 972 F.2d 753 (7th Cir. 1992). Under the circumstances of the present case, requiring plaintiff to litigate his case in a domestic court

cannot be considered a practical deprivation of a meaningful day in court. *See Spradlin v. Lear Siegler Management Services,* 926 F.2d 865, 867-68 (9th Cir. 1991).

Finally, the forum selection clause was not buried in "legalese" nor hidden in fine print. The Court notes that the clause was in a section headed "Miscellaneous" near the end of the contract but this is not sufficient to demonstrate that plaintiff was unaware of the existence of the clause in particular as opposed to his general contention that he was "unaware" of the terms of the entire contract because he was not given sufficient time to review the entire contract.

*5 Thus, the forum selection clause is valid and enforceable.

### B. Scope of the Forum Selection Clause

The January 1994 contract contains the forum selection clause. Any causes of action arising out of or implicating that contract are subject to the clause.*Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 (9th Cir. 1988); *Crescent International, Inc. v. Avatar Communities, Inc.,* 857 F.2d 943 (3rd Cir. 1988). A review of the complaint shows that a significant portion of each cause of action arises out of or implicates the January 1994 contract with the exception of the first cause of action.FN9

By framing his pleadings as he did, plaintiff has presented the Court with a complaint containing eight causes of action that in some significant way arise out of or implicate the January 1994 contract and hence are subject to the forum selection clause; and one cause of action that does not. The Court recognizes that a plaintiff's choice of venue is to be accorded substantial deference. *E.g., Pacific Car & Foundry Co. v. Pence,* 403 F.2d 949 (9th Cir. 1968).

However, this deference is not unlimited. First, a choice of venue that violates a valid **forumselec-**

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                              Page 5
Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.)
(Cite as: Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.))

tion clause is not entitled to the deference generally accorded to **plaintiff's** choice of **forum**. *Sunshine Beauty Supplies v. District Court,* 872 F.2d 310, 311 (9th Cir. 1989). Second, the plaintiff's choice of venue does not override concerns of judicial efficiency and resources. *See, e.g., F.T.C. v. MacArthur,* 532 F.2d 1135 (7th Cir. 1976); *Theriault v. Silber,* 547 F.2d 1279 (5th Cir.), *rehearing denied,*551 F.2d 863,*cert. denied,*98 S.Ct. 216,*rehearing denied,*98 S.Ct. 441 (1977).

Defendant in this matter is entitled to enforcement of the forum selection clause regarding causes of action two through nine. Plaintiff is entitled to deference of his choice of this Court for cause of action one. Neither side, however, is entitled to the judicial resources of both this Court and the Florida federal court to resolve a dispute arising out of the same facts and involving the same evidence and witnesses.

Rather than dismissing causes of action two through nine, the Court will order them transferred to the district court for the Middle District of Florida pursuant to the valid forum selection clause found in the January 1994 contract. Furthermore, the Court will transfer cause of action one to the Middle District of Florida for the convenience of the parties and witnesses and in the interest of justice. 28 U.S.C. 1404(a).

This order is made WITHOUT PREJUDICE to plaintiff's filing an amended complaint in this Court alleging causes of action not arising from or relating to the January 1994 contract and thus not subject to its forum selection clause.[FN10]Plaintiff shall inform the Court and defendant within ten (10) days of the date of this order if he intends to file an amended complaint in this Court.[FN11]If so, the amended complaint shall be filed within thirty (30) days of the date of this order.

*6 IT IS SO ORDERED.

FN1. Mr. Witt is president and majority shareholder of WBC.

FN2. It is unclear from the complaint how the 1% equity interest per year called for in the June 1992 agreement relates to the equity interest based on the actual gross sales/targeted gross sales ratio established in the January 1994 contract.

FN3. The complaint does not state who paid the rent on the Danville office prior to this new employment agreement.

FN4. Defendants have moved to dismiss the claims relating to the January 1994 contract under Federal Rule of Civil Procedure 12(b)(3), which allows the Court to dismiss a claim for improper venue. Defendants invoked Rule 12(b)(6) as an alternative basis for this motion.

FN5. In the Ninth Circuit, validity of forum selection clauses is governed by federal law. *Spradlin v. Lear Siegler Management Services,* 926 F.2d 865, 867 (9th Cir. 1991).

FN6. The Supreme Court did not address the question whether the consumers in that case had sufficient notice of the forum clause before entering the contract for passage, since the consumers had "essentially conceded" that they had notice in the form of the "three pages of fine print" on the ticket. *Id.,* at 1525.Here, while the validity of the written employment contract containing the forum selection clause is disputed, the fact that such a clause was clearly contained in the contract is not disputed.

FN7. Plaintiff appears to be asserting that the contract as a whole was obtained under fraudulent or unfair circumstances; but that the contract provisions, other than the forum selection clause, should be enforced.

FN8.*See also, Lambert v. Kysar,* 983 F.2d

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.)
(Cite as: Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.))

Page 6

1110, 1121 (1st Cir. 1993) (citing *Scherk*);*General Environmental Science Corp. v. Horsfall,* 753 F. Supp. 664, 675 (N.D. Ohio 1990) (citing *Scherk*).

FN9. Certainly, several causes of action also have significant components that arise out of other contracts but each cause of action, except the first, has a significant claim arising out of or implicating the January 1994 contract. *See,* Complt. ¶ 37 (Second Cause of Action); ¶ 42 (Third Cause of Action); ¶¶ 45,46 (Fourth Cause of Action); ¶¶ 51,56 (Fifth Cause of Action); ¶¶ 60,62 (Sixth Cause of Action); ¶¶ 64,67 (Seventh Cause of Action); ¶¶ 69,70 (Eighth Cause of Action); ¶¶ 7 1,72 (Ninth Cause of Action).

FN10. At oral argument, counsel for plaintiff indicated that plaintiff would prefer transfer to Florida to dismissal of his claims under the January 1994 contract. However, the choice is his.

FN11. Should plaintiff file an amended complaint in this district and file a complaint in the Florida courts based on claims subject to the forum selection clause, this Court will entertain a motion to dismiss or transfer any claims filed in the Northern District.

N.D.Cal.,1996.
Storm v. Witt Biomedical Corp.
Not Reported in F.Supp., 1996 WL 53624 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10
11
12
13
14

JM VIDAL, INC., a Washington corporation,

Plaintiff,

v.

TEXDIS USA, INC., a Delaware corporation,
and DISTEX, INC., a Delaware corporation,

Defendants.

CASE NO. C08-485RSM

ORDER ON DEFENDANTS' MOTION
TO TRANSFER VENUE

15
16
17
18
19
20

        This matter is before the Court for consideration of defendants' motion to transfer this case,

pursuant to 28 U.S.C. § 1404(a), to the United States District Court for the Southern District of New

York.  Dkt. # 18.  Plaintiff has opposed the motion, and the parties' memoranda, declarations, and

attached exhibits have been fully considered.  For the reasons which follow, the Court shall GRANT the

motion to transfer.

BACKGROUND

21
22
23
24
25
26
27
28

        The parties are familiar with the facts of this matter, and they will only be briefly summarized

here.  This lawsuit arises from a franchise agreement dispute between JM Vidal, the franchisee, and

defendants Texdis USA, Inc. ("Texdis") and Distex, Inc. ("Distex").   Texdis is the franchisor of the

MNG franchise system, for the retail sales of "Mango" clothing and accessories.  Texdis is a wholly-

owned subsidiary of Mango MNG USA, Inc.("MNG"), which in turn is a wholly-owned subsidiary of

Punto Fa, a company organized under the laws of Spain with its principal place of business in Barcelona,

Spain.  Distex is an affiliate of Texdis (and subsidiary of MGN), responsible for selling Mango clothing

ORDER ON MOTION TO DISMISS OR
TRANSFER - 1

1  and apparel to the franchisee plaintiff on a wholesale basis.  Texdis, MNG, and Distex are all incorporated

2  under the laws of Delaware and have their principal place of business in the same office on Fifth Avenue

3  in New York, New York.

4          According to the complaint, Jean Marie Vidal, president of plaintiff JM Vidal, Inc., ("JMV"),

5  became interested in owning an MNG franchise in 2004.  He communicated with Jose Gomez, vice-

6  president of Texdis, regarding the opening of a franchisee store in Washington State.  Complaint, ¶ 22.

7  Plaintiff alleges that Mr. Gomez traveled to Washington State in November 2004, to discuss the franchise

8  sale and to view potential retail sites, but defendants deny this allegation.   Complaint, ¶ 25; Answer, ¶

9  25.   Plaintiff further alleges that Texdis was not authorized to offer or sell franchises in the State of

10  Washington until May 13, 2005, an allegation which defendants do not deny.  Answer, ¶ 23.  However,

11  defendants deny the allegation that their 2004 franchise-related activities were unlawful.  Answer, ¶ 24.

12          On October 25, 2005, the parties entered into a Franchise Agreement for the operation of an

13  MNG store at Bellevue Square, a shopping mall.  Complaint, ¶ 44.  Plaintiff alleges that it has "faced

14  substantial difficulties" in operating this franchise, due to defendants' failure to comply with the terms of

15  the Franchise Agreement.  Complaint, ¶ 45.   In particular, plaintiffs allege that Texdis has "failed to

16  properly and sufficiently advertise, promote and market" the MNG franchise and products in the United

17  States.  Complaint, ¶ 46.  Texdis was "simply not prepared and/or capable" of operating a franchise

18  system, and does not possess the infrastructure necessary to provide the services it agreed to provide in

19  the Franchise Agreement.  Complaint, ¶ 47.  Plaintiff then alleges a number of ways in which Texdis has

20  engaged in a "predatory scheme" to defraud JMV and other franchisees.  Complaint, ¶¶ 48-54.

21  According to the complaint, these actions were taken "so that Texdis could acquire a fully built MNG

22  location at a highly discounted price."   Complaint, ¶ 55.

23          On these allegations, plaintiff asserts six causes of action:    (1) violation of the Washington

24  Franchise Investment Protection Act;  (2) violation of the New York Franchise Sales Act;  (3) breach of

25  contract (against Texdis);  (4) breach of contract (against Distex);  (5) fraudulent misrepresentation

26  (against Texdis); and (6) negligent misrepresentation (against Texdis).   Plaintiff has requested a jury trial.

27  In answering the complaint, defendants have asserted a counterclaim for breach of contract.   Answer, ¶¶

28  35-39.   On the same day they filed an answer, defendants moved to transfer venue in this case.

ORDER ON MOTION TO DISMISS OR
TRANSFER - 2

1           LEGAL STANDARD

2       Defendants move to transfer this action to the New York district court pursuant to 28 U.S.C. §

3   1404(a),  which states that "[f]or the convenience of parties and witnesses, in the interest of justice a

4   district court may transfer any civil action to any other district or division where it might have been

5   brought."   The purpose of this section is to "prevent the waste 'of time, energy, and money' and 'to

6   protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Van Dusen*

7   *v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. The Barge FBL-585*, 364 U.S.

8   19, 26-27 (1960).  The statute "displaces the common law doctrine of *forum non conveniens*" with

9   respect to transfers between federal courts. See *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.

10  2d 834, 843 (9th Cir. 1986).   Section 1404(a) is not, however, simply a codification of the common law

11  doctrine.  In passing § 1404(a), Congress "intended to permit courts to grant transfers upon a lesser

12  showing of inconvenience" than was needed for dismissal under the doctrine of *forum non conveniens*.

13  *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955).

14      The statute has two requirements on its face: (1) that the district to which defendants seek to have

15  the action transferred is one in which the action "might have been brought," and (2) that the transfer be

16  for the convenience of parties and witnesses, and in the interest of justice.  § 1404(a).  There is no

17  question here that the action could have been brought in the New York district court, where defendants

18  have their principal place of business.  The decision to transfer, then, turns on whether the Court finds

19  such transfer to be proper under the "convenience of parties and witnesses" and "interest of justice"

20  standards.  The burden is on defendants to demonstrate that the transfer is warranted.  *Saleh, v. Titan*

21  *Corporation,* 361 F. Supp. 2d 1152, 1155 (S.D.Cal. 2005).

22      In determining whether a transfer is appropriate, the Court must weigh numerous factors,

23  including  (1) the location where the relevant agreements or alleged events in the lawsuit took place; (2)

24  the state that is most familiar with the governing law; (3)  the plaintiff's choice of forum; (4) the

25  respective parties' contacts with the forum, and the relation of those contacts to the plaintiff's cause of

26  action; (5) the difference in cost of litigation in the two forums; (6) the availability of compulsory process

27  to compel attendance of non-party witnesses; and (7) the ease of access to sources of proof.  *Jones v.*

28  *GNC Franchising, Inc.,* 211 F. 3d 495, 498-99 (9th Cir. 2000).  The presence of a  forum selection

ORDER ON MOTION TO DISMISS OR
TRANSFER - 3

1   clause is a significant factor in the § 1404(a) analysis as well. *Stewart Org., Inc., v. Ricoh Corp.*, 487 U.S.

2   22, 29 (1988).  Other relevant considerations, drawn from traditional *forum non conveniens* analysis, are

3   the pendency of related litigation in the transferee forum;  the relative congestion of the two courts; and

4   the public interest in the local adjudication of local controversies.  *Decker Coal Co. v. Commonwealth*

5   *Edison Co.,* 805 F. 2d 834, 843 (9th Cir. 1986).   Because these factors cannot be mechanically applied

6   to all types of cases, they shall be considered here under the statutory requirements of convenience of

7   witnesses, convenience of parties, and the interests of justice.

8                                        DISCUSSION

9       **1.  Convenience of the parties.**

10          Plaintiff asserts that there is a strong presumption in favor of its own choice of forum, such that it

11  should be given great weight.  However, as noted by one California court, "[t]he courts have developed a

12  bewildering variety of formulations on how much weight is to be given to plaintiff's choice of forum."

13  *Saleh,* 361 F. Supp. 2d at 1156 (S.D.Cal. 2005) (quoting 15 Wright, Miller and Cooper, *Federal*

14  *Practice and Procedure* § 3848 at 375.)   Because § 1404 application results in transfer, not dismissal as

15  in *forum non conveniens*, a lesser showing of inconvenience is required to upset plaintiff's choice.  *Id.*,

16  citing *Norwood*, 349 U.S. at 42.

17          Defendants contend that plaintiff's choice of forum should be accorded little or no weight, in light

18  of a forum selection clause in the Franchise Agreement.  This section states,

19          You agree that any action brought by you against us shall be brought in the state or federal
            courts of the State of New York located in Manhattan, and you waive your right to bring any
20          action against us in any other jurisdiction or venue.  Additionally, you agree to submit to the
            jurisdiction of the state and federal courts of the State of New York and you waive any right
21          you may have to object to such jurisdiction and venue.

22  Dkt. # 1, Exhibit B, Franchise Agreement, Section XXV (B).  Plaintiff argues in opposition that this

23  forum selection clause is trumped by the Washington Franchise Investment Protection Act ("FIPA"),

24  which states,

25          Any person who is engaged  . . . in the sale or offer to sell a franchise or a subfranchise
            or in business dealings concerning a franchise, either in person or in any other form of
26          communication, shall be subject to the provisions of this chapter, shall be amenable to the
            jurisdiction of the courts of this state and shall be amenable to the service or process under
27          RCW 4.28.180, 4.28.185 and 19.86.160.

28  RCW 19.100.160.

ORDER ON MOTION TO DISMISS OR
TRANSFER - 4

1       In cases based on diversity jurisdiction such as this one, federal law applies to the interpretation

2  and application of a forum selection clause. *Koresko v. RealNetworks, Inc.*, 291 F. Supp. 2d 1157, 1162

3  (E.D.Cal. 2003); *citing Manetti-Farrow, Inc., v. Gucci America, Inc.*, 858 F. 2d 509, 513 (9th Cir.

4  1988). Forum selection clauses are presumptively valid and will not be set aside absent a showing that

5  enforcement would be unreasonable or unjust, or that the clause was invalid for reasons such as fraud or

6  over-reaching. *Id.*, *citing M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 15 (1972). A forum selection

7  clause will be enforced where venue is specified with mandatory language. *Id.*, *citing Docksider, Ltd., v.*

8  *Sea Technology, Ltd.*, 875 F. 2d 762, 764 (9th Cir. 1989).

9       The Court finds that the FIPA section set forth above is a jurisdictional provision which does not

10  mandate venue in the courts of this State. Defendants have not objected to jurisdiction over their persons

11  here, but rather assert that venue is improper, both under the forum selection clause and for other §

12  1404(a) considerations. Apart from the FIPA section, plaintiff has not argued that the forum selection

13  clause is invalid or unenforceable. The Court therefore finds that the forum selection clause is valid and

14  enforceable, and that its mandatory language overcomes plaintiff's choice of forum in this matter. The

15  forum selection clause is, however, not dispositive of the § 1404(a) analysis, and the other factors remain

16  to be addressed.

17       With respect to the relative convenience to the parties, the Court may not transfer a case simply

18  to shift the burden from one party to another. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F. 2d

19  at 843. However, the Court may look at the sheer weight of the numbers—one plaintiff versus two

20  defendants, as here—in considering convenience. *Selah*, 361 F. Supp. 2d at 1162 (quoting *Cochran v.*

21  *NYP Holdings, Inc.*, 58 F. Supp. 2d 1113, 1120 (C.D.Cal. 1998).

22       In light of the forum selection clause, which set forth all parties' expectations in terms of venue,

23  and the number of parties on each side, the convenience factor weighs heavily in favor of transfer.

24       **2. <u>Convenience of the witnesses</u>.**

25       When considering the convenience to witnesses, "the convenience of non-party witnesses is the

26  more important factor." *Saleh*, 361 F. Supp. 2d at 1160 (quoting *Aquatic Amusement Associates, Ltd. v.*

27  *Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990)). The Court should consider not only

28  how many witnesses each side may have, but also the relative importance of their testimony. *Id.*, *citing*

ORDER ON MOTION TO DISMISS OR
TRANSFER - 5

1    *Gates Learjet Corp. v. Jensen*, 743 F. 2d 1325, 1335-36 (9th Cir. 1984) (a *forum non conveniens* case).

2    Defendants contend that their employees with relevant information work or reside in New Jersey and

3    would be seriously inconvenienced by travel to the State of Washington to testify.  Further, defendants

4    contend that their non-party witnesses would not be subject to subpoena in the Western District of

5    Washington.  Although defendants have not specifically identified their non-party witnesses, neither has

6    plaintiff identified a single witness, apart from the company president Mr. Vidal, who would be

7    inconvenienced by a New York venue.  The convenience of witnesses factor thus weighs in favor of the

8    New York district court venue.

9        Other factors that may be considered are the difference in cost of litigation in the two forums and

10    the ease of access to sources of proof.   One way of evaluating the cost of litigation is to compare the

11    travel time for the attorneys.  Plaintiff has two attorneys in Miami, Florida, and two in Seattle.

12    Defendants have two attorneys in Chicago, Illinois, and two in Seattle.  It appears that the Seattle

13    attorneys are in this action solely for the purpose of meeting this Court's requirements for admission of

14    out-of-state counsel *pro hac vice*.  *See*, Dkt. ## 3, 4, 8, 9.  If the action were transferred to New York,

15    the Seattle attorneys would no longer be necessary, and venue would be closer to the Miami and Chicago

16    offices of the remaining attorneys, greatly reducing the cost of litigation.  As for access to sources to

17    proof, defendants assert that most of the documents relevant to this action are located in New York or

18    New Jersey, and plaintiff has not rebutted this assertion.  Thus, considerations of litigation cost and ease

19    of access to sources of proof favor transfer as well.

20        **3.  <u>Interest of Justice</u>.**

21        The interest of justice factor is the most important of all.  *Nelson v. Master Lease Corporation*,

22    759 F. Supp. 1397, 1402 (D.Minn. 1991); *citing  Medtronic, Inc., v. American Optical Corporation*, 337

23    F. Supp. 490, 495-97 (D.Minn. 1971).   "Consideration of the interest of justice, which includes judicial

24    economy, 'may be determinative to a particular transfer motion, even if the convenience of the parties and

25    witnesses might call for a different result.'" *Regents of the University of California v. Eli Lilly and

26    Company*, 119 F. 3d 1559, 1565 (D.C.Cir. 1997).   In considering the interests of justice, the Court

27    weighs such factors as "ensuring speedy trials, trying related litigation together, and having a judge who

28    is familiar with the applicable law try the case."  *Heller Financial, Inc., v. Midwhey Powder Co.*, 883 F.

ORDER ON MOTION TO DISMISS OR
TRANSFER - 6

1  2d 1286, 1293 (9th Cir. 1989). Although the parties have not addressed the availability of a speedy trial

2  in either forum, the remaining two factors favor the New York forum.

3  Although no one has alleged that there is related litigation pending at this time, plaintiff's

4  allegation that defendants have engaged in predatory practices toward other franchisees as well suggests

5  that lawsuits by other franchisees may be forthcoming. *See*, Complaint, ¶¶ 48-52. Under the mandatory

6  forum selection clause, such lawsuits, if any, should be filed in New York. Transfer of this action to that

7  venue would thus preserve judicial economy. "Litigation of related claims in the same tribunal is

8  strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and

9  discovery and avoid[s] duplicitous [sic] litigation and inconsistent results." *Durham Products, Inc., v.*

10  *Sterling Film Portfolio, Ltd., Series A*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982).

11  As for having a judge familiar with the law try the case, this case presents issues of both

12  Washington and New York law. The forum selection clause directs that the Franchise Agreement itself

13  be construed under New York law. Franchise Agreement, Section XXV(A). Plaintiff has also asserted

14  claims under both Washington and New York laws regulating franchise sales. The New York District

15  Court is as fully capable of deciding the Washington law issues as this Court is of deciding the New York

16  law issues. This factor thus does not weigh in favor of either forum.

17  CONCLUSION

18  The Court concludes that the convenience of the parties and the witnesses, as well as the interests

19  of justice, all favor transfer of this action. Accordingly, defendants' § 1404(a) motion to transfer is

20  GRANTED. This case is hereby TRANSFERRED to the United States District Court for the Southern

21  District of New York. The Clerk shall close the file and notify the Clerk of Court in that district.

22  DATED this 24  Day of June 2008.

23

24

25  RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

26

27

28

ORDER ON MOTION TO DISMISS OR
TRANSFER - 7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
OFFICE OF THE CLERK

BRUCE RIFKIN
  CLERK

700 STEWART ST. LOBBY LEVEL
SEATTLE, WASHINGTON 98101

July 10, 2008

Clerk, US District Court
120 Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

RE:    <u>JM Vidal Inc v. Texdis USA</u>, C08-485RSM

Dear Clerk:

     Pursuant to the order transferring the above captioned case to your Court, enclosed are:

          1. Certified copy of docket entries ;

          2. Certified copy of transfer order; and

          3. Original case file documents downloaded on a CD.

     Please acknowledge receipt of the above documents by returning the copy of this letter.

          Very truly yours,

          BRUCE RIFKIN, CLERK

          By: _____
               Rhonda Stiles, Deputy Clerk

Enclosures

cc:    counsel of record
       file

**08-CV-00485-DSGNTN**